Eric N. Aglow, Esq.
UAW-GM  Legal Services Plan
*10 Woodbridge Center Drive*
*Suite 730*
*Woodbridge, New Jersey 07095*
*Voice: 732 602 1166*
*Fax:   732 602 9730*
*E-mail: Ericag@uawlsp.com*
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

CAROLYN FORREST


    -against-                                        Case No. *04-CV-5151 (LTS)*
                                                                 ECF CASE

UNIFUND FINANCIAL GROUP, INC.;
UNIFUND AMERICA, INC.;
UNIFUND PARTNERS FUND, L.P. Series X;
UNIFUND PARTNERS FUND, L.P. Series XI;
UNIFUND PARTNERS GROUP, L.P. Series XII
UNIFUND PARTNERS GROUP, LP, Series XIV
RALPH SCOTT BARTER and
MURIEL BARTER
                         Defendants.

-----------------------------------------------------------------x

# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT

## INTRODUCTION

Defendants have brought a motion to dismiss on the pleadings, governed by Fed. R. Civ. Pro.12(b)(6) and 9(b). A motion to dismiss should be granted only if it is "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Lerman v Bd of Elections of New York, 232 F3d 135, 140 (2d Cir 2000). When assessing a motion to dismiss, courts must accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor. Chambers v Time Warner, Inc., 282 F3d 147, 152 (2d Cir. 2002).

The Complaint in this case is grounded in New York common law causes of action. Defendants misleadingly cited o the Private Securities Litigation Reform Act of 1995, which amended the Securities Act of 1933, 15 USC 77a et. seq., and the Sarbanes-Oxley Act of 2002, 15 USC 7201 et. seq., as if they had application to this case. However, Defendants cite no such application in the body of their argument and do not even bother to give the statutory citations to either Act.

Plaintiff has stated a factual basis for claims of breach of contract, breach of fiduciary duty and fraud, stemming from a scheme to sell risky and unregistered limited partnerships to an unsophisticated retiree, without disclosing that none of the people

involved were licensed as securities brokers.  Their claims are timely under New York law, which allows up to six years to sue for breach of fiduciary duty when the relationship involved is grounded in contract. The type of scheme alleged implicates public policy supporting the protection of unsophisticated investors and the case should be allowed to proceed to discovery with all claims, including those for punitive damages, fully intact.

## I.     The Breach Of Fiduciary Duty Claims Are Timely

### Six-Year Limitations Period Applies
### To Breach of Fiduciary Duty in a Contractual Context

There is no statute or Court Rule in New York that defines the limitations period for all breach of fiduciary claims.  The prevailing rule as defined by caselaw is to adopt the closest applicable statute based upon the nature of the case.  This is the origin of the distinction between equitable and monetary relief cases cited by the defendants in their brief.

However, the rule with more particular and direct applicability to this case, uses the contract statute of limitations when the fiduciary duty that is breached arises in a contract setting.  <u>Klock v Lehman Brothers Kuhn Loeb Inc.</u>, 584 F Supp 210 (SDNY 1984); <u>Vasile v Dean Witter Reynolds</u>, 20 F Supp 2d 465, 485-6 (EDNY 1998); <u>Unibell</u>

<u>Anesthesia v Guardian Life Insurance Company</u>, 658 NYS2d 14, 239 AD2d 248 (1997).   As the court explains in Vasile:

> Under New York law, a six year limitations period applies to a claim for breach of fiduciary duty only where the alleged breach "had its genesis in the contractual relationship of the parties."  Sears Roebuck & Co. v Enco Associates, Inc., 43 NY2d 389, 396, 401 NYS2d 767, 771, 372 NE2d 555 (1977).

<u>Vasile v Dean Witter Reynolds</u>, <u>supra</u>, at 485.  The limitations period for contract related cases is found in CPLR 213(2).

Plaintiff's Complaint sets out a contractual relationship between the parties.  The individual defendants, representing the companies and partnerships involved, took on a fiduciary duty by their actions and advice given while selling a series of limited partnership investments to plaintiffs over a period of time beginning in July 1998.

These defendants masqueraded as securities brokers.  Under New York law, a stockbroker owes a fiduciary duty to customers relying on the broker's advice.  <u>Conway v Icahn & Co.,</u> 16 F3d 504 (2nd Cir 1994).  That duty includes giving "honest and complete information when recommending a purchase or sale."  <u>De Kwiatkowski v Bear, Stearns & Co., Inc</u>., 306 F3d 1293, 1302 (2nd Cir 2002).

The faux brokers in this case took on the duties of real brokers, setting up an extended contractual relationship costing the plaintiff her retirement savings.  Suit for their breach of the broker's duties is timely under New York's six year statute of limitations.

## II.   The Allegations of Fraud in the Complaint Are Stated With Sufficient Specificity

While F.R.C.P. 9 requires fraud to be pleaded with particularity, "the rule does not require absolute particularity or the recital of the evidence."  Wright and Miller, 5A Fed Practice and Procedure, Sec. 1298.  Rather, a balance must be struck between the requirement for specificity and the requirement for simplicity found in Fed. R. Civ. Pro. 8.

The allegations in this case are similar to those found sufficient in <u>Wells Fargo Bank Northwest v TACA International Airlines</u>, 247 F Supp 2d 352 (2002).  In that case, the plaintiff cited a specific misrepresentation and omission made "beginning in January 1998" and the people involved.  Knowledge that the representation was false or misleading was alleged, and reasonable reliance based on the relative experience of the parties.  In that case, the pleading was judged as sufficient.

In the instant case, we have a time-frame for the misrepresentations and omissions; namely the period of the initial solicitations and sales, beginning in July 1998 and a subsequent sale in January 2000.   Muriel and Ralph Barter, representing the other defendants, are alleged in the Complaint to have misrepresented

themselves as securities brokers, and omitted the information that the securities they were selling were unregistered. Complaint, para. 11-12, 15-16, 28.  They also represented that unregistered limited partnerships, with 50% of the investments to be placed in "emerging small capitalization companies", were safe and secure places to put plaintiff's retirement savings.  Complaint, para. 13-14, 34.

These facts certainly constitute "strong circumstantial evidence of conscious misbehavior or recklessness" and thus sufficient allegations of scienter.  <u>Wells Fargo Bank v. TACA International Airlines</u>, supra, at 364-5.  The Barters must have known that they lacked broker's licenses and that their securities were unregistered.  If they acted like and represented themselves as brokers when they were not, advising elderly clients that their own unregistered investment vehicles were suitable for retirement funds was, at best, reckless.  The plaintiff's lack of experience in investing is pleaded and her reliance may be considered reasonable if these facts are proven.

Defendants have good notice of the specific nature of the claims against them and, therefore, the specificity requirements of federal rules are met.

### III.  Defendants Misconstrue and Misstate Claim for Conspiracy

Defendants argue that the allegation in Count III of the Complaint must be dismissed based upon their incorrect and misleading interpretation of long standing law in New York relating to claims for conspiracy to commit a tort.

The leading decision on that proposition states that "a mere conspiracy to commit a (tort) is never **of itself** a cause of action" (emphasis added)  <u>Alexander and Alexander of New York, Inc. v. Fritzen</u>, 68 N.Y.2d 968, 510 N.Y.S.2d 546, 547 (1986). The Court, however, continues by stating that "(a)llegations of conspiracy **are permitted** only to connect the actions of separate defendants with an otherwise actionable tort." (emphasis added)

The allegation in Count II of the Complaint incorporates by reference all previous allegations made in the Complaint contained in Count I (Breach of Contract)  and Count II (Brach of Fiduciary Duty). Count III, therefore, is not, and is not intended to be, a "stand alone" claim without any connection and interrelationship to other tortious claims.  Count III is based upon and incorporates the allegations in the two previous Counts.

The Court in <u>Alexander</u>, *supra*, was simply declaring that a independent claim for conspiracy to commit a tort is not recognized.

Count III in the Complaint is exactly the type of conspiracy claim that **is** recognized. The named individual Defendants; namely Ralph Barter and Muriel Barter, are, by information and belief, related as mother and son, and are the principals of the named corporate Defendants. The allegations of Count III, which incorporate the Breach of Contract and Breach of Fiduciary Duties claims, further elaborates upon those claims by alleging that said individuals acted in concert and conspiracy in making decisions and taking actions that resulted in the commissions of the torts enunciated in Counts I and Count II.

## IV. Breach of Contract Has Been Pleaded As to the Corporate and Partnership Defendants

As part of the limited partnership agreements sold to plaintiff, the limited partnerships and the general partner, Unifund Financial Corporation, entered into a promissory note for 50% of the sum invested by plaintiff as a limited partner. Complaint, para. 17-18. These are the contractual promises referred to specifically in paragraph 26 of the Complaint, detailing the contractual breach involved in this count.

Plaintiff agrees that the individuals in this case are not contractual parties referred to here and therefore are not covered by this count.

The partnerships and Unifund Financial, however, are directly cited, and contractually liable.

## V.   The Allegations Include Conduct That May Support an Award of Punitive Damages

In <u>New York University v Continental Insurance</u>, 87 NY2d 308, 662 NE2d 763 (1995), the Court of Appeals set out four specific requirements for a claim for punitive damages in a contract situation: 1) the conduct must be actionable as an independent tort; 2) the conduct must be egregious; 3) the egregious conduct must be directed to the plaintiff; and 4) the conduct must be part of pattern directed at the public generally.

The Court set out two bases for independent torts that apply to this case. An independent tort occurs when the defendant "has breached a duty of reasonable care distinct from its contractual obligations," or when "a party has fraudulently induced the plaintiff to enter into a contract."  <u>Id</u>, at 316.

Both of these occurred here.  A duty of care arose when the individual defendants posed as licensed stockbrokers and gave investment advice to the plaintiff.  This was independent of the various contracts they entered into to sell the investments.  Those sales were also fraudulently induced with material misrepresentations and omissions.

The conduct was egregious and directed at the Plaintiff.  A large amount of money, over $200,000, was bilked out of an

unsophisticated person with little experience in handling investment money. This was plaintiff's retirement fund. The funds simply disappeared and have not been accounted for at all.

The information plaintiff has to date, as alleged in the Complaint, strongly suggests that the fraud involved here was not limited to her, but was directed to a larger populace. Three separate corporate entities (including Fifthmar Capital) and four limited partnerships were involved. The limited partnership "investments" sold by defendants to the plaintiff were "Series X, XI, XII and XIV."

Discovery will be necessary to establish how wide the net was thrown by defendants to find other victims, and plaintiff should be allowed to develop the evidence for punitive damages. See <u>Merrill Lynch & Co. v Allegheny Energy</u>, 2003 WL 22795650 (SDNY 2003) ("It may be that once all the facts are fleshed out there is no sustainable claim for punitive damages. For now the wrongful conduct of Merrill Lynch coupled with its alleged breach of fiduciary duty and its public persona leads me to deny this branch of the motion.")

Stockbrokers are licensed due to a strong need to protect the public from the plethora of schemes that bilk unsophisticated investors out of hard-earned money every year. There was no prior or private relationship between the plaintiff and defendants here. It was just another of those schemes. No matter how many people were

taken by this scheme, it was a public matter, and the public protection afforded by punitive damages is called for.

Plaintiff's request for punitive damages, therefore, should stand while discovery is pursued.

Dated: December 1, 2004

/s/_____
Eric N. Aglow, Esq.(EA 7223)

Eric N. Aglow, Esq.
UAW-GM  Legal Services Plan
*10 Woodbridge Center Drive*
*Suite 730*
*Woodbridge, New Jersey 07095*
*Voice: 732 602 1166*
*Fax:   732 602 9730*
*E-mail: Ericag@Uawlsp.com*
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
CAROLYN FORREST


   -against-                                              Case No. *04-CV-5151 (LTS)*
                                                                   ECF CASE

UNIFUND FINANCIAL GROUP, INC.;
UNIFUND AMERICA, INC.;
UNIFUND PARTNERS FUND, L.P. Series X;
UNIFUND PARTNERS FUND, L.P. Series XI;           PROOF OF
UNIFUND PARTNERS GROUP, L.P. Series XII          MAILING
UNIFUND PARTNERS GROUP, LP, Series XIV
RALPH SCOTT BARTER and
MURIEL BARTER
                        Defendants.
-----------------------------------------------------------x

1.   I, the undersigned, am Eric N. Aglow, Esq, UAW-GM Legal Services Plan, attorney(s) for Plaintiff in the above-entitled action.

2.   On December 1, 2004, I mailed in the U.S. Post Office in Woodbridge, New Jersey, a sealed envelope with postage prepaid thereon, by ordinary mail, containing Opposition to Motion to Dismiss addressed to attorney for Defendants, Alfred Ferrer III, Esq. at 3 Park Ave., 16th Floor, New York City, New York 10016.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: 12/1/04                                    /S/_____
                                                  Eric N. Aglow, Esq.(EA 7223)