**Eric N. Aglow, Esq.**
**UAW-GM  Legal Services Plan**
*10 Woodbridge Center Drive*
*Suite 730*
*Woodbridge, New Jersey 07095*
*Voice: 732 602 1166*
*Fax:   732 602 9730*
*E-mail: Ericag@Uawlsp.com*
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x

**CAROLYN FORREST**

                                               **AMENDED**
                                               **COMPLAINT**
            Plaintiff               **JURY TRIAL DEMAND**

  -against-                                             Case No. *04-CV-5151 (LTS)*

**UNIFUND FINANCIAL GROUP, INC.;**
**UNIFUND AMERICA, INC.;**
**RALPH SCOTT BARTER and**
**MURIEL BARTER**
                  Defendants.
---------------------------------------------------------------------x

**AMENDED COMPLAINT FOR MONETARY DAMAGES**

    Plaintiff Carolyn Forrest, by and through counsel, Eric N. Aglow, Esq.,  UAW Legal Services Plan, for her first amended complaint states the following:

**INTRODUCTION**

    1.    Plaintiff was induced by misrepresentations by the Defendants to invest a large portion of her available retirement funds in a very risky enterprise, unregistered in any state.  She seeks monetary damages.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction under 28 U.S.C. 1332 because the matter in controversy exceeds the sum of $75,000 and there is complete diversity of citizenship. Plaintiff is an individual residing in, and a citizen of, Michigan and all the defendants are citizens of New York State.

3. Venue is proper in this Court pursuant to 28 U.S.C. 1391 (a) and (c).

4. Plaintiff is an individual residing at 6605 Heron Point, West Bloomfield, Michigan 48323.

5. Defendants Unifund Financial Group, Inc., and Unifund America, Inc., (hereinfter "Unifund") are New York corporations, organized and existing under the laws of the State of New York, with principal place of business, by information and belief, at 540 Madison Ave., New York City, New York and 575 Madison Ave., New York City, New York.

6. Defendant Ralph Scott Barter is an individual residing, by information and belief, at 10 Harbor Street, East Hampton, New York.  At all relevant times, he was President and principal owner of Unifund Financial Group, Inc, and Unifund America, Inc.

7. Defendant Muriel Barter is an individual residing, by information and belief, at 333 E. 49th Street, Apt. 8H, New York City, New York 10017.  At all times relevant, she was an employee and/or officer of Unifund Financial Group, Inc, and Unifund America, Inc.

8. In June, 1998, Plaintiff's son, Lewis Forrest, was put in contact with Muriel Barter, an employee and agent representing the Unifund defendants, by an

acquaintance. Lewis Forrest had few assets and little money to invest. Muriel Barter told Lewis that the Unifund companies were growing investment businesses that could put him into sound, low-risk investments that would yield 15% a year, if he could invest at least $20,000. She portrayed Unifund as a solid company with wide-ranging investments. She repeatedly described herself as a stockbroker.

9. Lewis Forrest put his mother, Plaintiff Carolyn Forrest, in touch with Muriel Barter. Plaintiff at that time was retiring from a career as an employee and officer of the United Automobile Workers union, and would receive the proceeds of a UAW sponsored and controlled severance plan in July. She had few assets beyond the $300,000 in the severance plan and approximately $100,000 in equity in her house. She was an unsophisticated investor who had bought few stocks, bonds or mutual funds in her life.

10. Carolyn Forrest talked to Muriel Barter by telephone on several occasions in June and July, 1998. Barter referred to herself and defendant Scott Barter as "stockbrokers". She was not licensed or registered by the National Association of Securities Dealers or any state of federal agency to sell stock or other investments.

11. In telephone conversations in June and July, 1998, Carolyn Forrest told Muriel Barter of her limited assets and lack of investment experience. Barter assured Plaintiff that Unifund was solid, with wide-ranging investments, and that investing with Unifund was "safe" and would not risk loss of her retirement money.

12. In telephone conversations in June and July, 1998, Defendant Muriel Barter advised Plaintiff to invest in limited partnerships, with Unifund corporations as general partner.

13. Muriel Barters advised that these investments would be good and appropriate investments for retirement money by an investor with limited other resources for retirement and that these investments would be safe. Muriel Barter also relayed similar advice from Scott Barter to Plaintiff. Muriel Barter informed Plaintiff that she had reviewed Plaintiff's situation with Scott Barter, who advised that Plaintiff purchase Unifund's limited partnerships. According to Muriel Barter, Scott Barter also affirmed that these were safe investments with a "guaranteed" return.

14. On June 25, 1998, relying on statements about the investments made by Muriel Barter and, through Muriel Barter, by Scott Barter, Plaintiff and her son bought a limited partnership investment from Unifund, investing $20,000 jointly, $15,000 of which was money supplied by Plaintiff.

15. In coming months, relying on continuing representations by Muriel and Scott Barter as presented here, Plaintiff invested further sums in Unifund's limited partnerships and warrants, included:

    a. $100,000 on July 14, 1998;

    b. $10,000 on July 17, 1998;

    c. $30,000 on August 18, 1998;

    d. $100,000 on November 6, 1998;

16. Induced by further representations by the Barters, Plaintiff agreed in November, 1998, and again in March, 1999, to reinvest interest income promised by Unifund and due to be paid.

17. Plaintiff was also induced in January, 2000, to reinvest $21,151.92 of interest from the limited partnerships in a Fifthmar Capital Corporation, a company run by Muriel Barter. She was told that this money would be invested in safe and profitable stock by Muriel Barter, who again represented that she was a stockbroker, and that Plaintiff would receive a return of at least 12 1/2 %.

18. Beginning in July 1998, Plaintiff invested over $200,000 in four limited partnerships sold by defendants; namely Unifund Partners Fund, L.P., Series X, XI, XII and XIV. Each limited partnership had Unifund Financial Group as its general partner.

19. The limited partnership investments sold to Plaintiff by defendants were not registered with the state or federal government. As such, these investments could only legally be sold to persons with large assets (exceeding $1,000,000) or large incomes. Plaintiff did not qualify.

20. Plaintiff was not informed that these investments were not registered prior to purchasing the securities. Muriel Barter and, through Muriel, Scott Barter were informed and aware of the limited assets and income of Plaintiff before any of these investment vehicles were sold.

21. Each partnership involved a promissory note, payable at 15% interest annually, with the principal payable in either 3 or 4 years.

22. The limited partnership was to be invested by the general partner in "emerging small capitalization companies" to be identified by the general partner.

23. Starting with the first telephonic and written solicitations from Muriel Barter in June, 1998, Muriel and Scott Barter used the planned public offering of stock in Unifund America and the proposed merger of their two companies, Unifund Financial and Unifund America as principal selling points, stating that the offering would benefit Unifund investors with increased value, cash payments and the opportunity to get in on an Initial Public Offering.

24. Muriel Barter trumpeted these planned developments in her first letter to Plaintiff, on June 18, 1998. Scott Barter referred to them in the form he provided to Plaintiff, which Plaintiff was asked to sign when Plaintiff investing the first $20,000 on June 24, 1998. When Plaintiff was asked to reinvest $18,637.50 due in interest in March, 1999, Scott Barter again used the proposed merger and opportunity to partake in Unifund America's IPO in a March 8 letter and in the form given to Plaintiff to sign on March 14, as reasons why reinvesting was advisable.

25. In May, 1999, Scott Barter, as president and CEO, submitted a Registration Statement and Prospectus to the SEC on behalf of Unifund America. In this document, Barter characterized Unifund America as a "development stage" merchant banking firm that had conducted no transactions to that point. He admitted that investing in Unifund America "involves a high degree of risk and should only be made by those who can afford to lose up to their entire investment." This document and the information in it were never made available to Plaintiff.

26. In the Registration Statement, Scott Barter cited many reasons that investing in Unifund America was risky, including:

   a. "There is no market for the shares or warrants we are offering."

   b. "[W]e may need additional financing after this offering is completed. We have no commitments for additional cash funding . . .

   c. "Many of our transactions will be high-risk investments."

27. Neither Muriel Barter nor Scott Barter ever informed Plaintiff of any of the risks detailed in the SEC Registration Statement and Prospectus.

28. Plaintiff was provided with statements through December 1, 2000, which claimed that her portfolio with Unifund was worth $272,800, and the account jointly held with her son was worth $22,900. Since then statements have not been provided.

29. All the promissory notes given with the investments in limited partnerships came due during 2001 and 2002, but neither principal nor interest has been paid.

30. Defendants have never revealed to Plaintiff where the money was invested nor where the alleged gain in the account has gone.

## COUNT I
## BREACH OF CONTRACT

31. Plaintiff realleges paragraphs 1-30 as stated above.

32. Defendant Unifund Financial Group, Inc., was the general partner in the limited partnership agreements sold to Plaintiff, including Unifund Partners Fund, L.P., Series X, XI, XII and XIV.

33. In these limited partnership agreements, general partner Unifund Financial Group, Inc., contractually committed itself to use due care to advance the interests of each limited partnership, and to act in good faith in the interests of the limited partners.

34. As general partner, Unifund Financial was responsible for investing the funds of each limited partnership.

35. Unifund Financial, and its principals and agents, were aware of the limited financial means and need for preservation of capital of Plaintiff, owner of a substantial interest of $100,000 each (at least 1/5 of the total) in Limited Partnerships X and XI and lesser stakes in the other limited partnerships.

36. As of December, 2000, the general partner reported the combined account of Plaintiff in these limited partnerships was valued at $272,800. At that point, the general partner stopped reporting to Plaintiff on the value of her interest in these partnerships. No information has been provided.

37. The promissory notes that were a part of each partnership agreement came due in 2001 and 2002. The general partner has not paid any sums due under these notes, has not repaid principal, and has not issued any explanation of these actions.

38. In order to prevent excessive losses, the general partner was required under these agreements to liquidate the partnerships if the value of investment accounts decreased by 50% of their original value, distributing assets to the limited partners. No such action was ever taken by Unifund Financial.

39. In failing to maintain any value of the funds entrusted to it, failing to notify Plaintiff of what happened to her investment, failing to repay promissory notes, informing Plaintiff that her investment was gaining in value when the value was in reality disappearing, failing to protect assets by liquidating the partnership when losses reached the level that required liquidation under the agreement, Unifund Financial breached contractual requirements. Defendant acted in a grossly negligent fashion and in bad faith, in direct violation of contract.

40. Plaintiff has lost principal in the amount of over $200,000 and interest promised at rates of 15% and 12 ½% annually due to the failure of Defendant Unifund Financial to conform to its duties under the contract.

## COUNT II
## FRAUD AND CONSPIRACY TO COMMIT FRAUD

41. Plaintiff realleges paragraphs 1-32 as stated above.

42. In soliciting Plaintiff, Defendants acted in concert to make fraudulent statements and representations regarding the investments they marketed, including:

- Defendant Barters were qualified and licensed to provide investment advice and sell securities.
- That the investments they were recommending were safe and secure and not putting Plaintiff's principal at risk.
- That the limited partnerships were suitable investments for a large portion of an investors limited retirement funds.
- That the company offering these securities was experienced, solvent and trustworthy.

28    Defendants did not disclose that the investments involved were not registered, as required by law, for sale to unsophisticated investors of limited means.

29    Defendants deliberately misled Plaintiff about the value of the merger of related companies Unifund Financial and Unifund America, the value of any public offering of Unifund America, and the riskiness of any investment in Unifund America. Defendants were well aware of true facts, the limited prospects and the true risks.

43.    Defendants intentionally misrepresented the safety and security of said investments, knowing that the partnerships were risky and unsuitable and did so with reckless indifference for the needs of the Plaintiff.

44.    Defendants intended that Plaintiff rely on these misrepresentations, and Plaintiff did so rely in deciding to purchase the investments.

45.    The intentional fraudulent conduct caused the loss of Plaintiff's investments and great emotional distress.

**WHEREFORE**, Plaintiff demands Judgment by this Court against Defendants as follows:

a. Compensatory damages;

b. Punitive damages for intentional and fraudulent misrepresentations and concealment of material facts;

c. Interest and costs of suit;

d. For such other relief as the Court deems just.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury of any issues triable by jury pursuant to Fed.R.Civ. Pro.38.

Dated: 5/25/05                                        s/ _____
                                                                Eric N. Aglow ( EA 7223)

**CERTIFICATION**

I hereby certify that the matter in controversy is not the subject of any other court, arbitration or administrative proceeding.

                                                s/_____
                                                        Eric N. Aglow (EA 7223)

Eric N. Aglow, Esq.
UAW-GM Legal Services Plan
10 Woodbridge Center Drive
Suite 730
Voice No.  732 602 1166
Fax No.    732 602 9730
E-mail:    Ericag@Uawlsp.com
Attorney(s) for Plaintiff

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

CAROLYN FORREST,
    Plaintiff    **CASE No. 04-CV-5151(LTS)**
  **vs.**
            **Civil Action**
UNIFUND FINANCIAL GROUP, ET AL  **PROOF OF MAILING**
    Defendant(s)

1. I, the undersigned, am Eric N. Aglow, Esq, UAW-GM Legal Services Plan, attorney(s) for Plaintiff in the above-entitled action.

2. On May 25, 2005, I mailed in the U.S. Post Office in Woodbridge, New Jersey, a sealed envelope with postage prepaid thereon, by ordinary mail, containing the Amended Complaint addressed to the attorney for the Defendants, Alfred Ferrer, Esq., Eaton and Van Winkle at 3 Park Ave., 16th Floor, New York City, New York 10016.

 I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: May 25, 2005

           /s/_____
            Eric N. Aglow, Esq.