UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CAROLYN FORREST,

                                    Plaintiff,

          -against-

UNIFUND FINANCIAL GROUP, INC., UNIFUND
AMERICA, INC., RALPH SCOTT BARTER and
MURIEL BARTER,

                                    Defendants.

Case No. 04 CV 5151 (LTS)
ECF Case

**DECLARATION OF
ALFRED FERRER III**

ALFRED FERRER III, pursuant to 28 U.S.C. §1746, declares as follows:

1.      I am an attorney admitted to practice in this court, and I am of counsel to the firm

of Eaton & Van Winkle LLP, attorneys for defendants.

2.      I respectfully submit this declaration in support of the motion by all defendants

for: (i) an order dismissing the Amended Complaint, dated May 25, 2005, pursuant to Fed. R.

Civ. P. 9(b) and 12(b)6; (ii) to the extent the Court does not dismiss all claims in the Amended

Complaint, an order pursuant to 9 U.S.C.A. §§ 3 and 4 staying this action and compelling

arbitration of any remaining claims pursuant to the arbitration agreement entered into by plaintiff;

and (iii) sanctions and attorneys fees and costs pursuant to Fed. R. Civ. P. 11.

3.      Annexed hereto are true copies of the following documents referred to in the

accompanying Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended

Complaint and for Other Relief, dated August 12, 2005 (the "Memorandum of Law"):

| | |
|---|---|
| Exhibit 1 | Complaint in this action, dated June 28, 2004 (referred to as the "original Complaint" in the Memorandum of Law); |
| Exhibit 2 | Memorandum Opinion and Order in this action of the Honorable Laura Taylor Swain, dated May 5, 2005 (referred to as the "Original Dismissal Order" in the Memorandum of Law); |
| Exhibit 3 | Amended Memorandum Opinion and Order in this action of the Honorable Laura Taylor Swain, dated May 12, 2005 (referred to as the "Amended Dismissal Order" in the Memorandum of Law); |
| Exhibit 4 | Amended Complaint in this action, dated May 25, 2005 (referred to as the "Amended Complaint" in the Memorandum of Law); |
| Exhibit 5 | Form of Agreement of Limited Partnership of Unifund Partners Fund, L.P., Series X, with attached form of Non-Negotiable Note; |
| Exhibit 6 | Form of Agreement of Limited Partnership of Unifund Partners Fund, L.P., Series XI, with attached form of Non-Negotiable Note; |
| Exhibit 7 | Form of Agreement of Limited Partnership of Unifund Partners Fund, L.P., Series XII, with attached form of Non-Negotiable Note; |
| Exhibit 8 | Form of Agreement of Limited Partnership of Unifund Partners Fund, L.P., Series XIV, with attached form of Non-Negotiable Note; |
| Exhibit 9 | Letter dated May 26, 2005, of Eaton & Van Winkle LLP to Elizabeth Acton; |
| Exhibit 10 | Letter dated June 6, 2005, of Eaton & Van Winkle LLP to Elizabeth Acton; and |
| Exhibit 11 | Letter dated June 23, 2005, of Eaton & Van Winkle LLP to Elizabeth Acton. |

4.      The three letters dated May 26, June 6 and June 23, 2005, of my firm, Eaton & Van Winkle LLP, attached as Exhibits 9, 10 and 11, were all directed to Elizabeth Acton, a former clerical assistant to certain Unifund entities, including defendants in this action.  Ms. Acton, who has confirmed directly to our firm, continues to be in the possession of original files of those companies, including defendants, which she has refused to return to such companies, to their accountants, and to their other representatives, including my firm, unless acquiescence is made to the entirely unlawful demand by her for amounts of cash as high as $200,000 and shares of certain investments to which she was never an investor or had any other lawful right to such shares.

5.      In connection with our efforts to recover such files from Ms. Acton so that we could appropriately represent our clients in this action and other matters (*see e,g,*, Exhibits 9, 10 and 11), we have learned that Ms. Acton has been working in concert with others, including Carolyn Forrest, the plaintiff in this action.  Ms. Forrest has, for example, herself made demands for stock in an investment in which she has never invested and never would have been aware of absent concerted actions with Ms. Acton.

6.      The commencement and continued prosecution of this suit by plaintiff as part of an overall course of improper conduct with others of attempting to obtain large sums of cash and stock from defendants by the unlawful withholding of such defendants' original files, and by other threats associated with that course of conduct, is illegal and an "improper purpose" within the meaning of Fed. R. Civ. P. Rule 11(b)(1).  Thus, this and the additional reasons discussed at Section V, pages 19-21, of defendants' Memorandum of Law warrant Rule 11 sanctions for the many independent reasons demonstrated there.

WHEREFORE, for the above reasons and those discussed in defendants' accompanying Memorandum of Law, defendants respectfully request:  (i) an order dismissing the Amended Complaint, dated May 25, 2005, pursuant to Fed. R. Civ. P. 9(b) and 12(b)6; (ii) to the extent the Court does not dismiss all claims in the Amended Complaint, an order pursuant to 9 U.S.C.A. §§ 3 and 4 staying this action and compelling arbitration of any remaining claims pursuant to the arbitration agreement entered into by plaintiff; and (iii) sanctions and attorneys fees and costs pursuant to Fed. R. Civ. P. 11.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on August 12, 2005, in New York, New York.

ALFRED FERRER III

# EXHIBIT 1

# TO THE FERRER DECLARATION

Eric N. Aglow, Esq.
UAW-GM Legal Services Plan
*10 Woodbridge Center Drive*
*Suite 730*
*Woodbridge, New Jersey 07095*
*Voice: 732 602 1166*
*Fax:  732 602 9730*
*E-mail: Ericag@Uawlsp.com*
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

**CAROLYN FORREST**

|  |  |
|---|---|
| Plaintiff | **COMPLAINT** |
|  | **JURY TRIAL DEMAND** |
| -against- | **Case No. *04-CV-5151 (LTS)*** |

**UNIFUND FINANCIAL GROUP, INC.;**          **ECF CASE**
**UNIFUND AMERICA. INC.;**
**UNIFUND PARTNERS FUND, L.P. Series X;**
**UNIFUND PARTNERS FUND, L.P. Series XI;**
**UNIFUND PARTNERS GROUP, L.P. Series XII**
**UNIFUND PARTNERS GROUP, LP, Series XIV**
**RALPH SCOTT BARTER and**
**MURIEL BARTER**
                    Defendants.

------------------------------------------------------------------x

## COMPLAINT FOR MONETARY DAMAGES

Plaintiff Carolyn Forrest. by and through counsel. Eric N. Aglow, Esq.. UAW

Legal Services Plan. for her complaint states the following:

## INTRODUCTION

1.     Plaintiff was induced by misrepresentations by the Defendants to invest a large portion of her available retirement funds in a very risky enterprise, unregistered in any state.  She seeks monetary damages.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction under 28 U.S.C. 1332 because the matter in controversy exceeds the sum of $75,000 and there is complete diversity of citizenship. Plaintiff is an individual residing in, and a citizen of, Michigan and all the defendants are citizens of New York State.

3.     Venue is proper in this Court pursuant to 28 U.S.C. 1391 (a) and (c).

4.     Plaintiff is an individual residing at 6605 Heron Point, West Bloomfield, Michigan 48323.

5.     Defendants Unifund Financial Group, Inc., and Unifund America, Inc., (hereinfter "Unifund") are New York corporations, organized and existing under the laws of the State of New York, with principal place of business, by information and belief, at 540 Madison Ave., New York City, New York and 575 Madison Ave., New York City, New York.

6.     Defendants Unifund Partners Fund, L.P., Series X, Unifund Partners Group, L.P., Series XI, Unifund Partners Group, L.P., Series XII and Unifund Partners Group, L.P., Series XIV, are limited partnerships, with Unifund Financial Group, Inc., as the general partner of each (hereinafter referred to as "Unifund Partners").

7.      Defendant Ralph Scott Barter is an individual residing, by information and belief, at 10 Harbor Street, East Hampton, New York. At all relevant times, he was President and principal owner of Unifund Financial Group, Inc, and the other Unifund Defendants.

8.      Defendant Muriel Barter is an individual residing, by information and belief, at 333 E. 49th Street, Apt. 8H, New York City, New York 10017. At all times relevant, she was an employee and/or officer of Unifund Financial Group, Inc, and other Unifund Defendants.

9.      In July 1998, Plaintiff was solicited by Muriel Barter to purchase investments created and marketed by Defendants Unifund.

10.     At said time, an all times relevant herein, Plaintiff was an unsophisticated investor with retirement and severance money to invest to fund her retirement.

11.     Defendants Muriel and Ralph Barter, acting on behalf of Unifund, encouraged Plaintiff to rely on them for investment advise and portrayed themselves as a "securities broker".

12.     By information and belief, Defendant Barters were not licensed as security brokers.

13.     Defendant Barters advised Plaintiff to invest in limited partnerships, with Unifund corporations as general partner.

14.     Defendant Barters advised that said investments would be good and appropriate investments for retirement money by an investor with limited other resources for retirement and that these investments would be safe.

15.    Said investments sold to Plaintiff by defendants were not registered with the state or federal government.

16.    Plaintiff was not informed of said non-registration prior to purchasing the securities.

17.    Beginning in July 1998, Plaintiff invested over $200,000 in four limited partnerships sold by defendants; namely Unifund Partners Fund, L.P., Series X, XI, XII and XIV. Each limited partnership had Unifund Financial Group as its general partner.

18.    Each partnership involved a promissory note for half the investment, payable at 15% interest annually, with the principal payable in either 3 or 4 years.

19.    The remaining 50% of each limited partnership was to be invested by the general partner in "emerging small capitalization companies" to be identified by the general partner.

20.    Account statements from Unifund put the value of the investments at $272,000 in the year 2000.

21.    In January 2000, Defendant Barters also induced Plaintiff to invest $21,151 in a promissory note with an entity entitled Fifthmar Capital Corporation which, by its terms, was payable in three years.

22.    When the limited partnerships' principal became due, nothing was paid to Plaintiff despite demands from Plaintiff.

23.    None of the Defendants have been paid on any of the promissory notes despite said demands from Plaintiff to pay.

24.     Defendants have never revealed to Plaintiff where the money was invested nor where the alleged gain in the account has gone.

## COUNT I

## BREACH OF CONTRACT

25.     Plaintiff realleges paragraphs 1-24 as stated above.

26.     Defendants Unifund and Unifund Partners made contractual promises to pay promissory notes, which have come due but are all unpaid, in principal and interest.

27.     Plaintiff has lost principal in the amount of over $200,000 and interest promised at rates of 15% and 12 ½% annually due to the failure of Defendants to pay as contractually required.

## COUNT II

## BREACH OF FIDUCIARY DUTY

28.     Plaintiff realleges paragraphs 1-27 as stated above.

29.     Defendants, acting through Defendant Barters, induced Plaintiff to rely on said Defendant and Unifund for advice and counsel on investments and securities.

30.     Plaintiff had little experience in this area and Plaintiff continuously communicated a need for advice to all Defendants.

31.     Defendants owed a fiduciary duty to act in good faith and give reasonable and adequate advice, and to refrain from enriching themselves at the expense of Plaintiff.

32.    Defendants breached their duty, encouraging and advising Plaintiff to place most of her retirement assets in very risky, unregistered limited partnerships that enriched Defendants at Plaintiff's expense.

## COUNT III

## FRAUD AND CONSPIRACY TO COMMIT FRAUD

33.    Plaintiff realleges paragraphs 1-32 as stated above.

34.    In soliciting Plaintiff, Defendants acted in concert to make fraudulent statements and representations regarding the investments they marketed, including:

- Defendant Barters were qualified and licensed to provide investment advice and sell securities.

- That the investments they were recommending were safe and secure and not putting Plaintiff's principal at risk.

- That the limited partnerships were suitable investments for a large portion of an investors limited retirement funds.

- That the company offering these securities was experienced, solvent and trustworthy.

28    Defendants did not disclose that the investments involved were not registered, as required by law, for sale to unsophisticated investors of limited means.

35.    Defendants intentionally misrepresented the safety and security of said investments, knowing that the partnerships were risky and unsuitable and did so with reckless indifference for the needs of the Plaintiff.

36.    Defendants intended that Plaintiff rely on these misrepresentations, and Plaintiff did so rely in deciding to purchase the investments.

37.    The intentional fraudulent conduct caused the loss of Plaintiff's investments and great emotional distress.

WHEREFORE, Plaintiff demands Judgment by this Court against Defendants as follows:

    a.    Compensatory damages, general and special;

    b.    Punitive damages;

    c.    Interest, costs of suit, attorney's fees;

    d.    For such other relief as the Court deems just.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of any issues triable by jury pursuant to Fed.R.Civ.Pro.38.

Dated:  June 28, 2004                    /s_____

                                         Eric N. Aglow ( EA 7223)

## CERTIFICATION

I hereby certify that the matter in controversy is not the subject of any other court, arbitration or administrative proceeding.

                                         /s_____

                                         Eric N. Aglow (EA 7223)

# EXHIBIT 2

# TO THE FERRER DECLARATION

# ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CAROLYN FORREST,

        Plaintiff,

    -v-

UNIFUND FINANCIAL GROUP, INC.,
UNIFUND AMERICA, INC.,
UNIFUND PARTNERS FUND, L.P. SERIES X,
UNIFUND PARTNERS FUND, L.P. SERIES XI,
UNIFUND PARTNERS FUND, L.P. SERIES XII,
UNIFUND PARTNERS FUND, L.P. SERIES XIV,
RALPH SCOTT BARTER, and
MURIEL BARTER,

        Defendants.

No. 04 Civ. 5151 (LTS)

```
┌─────────────────────────────┐
│ USDC SDNY                   │
│ DOCUMENT                    │
│ ELECTRONICALLY FILED        │
│ DOC #: _____    │
│ DATE FILED: 05/06/05        │
└─────────────────────────────┘
```

## MEMORANDUM OPINION AND ORDER

APPEARANCES:

UAW-GM LEGAL SERVICES PLAN
  By: Eric N. Aglow, Esq.
10 Woodbridge Center Drive, Suite 730
Woodbridge, NJ 07095

*Attorneys for Plaintiff*

EATON & VAN WINKLE LLP
  By: Alfred Ferrer III, Esq.
Three Park Avenue, 16th Floor
New York, NY 10016

*Attorneys for Defendants*

LAURA TAYLOR SWAIN, United States District Judge

Plaintiff Carolyn Forrest ("Forrest") brings this action, asserting causes of action for breach of contract, breach of fiduciary duty, fraud, and conspiracy to commit fraud, against Unifund Partners Fund, L.P. Series X, Unifund Partners Fund, L.P. Series XI, Unifund Partners Fund, L.P. Series XII, Unifund Partners Fund, L.P. Series XIV (collectively "Unifund Partners"), Unifund Financial Group, Inc. ("Unifund Financial"), Unifund America, Inc. ("Unifund America"), Ralph Scott Barter and Muriel Barter. This matter comes before the Court on the motion of Defendants to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted, and pursuant to Rule 9(b) of the Federal Rules of Civil Procedure for failure to adequately plead fraud. Plaintiff asserts that the Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1332. The Court has considered thoroughly all the parties' submissions and argument in connection with the instant motion. For the following reasons, the complaint is dismissed for lack of subject matter jurisdiction, with leave to replead certain causes of action.

## BACKGROUND

The following facts, which are alleged in the complaint, are taken as true for the purpose of deciding the instant motion. Carolyn Forrest, an individual, is a citizen of Michigan. (Compl. ¶ 4.) Defendants Unifund Financial and Unifund America are corporations, incorporated under the laws of New York with their principal places of business in New York. (Id. ¶ 5.) The defendants Unifund Partners are limited partnerships. Defendant Unifund Financial is general partner of each of the limited partnerships. (Id. ¶¶ 6, 13, 17.) Plaintiff makes no specific allegations regarding the citizenship of the limited partners in the various partnerships, but does allege that she made debt and limited partnership interest investments in

each of the limited partnerships. (Id. ¶¶ 17, 18, 19.) Defendant Ralph Scott Barter, a citizen of New York, was president and principal owner of Defendants Unifund Financial, Unifund America and Unifund Partners. (Id. ¶ 7.) Defendant Muriel Barter, also a citizen of New York, was an employee and/or officer of Defendants Unifund Financial, Unifund America and Unifund Partners. (Id. ¶ 8.)

In July 1998, Muriel Barter solicited Forrest to purchase investments created and marketed by Unifund Financial. (Id. ¶ 9.) At that time and all times relevant to the Complaint, Forrest was an unsophisticated investor. (Id. ¶¶ 10, 30.) Muriel Barter is not a licensed securities broker. (Id. ¶ 12.) However, Muriel Barter portrayed herself to Forrest as a "securities broker." (Id. ¶ 11.) Muriel Barter encouraged Forrest to rely on her for investment advice, and advised Forrest to invest in limited partnerships. (Id. ¶¶ 11,17.) Muriel Barter advised Forrest that the recommended limited partnership investments would be "good and appropriate investments for retirement money by an investor with limited other resources for retirement," and that these investments would be safe. (Id. ¶ 14.)

Forrest agreed to purchase the recommended limited partnership investments using her retirement and severance money. (Id. ¶¶ 10.) Beginning in July 1998, Forrest invested more than $200,000 in Unifund Partners investments. (Id. ¶ 17.) The Unifund Partners investments were not registered with the state or federal government. (Id. ¶ 15.) Forrest was not notified by any of the Defendants that the Unifund Partners investments were not registered. (Id. ¶ 16.) For one half of each limited partnership investment, Forrest received a promissory note payable at fifteen percent interest annually, with principal payable in either three or four years. (Id. ¶ 18.) The remaining half of Forrest's limited partnership investments was to be invested by

the general partner in "emerging small capitalization companies" to be identified by the general partner. (Id. ¶ 19.) Account statements from the year 2000 valued Forrest's investments at $272,000. (Id. ¶ 20.)

In January 2000, Muriel Barter and/or Ralph Scott Barter, induced Forrest to invest an additional $21,151 in a promissory note with an entity named Fifthmar Capital Corporation. (Id. ¶ 21.) The Fifthmar promissory note, by its terms, became payable in three years. (Id.) The Fifthmar Capital Corporation, however, is not a party to this suit.

When the principal of Forrest's limited partnership investments became due, she demanded payment. (Id. ¶¶ 22, 23.) Defendants paid nothing on the promissory notes to Forrest. (Id. ¶¶ 22, 23) Defendants have not informed Forrest where her money was actually invested or what happened to the alleged gain from her investment activities with them. (Id. ¶ 24.)

## DISCUSSION

### Subject Matter Jurisdiction

The Court has an independent obligation to satisfy itself that it has subject matter jurisdiction of the controversies before it. "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed. R. Civ. P. 12(h)(3). As noted above, Plaintiff asserts that she is a citizen of the state of Michigan, that each of the defendants is a citizen of New York State, and that the Court therefore has diversity jurisdiction of the instant controversy under 28 U.S.C. § 1332.

Alleging that Unifund, Inc., is both a citizen of New York and the general partner of the Unifund limited partnerships. Plaintiff alleges that the limited partnerships are all citizens

4

of New York. However, for diversity jurisdiction purposes, partnerships share the citizenship of each of their partners; the law makes no distinction for this purpose between general and limited partners. See Cooper v. Parsky, 140 F.3d 433, 438 (2d Cir. 1998). Here, Plaintiff asserts that she made both equity and debt investments in each of the defendant limited partnerships. Taking her allegations as true, the limited partnerships thus share her Michigan citizenship. Complete diversity of citizenship, and thus subject matter jurisdiction, therefore appears to be lacking in this case and it must be dismissed on that ground.

The Court will afford plaintiff an opportunity to amend her complaint to pursue her viable claims against the diverse defendants if she wishes to do so. In anticipation of such an amendment, the interests of judicial economy dictate that the Court address the issues raised in defendants' motion to dismiss the complaint, as certain of plaintiff's causes of action are not viable and will not be permitted to be reasserted in an amended complaint.

### Rule 12(b)(6) and 9(b) Standards

Dismissal for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) is appropriate only where "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Onebeacon Ins. Co. v. Forman Int'l, Ltd., No. 04 Civ. 2271(RWS), 2005 WL 100849, at *3 (S.D.N.Y. Jan. 19, 2005) (quoting Bolt Elec., Inc. v. City of New York, 53 F.3d 465, 469 (2d. Cir. 1995)). In deciding such a motion, "the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor." Advanced Ceramics Corp. v. Saint-Gobain Advanced Ceramics Corp., No. 01 CV 7864(GBD), 2005 WL 323739, at *2 (S.D.N.Y. Feb. 10, 2005).

Federal Rule of Civil Procedure 9(b) provides that, "[i]n all averments of fraud . . .

the circumstances constituting fraud . . . shall be stated with particularity." Fed. R. Civ. P. 9(b).

The particularity demanded by Federal Rule of Civil Procedure 9(b) requires a plaintiff to "(1)

specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3)

state where and when the statements were made, and (4) explain why the statements were

fraudulent." Anatian v. Coutts Bank (Switzerland) Ltd., 193 F.3d 85, 88 (2d Cir. 1999) (quoting

Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1984) (internal citations

omitted)).

*Defendants' Motion to Dismiss the Breach of Fiduciary Duty Claim Pursuant to
Rule 12(b)(6).*

The parties agree that it is appropriate to look to New York law for the statute of

limitations for a breach of fiduciary duty cause of action. The parties disagree, however, as to

which statute of limitations is applicable to the breach of fiduciary duty claim presented in the

case at bar. Forrest argues that the six-year limitations period applicable to contract actions,

pursuant to N.Y. C.P.L.R.§ 213(2), governs in this case. Defendants, however, argue that the

three-year limitations period under N.Y. C.P.L.R. § 214(1) relating to actions to recover damages

for injury to property applies.

The general rule is that the applicable statute of limitations for breach of fiduciary

duty depends on the type of remedy sought. Loengard v. Santa Fe Indus., Inc., 70 N.Y.2d 262,

265, 514 N.E.2d 113, 519 N.Y.S.2d 801 (1987). Where the plaintiff is seeking equitable relief,

the applicable statute of limitations is six years; when the plaintiff is seeking only monetary

damages, the applicable statute of limitations is three years. See Cooper, 140 F.3d at 440-441.

Here, Plaintiff seeks only monetary damages. See Complaint. The statute of limitations

6

applicable to her breach of fiduciary duty claim is therefore three years.[1]

Whether the claim can survive the statute of limitations prong of Defendants' motion to dismiss therefore depends on whether the relevant conduct occurred within the three-year period before the instant action was commenced. It is clear on the face of Plaintiff's complaint that her breach of fiduciary duty claims are time-barred. The allegations of breach of fiduciary duty turn on Defendants' alleged false representations and material omissions concerning Barter's status as a securities broker and the suitability of the Unifund entities as investments for a person of Plaintiff's age and investment goals. The representations, and Plaintiff's investments, were allegedly made in 1998, more than five years before the complaint in this action was filed. Plaintiff also alleges that she was induced to make a further investment in an entity called Fifthmar Capital Corporation in January 2000. This second alleged investment also predates the filing of the complaint by more than three years.

Accordingly, Plaintiff's claims for breach of fiduciary duty will be dismissed. Because it is apparent on the face of the complaint that they are time barred, she will not be granted leave to replead them.

---

[1]     Citing, e.g., Sears, Roebuck & Co. v. Enco Assoc., Inc., 43 N.Y.2d 389, 372 N.E.2d 255, 401 N.Y.S.2d 767 (1977), Plaintiff argues for the application of what she characterizes as an exception to the three-year rule for cases in which the fiduciary duty arises in the context of a contract. The authorities upon which Plaintiff relies in arguing on this basis for a six-year rather than a three-year limitations period are, however, inapposite. Neither dealt with a fiduciary relationship regulated by ordinary fiduciary standards. (Sears dealt with claims for professional malpractice; in Cooper, the relevant contract substituted a gross negligence standard for a fiduciary conduct standard.) Moreover, Plaintiff alleges here that Defendants' fiduciary obligations arose from their proffer of investment advice rather than from any contractual arrangement.

*Defendants' Motion to Dismiss the Fraud and Conspiracy Claims Pursuant to Rules 9(b) and 12(b)(6).*

Defendants argue that Forrest has failed to plead her cause of action for fraud with particularity as is required by Federal Rule of Civil Procedure 9(b). In order to comply with the heightened pleading requirements, the complaint "must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Novak v. Kasaks, 216 F.3d 300, 306 (2d Cir. 2000) (internal citations omitted). Here, the complaint specifies four allegedly fraudulent statements or representations. However, with respect to each of the allegedly fraudulent statements or representations, the pleadings fail to identify the speaker, when, where, or even by what means each was made. For the foregoing reasons, the Court finds that the cause of action for fraud is inadequately pleaded, and, therefore, the Court grants Defendants' motion to dismiss the cause of action for fraud pursuant to Federal Rule of Civil Procedure 9(b) with leave to replead.

On a related point, Defendants moved to dismiss Forrest's cause of action for conspiracy to commit fraud. A cause of action for conspiracy cannot stand independently of its underlying tort. See Sokol v. Addison, 293 A.D.2d 600, 742 N.Y.S.2d 311 (2d Dept. 2002). Here, the tort underlying the claim for conspiracy is fraud. The Court has dismissed the cause of action for fraud with leave to replead. Accordingly, the Court also grants the motion to dismiss the cause of action for conspiracy to commit fraud with leave to replead.

*Defendants' Motion to Dismiss the Breach of Contract Cause of Action Pursuant to Rule 12(b)(6).*

Defendants also move to dismiss Forrest's cause of action for breach of contract.

"To state a claim in federal court for breach of contract under New York law, a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996) (internal citations omitted). "[U]nder the relaxed pleading requirements . . . [of the Federal Rules of Civil Procedure] it is enough that the complaint contains a short and plain statement of the claim sufficient to put the defendant on notice of the grounds for which plaintiff seeks relief." Reuben H. Donnelley Corp. v. Mark 1 Mktg. Corp. 893 F. Supp 285, 290-291 (S.D.N.Y. 1995) (internal citations omitted).

The complaint asserts a breach of contract claim against the defendants generally. However, Forrest does not allege that all Defendants are parties to the contract. Therefore, the motion to dismiss must be considered with respect to each Defendant individually. The parties concur, in their memoranda supporting and opposing this motion, that neither Ralph Scott Barter nor Muriel Barter is alleged to have been a party to any contract being sued upon. Therefore, the motion to dismiss the breach of contract claim is granted as to those defendants.

With respect to the four Unifund Partners defendants and Unifund Financial, as general partner of the limited partnerships, the Court finds that the breach of contract claim has been plead sufficiently. Therefore, Plaintiff will be permitted to replead her contract cause of action as against Unifund Financial.

Finally, the pleadings do not specify whether Defendant Unifund America is a party to any of the contracts. With respect to Unifund America, the motion to dismiss the cause of action for breach of contract is granted with leave to replead.

*Defendants' Motion to Dismiss the Claims for Punitive Damages, Special Damages and Attorney's Fees.*

### Punitive Damages

Although Forrest demands punitive damages in her complaint, she does not specify which causes of action serve as the basis for her demand. The Court will thus evaluate Forrest's demand for punitive damages with respect to Forrest's breach of contract claim, the only cause of action that she will be permitted to replead.

Punitive damages are not ordinarily available as a remedy for breach of contract. New York Univ. v. Cont'l Ins. Co., 87 N.Y.2d 308, 315, 662 N.E.2d 763, 639 N.Y.S. 2d 283 (1995). Punitive damages claims are permissible in connection with breaches of contract under the following circumstances: "(1) defendant's conduct must be actionable as an independent tort, (2) the tortious conduct must be . . . [egregious], (3) the egregious conduct must be directed to plaintiff, and (4) it must be part of a pattern directed at the public generally." Id. at 316.

Although Forrest failed to plead that Defendants' conduct was directed at the public generally, she argues that she has alleged facts which suggest that the conduct might have been directed at the public. Citing Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc., No. 02 Civ. 7689(HB), 2003 WL 22795650, at *9 (S.D.N.Y. Nov. 25, 2003), Forrest argues that she should be permitted to advance to discovery so that she can try to establish whether Defendants' conduct was directed at the public. However, Merrill Lynch is distinguishable from the instant case. As Forrest notes, the Merrill Lynch court relied on "the wrongful conduct of Merrill Lynch, coupled with its alleged breach of fiduciary duty and its public persona" in denying the motion to dismiss the claim for punitive damages. Id. at *9. Here, the claim for breach of fiduciary duty has been dismissed as time-barred. Moreover, Forrest does not allege that any of the defendants

has a public persona of the same, or similar, magnitude as Merrill Lynch. Without the breach of fiduciary duty claim or the public persona element, only the allegedly wrongful conduct remains. The Court finds that in the case at bar, the alleged breach of contract is insufficient to support a claim for punitive damages. Accordingly, Plaintiff will not be permitted to replead her claim for punitive damages.

### Special Damages

Federal Rule of Civil Procedure 9(g) requires that "[w]hen items of special damages are claimed they must be specifically stated." Fed. R. Civ. P. 9(g). "Special damages are those that are not the necessary result of the complained of act and the plaintiff should allege facts upon which to predicate recovery of such damages." PdP Parfums De Paris, S.A. v. Int'l Designer Fragrances, Inc., 901 F.Supp. 581, 585 (E.D.N.Y. 1995). Here, Forrest, who has not opposed Defendants' motion to dismiss the special damages claim, alleged no such facts on which to predicate recovery of special damages. Accordingly, Plaintiff will not be permitted to replead her claim for special damages.

### Attorney's Fees

It is well settled that attorney's fee awards are not generally available in absence of a contractual or statutory basis. Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 718, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967). Forrest pleaded neither a contractual nor a statutory basis for her demand, and has failed to oppose Defendants' motion to dismiss this claim. Accordingly, as the Court finds that the claim for attorney's fees lacks legal foundation, Plaintiff will not be granted leave to replead it.

## CONCLUSION

For the foregoing reasons, Plaintiff's complaint is dismissed for lack of subject matter jurisdiction. Plaintiff is hereby granted leave to serve and file, within fourteen (14) days of the date of this Memorandum Opinion and Order, an amended complaint reasserting her breach of contract claims against Defendants Unifund Financial Group, Inc. and Unifund America, Inc. If no such timely amended complaint is served and filed, this case shall be closed without further advance notice to the parties.

SO ORDERED

Dated: New York, New York
       May 5, 2005

LAURA TAYLOR SWAIN
United States District Judge

# EXHIBIT 3

# TO THE FERRER DECLARATION

ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CAROLYN FORREST,

Plaintiff,

-v-                                                    No. 04 Civ. 5151 (LTS)

UNIFUND FINANCIAL GROUP, INC.,
UNIFUND AMERICA, INC.,
UNIFUND PARTNERS FUND, L.P. SERIES X,
UNIFUND PARTNERS FUND, L.P. SERIES XI,
UNIFUND PARTNERS FUND, L.P. SERIES XII,
UNIFUND PARTNERS FUND, L.P. SERIES XIV,
RALPH SCOTT BARTER, and
MURIEL BARTER,

Defendants.

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #: _____           │
│ DATE FILED: 05/12/05             │
└─────────────────────────────────┘
```

AMENDED MEMORANDUM OPINION AND ORDER

APPEARANCES:

UAW-GM LEGAL SERVICES PLAN
  By: Eric N. Aglow, Esq.
10 Woodbridge Center Drive, Suite 730
Woodbridge, NJ 07095

*Attorneys for Plaintiff*

EATON & VAN WINKLE LLP
  By: Alfred Ferrer III, Esq.
Three Park Avenue, 16th Floor
New York, NY 10016

*Attorneys for Defendants*

LAURA TAYLOR SWAIN, United States District Judge

Copies mailed ~~faxed~~ to Attys for Plf + Dfts  5/12/05
Chambers of Judge Swain

*This Amended Memorandum Opinion and Order supersedes the Memorandum Opinion and Order issued on May 5, 2005. The Court has amended the discussion in the sections entitled "Punitive Damages" and "Conclusion."*

Plaintiff Carolyn Forrest ("Forrest") brings this action, asserting causes of action for breach of contract, breach of fiduciary duty, fraud, and conspiracy to commit fraud, against Unifund Partners Fund, L.P. Series X, Unifund Partners Fund, L.P. Series XI, Unifund Partners Fund, L.P. Series XII, Unifund Partners Fund, L.P. Series XIV (collectively "Unifund Partners"), Unifund Financial Group, Inc. ("Unifund Financial"), Unifund America, Inc. ("Unifund America"), Ralph Scott Barter and Muriel Barter. This matter comes before the Court on the motion of Defendants to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted, and pursuant to Rule 9(b) of the Federal Rules of Civil Procedure for failure to adequately plead fraud. Plaintiff asserts that the Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1332. The Court has considered thoroughly all the parties' submissions and argument in connection with the instant motion. For the following reasons, the complaint is dismissed for lack of subject matter jurisdiction, with leave to replead certain causes of action.

## BACKGROUND

The following facts, which are alleged in the complaint, are taken as true for the purpose of deciding the instant motion. Carolyn Forrest, an individual, is a citizen of Michigan. (Compl. ¶ 4.) Defendants Unifund Financial and Unifund America are corporations, incorporated under the laws of New York with their principal places of business in New York. (Id. ¶ 5.) The defendants Unifund Partners are limited partnerships. Defendant Unifund Financial is general partner of each of the limited partnerships. (Id. ¶¶ 6, 13, 17.) Plaintiff makes

no specific allegations regarding the citizenship of the limited partners in the various partnerships, but does allege that she made debt and limited partnership interest investments in each of the limited partnerships. (Id. ¶¶ 17, 18, 19.) Defendant Ralph Scott Barter, a citizen of New York, was president and principal owner of Defendants Unifund Financial, Unifund America and Unifund Partners. (Id. ¶ 7.) Defendant Muriel Barter, also a citizen of New York, was an employee and/or officer of Defendants Unifund Financial, Unifund America and Unifund Partners. (Id. ¶ 8.)

In July 1998, Muriel Barter solicited Forrest to purchase investments created and marketed by Unifund Financial. (Id. ¶ 9.) At that time and all times relevant to the complaint, Forrest was an unsophisticated investor. (Id. ¶¶ 10, 30.) Muriel Barter is not a licensed securities broker. (Id. ¶ 12.) However, Muriel Barter portrayed herself to Forrest as a "securities broker." (Id. ¶ 11.) Muriel Barter encouraged Forrest to rely on her for investment advice, and advised Forrest to invest in limited partnerships. (Id. ¶¶ 11,17.) Muriel Barter advised Forrest that the recommended limited partnership investments would be "good and appropriate investments for retirement money by an investor with limited other resources for retirement," and that these investments would be safe. (Id. ¶ 14.)

Forrest agreed to purchase the recommended limited partnership investments using her retirement and severance money. (Id. ¶¶ 10.) Beginning in July 1998, Forrest invested more than $200,000 in Unifund Partners investments. (Id. ¶ 17.) The Unifund Partners investments were not registered with the state or federal government. (Id. ¶ 15.) Forrest was not notified by any of the Defendants that the Unifund Partners investments were not registered. (Id. ¶ 16.) For one half of each limited partnership investment, Forrest received a promissory note

payable at fifteen percent interest annually, with principal payable in either three or four years. (<u>Id.</u> ¶ 18.) The remaining half of Forrest's limited partnership investments was to be invested by the general partner in "emerging small capitalization companies" to be identified by the general partner. (<u>Id.</u> ¶ 19.) Account statements from the year 2000 valued Forrest's investments at $272,000. (<u>Id.</u> ¶ 20.)

In January 2000, Muriel Barter and/or Ralph Scott Barter, induced Forrest to invest an additional $21,151 in a promissory note with an entity named Fifthmar Capital Corporation. (<u>Id.</u> ¶ 21.) The Fifthmar promissory note, by its terms, became payable in three years. (<u>Id.</u>) The Fifthmar Capital Corporation, however, is not a party to this suit.

When the principal of Forrest's limited partnership investments became due, she demanded payment. (<u>Id.</u> ¶¶ 22, 23.) Defendants paid nothing on the promissory notes to Forrest. (<u>Id.</u> ¶¶ 22, 23) Defendants have not informed Forrest where her money was actually invested or what happened to the alleged gain from her investment activities with them. (<u>Id.</u> ¶ 24.)

## DISCUSSION

### *Subject Matter Jurisdiction*

The Court has an independent obligation to satisfy itself that it has subject matter jurisdiction of the controversies before it. "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed. R. Civ. P. 12(h)(3). As noted above, Plaintiff asserts that she is a citizen of the state of Michigan, that each of the defendants is a citizen of New York State, and that the Court therefore has diversity jurisdiction of the instant controversy under 28 U.S.C. § 1332.

Alleging that Unifund, Inc., is both a citizen of New York and the general partner of the Unifund limited partnerships, Plaintiff alleges that the limited partnerships are all citizens of New York. However, for diversity jurisdiction purposes, partnerships share the citizenship of each of their partners; the law makes no distinction for this purpose between general and limited partners. See Cooper v. Parsky, 140 F.3d 433, 438 (2d Cir. 1998). Here, Plaintiff asserts that she made both equity and debt investments in each of the defendant limited partnerships. Taking her allegations as true, the limited partnerships thus share her Michigan citizenship. Complete diversity of citizenship, and thus subject matter jurisdiction, therefore appears to be lacking in this case and it must be dismissed on that ground.

The Court will afford plaintiff an opportunity to amend her complaint to pursue her viable claims against the diverse defendants if she wishes to do so. In anticipation of such an amendment, the interests of judicial economy dictate that the Court address the issues raised in defendants' motion to dismiss the complaint, as certain of plaintiff's causes of action are not viable and will not be permitted to be reasserted in an amended complaint.

*Rule 12(b)(6) and 9(b) Standards*

Dismissal for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) is appropriate only where "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Onebeacon Ins. Co. v. Forman Int'l, Ltd., No. 04 Civ. 2271(RWS), 2005 WL 100849, at *3 (S.D.N.Y. Jan. 19, 2005) (quoting Bolt Elec., Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir. 1995)). In deciding such a motion, "the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor." Advanced Ceramics Corp. v. Saint-Gobain Advanced

Ceramics Corp., No. 01 CV 7864(GBD), 2005 WL 323739, at *2 (S.D.N.Y. Feb. 10, 2005).

Federal Rule of Civil Procedure 9(b) provides that, "[i]n all averments of fraud . . .
the circumstances constituting fraud . . . shall be stated with particularity." Fed. R. Civ. P. 9(b).
The particularity demanded by Federal Rule of Civil Procedure 9(b) requires a plaintiff to "(1)
specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3)
state where and when the statements were made, and (4) explain why the statements were
fraudulent." Anatian v. Coutts Bank (Switzerland) Ltd., 193 F.3d 85, 88 (2d Cir. 1999) (quoting
Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1984) (internal citations
omitted)).

*Defendants' Motion to Dismiss the Breach of Fiduciary Duty Claim Pursuant to
Rule 12(b)(6).*

The parties agree that it is appropriate to look to New York law for the statute of
limitations for a breach of fiduciary duty cause of action. The parties disagree, however, as to
which statute of limitations is applicable to the breach of fiduciary duty claim presented in the
case at bar. Forrest argues that the six-year limitations period applicable to contract actions,
pursuant to N.Y. C.P.L.R.§ 213(2), governs in this case. Defendants, however, argue that the
three-year limitations period under N.Y. C.P.L.R. § 214(1) relating to actions to recover damages
for injury to property applies.

The general rule is that the applicable statute of limitations for breach of fiduciary
duty depends on the type of remedy sought. Loengard v. Santa Fe Indus., Inc., 70 N.Y.2d 262,
263, 514 N.E.2d 113, 519 N.Y.S.2d 801 (1987). Where the plaintiff is seeking equitable relief,
the applicable statute of limitations is six years; when the plaintiff is seeking only monetary
damages, the applicable statute of limitations is three years. See Cooper, 140 F.3d at 440-441.

Here, Plaintiff seeks only monetary damages. See Complaint. The statute of limitations applicable to her breach of fiduciary duty claim is therefore three years.[1]

Whether the claim can survive the statute of limitations prong of Defendants' motion to dismiss therefore depends on whether the relevant conduct occurred within the three-year period before the instant action was commenced. It is clear on the face of Plaintiff's complaint that her breach of fiduciary duty claims are time-barred. The allegations of breach of fiduciary duty turn on Defendants' alleged false representations and material omissions concerning Barter's status as a securities broker and the suitability of the Unifund entities as investments for a person of Plaintiff's age and investment goals. The representations, and Plaintiff's investments, were allegedly made in 1998, more than five years before the complaint in this action was filed. Plaintiff also alleges that she was induced to make a further investment in an entity called Fifthmar Capital Corporation in January 2000. This second alleged investment also predates the filing of the complaint by more than three years.

Accordingly, Plaintiff's claims for breach of fiduciary duty will be dismissed. Because it is apparent on the face of the complaint that they are time barred, she will not be granted leave to replead them.

---

[1]    Citing, e.g., Sears, Roebuck & Co. v. Enco Assoc., Inc., 43 N.Y.2d 389, 372 N.E.2d 255, 401 N.Y.S.2d 767 (1977), Plaintiff argues for the application of what she characterizes as an exception to the three-year rule for cases in which the fiduciary duty arises in the context of a contract. The authorities upon which Plaintiff relies in arguing on this basis for a six-year rather than a three-year limitations period are, however, inapposite. Neither dealt with a fiduciary relationship regulated by ordinary fiduciary standards. (Sears dealt with claims for professional malpractice; in Cooper, the relevant contract substituted a gross negligence standard for a fiduciary conduct standard.) Moreover, Plaintiff alleges here that Defendants' fiduciary obligations arose from their proffer of investment advice rather than from any contractual arrangement.

*Defendants' Motion to Dismiss the Fraud and Conspiracy Claims Pursuant to
Rules 9(b) and 12(b)(6).*

Defendants argue that Forrest has failed to plead her cause of action for fraud with
particularity as is required by Federal Rule of Civil Procedure 9(b). In order to comply with the
heightened pleading requirements, the complaint "must (1) specify the statements that the
plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the
statements were made, and (4) explain why the statements were fraudulent." Novak v. Kasaks,
216 F.3d 300, 306 (2d Cir. 2000) (internal citations omitted). Here, the complaint specifies four
allegedly fraudulent statements or representations. However, with respect to each of the
allegedly fraudulent statements or representations, the pleadings fail to identify the speaker,
when, where, or even by what means each was made. For the foregoing reasons, the Court finds
that the cause of action for fraud is inadequately pleaded, and, therefore, the Court grants
Defendants' motion to dismiss the cause of action for fraud pursuant to Federal Rule of Civil
Procedure 9(b) with leave to replead.

On a related point, Defendants moved to dismiss Forrest's cause of action for
conspiracy to commit fraud. A cause of action for conspiracy cannot stand independently of its
underlying tort. See Sokol v. Addison, 293 A.D.2d 600, 742 N.Y.S.2d 311 (2d Dept. 2002).
Here, the tort underlying the claim for conspiracy is fraud. The Court has dismissed the cause of
action for fraud with leave to replead. Accordingly, the Court also grants the motion to dismiss
the cause of action for conspiracy to commit fraud with leave to replead.

*Defendants' Motion to Dismiss the Breach of Contract Cause of Action Pursuant
to Rule 12(b)(6).*

Defendants also move to dismiss Forrest's cause of action for breach of contract.

"To state a claim in federal court for breach of contract under New York law, a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996) (internal citations omitted). "[U]nder the relaxed pleading requirements . . . [of the Federal Rules of Civil Procedure] it is enough that the complaint contains a short and plain statement of the claim sufficient to put the defendant on notice of the grounds for which plaintiff seeks relief." Reuben H. Donnelley Corp. v. Mark I Mktg. Corp. 893 F. Supp 285, 290-291 (S.D.N.Y. 1995) (internal citations omitted).

The complaint asserts a breach of contract claim against the defendants generally. However, Forrest does not allege that all Defendants are parties to the contract. Therefore, the motion to dismiss must be considered with respect to each Defendant individually. The parties concur, in their memoranda supporting and opposing this motion, that neither Ralph Scott Barter nor Muriel Barter is alleged to have been a party to any contract being sued upon. Therefore, the motion to dismiss the breach of contract claim is granted as to those defendants.

With respect to the four Unifund Partners defendants and Unifund Financial, as general partner of the limited partnerships, the Court finds that the breach of contract claim has been plead sufficiently. Therefore, Plaintiff will be permitted to replead her contract cause of action as against Unifund Financial.

Finally, the pleadings do not specify whether Defendant Unifund America is a party to any of the contracts. With respect to Unifund America, the motion to dismiss the cause of action for breach of contract is granted with leave to replead.

*Defendants' Motion to Dismiss the Claims for Punitive Damages, Special
Damages and Attorney's Fees.*

### Punitive Damages

Although Forrest demands punitive damages in her complaint, she does not
specify which causes of action serve as the basis for her demand. The Court will thus evaluate
Forrest's demand for punitive damages with respect to both Forrest's tort claims and her breach of
contract claims.

"Punitive damages are available in tort actions 'where the defendant's wrongdoing
has been intentional and deliberate, and has the character of outrage frequently associated with
crime.'" Miteva v. Third Point Management Co., L.L.C., 323 F. Supp. 2d 573, 587 (S.D.N.Y.
2004) (quoting Prozeralik v. Capital Cities Comm., Inc., 82 N.Y.2d 466 (1993) (internal citations
omitted)). "Something more than the mere commission of a tort is always required for punitive
damages. There must be circumstances of aggravation or outrage, such as spite or 'malice,' or a
fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate
disregard of the interests of others that the conduct may be called willful or wanton." Miteva,
323 F. Supp. 2d at 587 (internal quotations marks and citation omitted). The Court finds that
Plaintiff has plead sufficient facts on which to predicate a demand for punitive damages in
connection with her tort claims. Accordingly, Plaintiff will be permitted to replead her claim for
punitive damages with respect to her tort claims.

Punitive damages are not ordinarily available as a remedy for breach of contract.
New York Univ. v. Cont'l Ins. Co., 87 N.Y.2d 308, 315, 662 N.E.2d 763, 639 N.Y.S. 2d 283
(1995). Punitive damages claims are permissible in connection with breaches of contract under
the following circumstances: "(1) defendant's conduct must be actionable as an independent tort,

(2) the tortious conduct must be ... [egregious], (3) the egregious conduct must be directed to plaintiff, and (4) it must be part of a pattern directed at the public generally." Id. at 316.

Although Forrest failed to plead that Defendants' conduct was directed at the public generally, she argues that she has alleged facts which suggest that the conduct might have been directed at the public. Citing Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc., No. 02 Civ. 7689(HB), 2003 WL 22795650, at *9 (S.D.N.Y. Nov. 25, 2003), Forrest argues that she should be permitted to advance to discovery so that she can try to establish whether Defendants' conduct was directed at the public. However, Merrill Lynch is distinguishable from the instant case. As Forrest notes, the Merrill Lynch court relied on "the wrongful conduct of Merrill Lynch, coupled with its alleged breach of fiduciary duty and its public persona" in denying the motion to dismiss the claim for punitive damages. Id. at *9. Here, the claim for breach of fiduciary duty has been dismissed as time-barred. Moreover, Forrest does not allege that any of the defendants has a public persona of the same, or similar, magnitude as Merrill Lynch. Without the breach of fiduciary duty claim or the public persona element, only the allegedly wrongful conduct remains. The Court finds that in the case at bar, the alleged breach of contract is insufficient to support a claim for punitive damages. Accordingly, Plaintiff will not be permitted to replead her claim for punitive damages with respect to her breach of contract claims.

### Special Damages

Federal Rule of Civil Procedure 9(g) requires that "[w]hen items of special damages are claimed they must be specifically stated." Fed. R. Civ. P. 9(g). "Special damages are those that are not the necessary result of the complained of act and the plaintiff should allege facts upon which to predicate recovery of such damages." PdP Parfums De Paris, S.A. v. Int'l

Designer Fragrances, Inc., 901 F. Supp. 581, 585 (E.D.N.Y. 1995). Here, Forrest, who has not opposed Defendants' motion to dismiss the special damages claim, alleged no such facts on which to predicate recovery of special damages. Accordingly, Plaintiff will not be permitted to replead her claim for special damages.

### Attorney's Fees

It is well settled that attorney's fee awards are not generally available in absence of a contractual or statutory basis. Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 718, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967). Forrest pleaded neither a contractual nor a statutory basis for her demand, and has failed to oppose Defendants' motion to dismiss this claim. Accordingly, as the Court finds that the claim for attorney's fees lacks legal foundation, Plaintiff will not be granted leave to replead it.

### CONCLUSION

For the foregoing reasons, Plaintiff's complaint is dismissed for lack of subject matter jurisdiction. Plaintiff is hereby granted leave to serve and file, within fourteen (14) days of the date of this Amended Memorandum Opinion and Order, an amended complaint reasserting her fraud and conspiracy claims against the diverse defendants, her breach of contract claims against Defendants Unifund Financial and Unifund America, Inc., and her demand for punitive damages with respect to her tort claims. If no such timely amended complaint is served and

filed, this case shall be closed without further advance notice to the parties.

SO ORDERED

Dated: New York, New York
May 12, 2005

LAURA TAYLOR SWAIN
United States District Judge

# EXHIBIT 4

# TO THE FERRER DECLARATION

Eric N. Aglow, Esq.
**UAW-GM  Legal Services Plan**
*10 Woodbridge Center Drive*
*Suite 730*
*Woodbridge, New Jersey 07095*
*Voice: 732 602 1166*
*Fax:   732 602 9730*
*E-mail: Ericag@Uawlsp.com*
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x

**CAROLYN FORREST**

                                                                    **AMENDED
                                                                    COMPLAINT
                            Plaintiff                               JURY TRIAL DEMAND**

    -against-                                          Case No. *04-CV-5151 (LTS)*

**UNIFUND FINANCIAL GROUP, INC.;
UNIFUND AMERICA, INC.;
RALPH SCOTT BARTER and
MURIEL BARTER**
                            Defendants.
-----------------------------------------------------------------x

**AMENDED COMPLAINT FOR MONETARY DAMAGES**

Plaintiff Carolyn Forrest, by and through counsel, Eric N. Aglow, Esq.,  UAW

Legal Services Plan, for her first amended complaint states the following:

**INTRODUCTION**

1.    Plaintiff was induced by misrepresentations by the Defendants to

invest a large portion of her available retirement funds in a very risky enterprise,

unregistered in any state.  She seeks monetary damages.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction under 28 U.S.C. 1332 because the matter in controversy exceeds the sum of $75,000 and there is complete diversity of citizenship. Plaintiff is an individual residing in, and a citizen of, Michigan and all the defendants are citizens of New York State.

3.      Venue is proper in this Court pursuant to 28 U.S.C. 1391 (a) and (c).

4.      Plaintiff is an individual residing at 6605 Heron Point, West Bloomfield, Michigan 48323.

5.      Defendants Unifund Financial Group, Inc., and Unifund America, Inc., (hereinfter "Unifund") are New York corporations, organized and existing under the laws of the State of New York, with principal place of business, by information and belief, at 540 Madison Ave., New York City, New York and 575 Madison Ave., New York City, New York.

6.      Defendant Ralph Scott Barter is an individual residing, by information and belief, at 10 Harbor Street, East Hampton, New York.  At all relevant times, he was President and principal owner of Unifund Financial Group, Inc, and Unifund America, Inc.

7.      Defendant Muriel Barter is an individual residing, by information and belief, at 333 E. 49th Street, Apt. 8H, New York City, New York 10017.  At all times relevant, she was an employee and/or officer of Unifund Financial Group, Inc, and Unifund America, Inc.

8.      In June, 1998, Plaintiff's son, Lewis Forrest, was put in contact with Muriel Barter, an employee and agent representing the Unifund defendants, by an

acquaintance. Lewis Forrest had few assets and little money to invest. Muriel Barter told Lewis that the Unifund companies were growing investment businesses that could put him into sound, low-risk investments that would yield 15% a year, if he could invest at least $20,000. She portrayed Unifund as a solid company with wide-ranging investments. She repeatedly described herself as a stockbroker.

     9.    Lewis Forrest put his mother, Phintiff Carolyn Forrest, in touch with Muriel Barter. Plaintiff at that time was retiring from a career as an employee and officer of the United Automobile Workers union, and would receive the proceeds of a UAW sponsored and controlled severance plan in July. She had few assets beyond the $300,000 in the severance plan and approximately $100,000 in equity in her house. She was an unsophisticated investor who had bought few stocks, bonds or mutual funds in her life.

     10.    Carolyn Forrest talked to Muriel Barter by telephone on several occasions in June and July, 1998. Barter referred to herself and defendant Scott Barter as "stockbrokers". She was not licensed or registered by the National Association of Securities Dealers or any state of federal agency to sell stock or other investments.

     11.    In telephone conversations in June and July, 1998, Carolyn Forrest told Muriel Barter of her limited assets and lack of investment experience. Barter assured Plaintiff that Unifund was solid, with wide-ranging investments, and that investing with Unifund was "safe" and would not risk loss of her retirement money.

12.    In telephone conversations in June and July, 1998, Defendant Muriel Barter advised Plaintiff to invest in limited partnerships, with Unifund corporations as general partner.

13.    Muriel Barters advised that these investments would be good and appropriate investments for retirement money by an investor with limited other resources for retirement and that these investments would be safe.  Muriel Barter also relayed similar advice from Scott Barter to Plaintiff.  Muriel Barter informed Plaintiff that she had reviewed Plaintiff's situation with Scott Barter, who advised that Plaintiff purchase Unifund's limited partnerships.  According to Muriel Barter, Scott Barter also affirmed that these were safe investments with a "guaranteed" return.

14.    On June 25, 1998, relying on statements about the investments made by Muriel Barter and, through Muriel Barter, by Scott Barter, Plaintiff and her son bought a limited partnership investment from Unifund, investing $20,000 jointly, $15,000 of which was money supplied by Plaintiff.

15.    In coming months, relying on continuing representations by Muriel and Scott Barter as presented here, Plaintiff invested further sums in Unifund's limited partnerships and warrants, included:

      a.    $100,000 on July 14, 1998;

      b.    $10,000 on July 17, 1998;

      c.    $30,000 on August 18, 1998;

      d.    $100,000 on November 6, 1998;

16.    Induced by further representations by the Barters, Plaintiff agreed in November, 1998, and again in March, 1999, to reinvest interest income promised by Unifund and due to be paid.

17.    Plaintiff was also induced in January, 2000, to reinvest $21,151.92 of interest from the limited partnerships in a Fifthmar Capital Corporation, a company run by Muriel Barter. She was told that this money would be invested in safe and profitable stock by Muriel Barter, who again represented that she was a stockbroker, and that Plaintiff would receive a return of at least 12 1/2 %.

18.    Beginning in July 1998, Plaintiff invested over $200,000 in four limited partnerships sold by defendants; namely Unifund Partners Fund, L.P., Series X, XI, XII and XIV. Each limited partnership had Unifund Financial Group as its general partner.

19.    The limited partnership investments sold to Plaintiff by defendants were not registered with the state or federal government. As such, these investments could only legally be sold to persons with large assets (exceeding $1,000,000) or large incomes. Plaintiff did not qualify.

20.    Plaintiff was not informed that these investments were not registered prior to purchasing the securities. Muriel Barter and, through Muriel, Scott Barter were informed and aware of the limited assets and income of Plaintiff before any of these investment vehicles were sold.

21.    Each partnership involved a promissory note, payable at 15% interest annually, with the principal payable in either 3 or 4 years.

22.    The limited partnership was to be invested by the general partner in "emerging small capitalization companies" to be identified by the general partner.

23.    Starting with the first telephonic and written solicitations from Muriel Barter in June, 1998, Muriel and Scott Barter used the planned public offering of stock in Unifund America and the proposed merger of their two companies, Unifund Financial and Unifund America as principal selling points, stating that the offering would benefit Unifund investors with increased value, cash payments and the opportunity to get in on an Initial Public Offering.

24.    Muriel Barter trumpeted these planned developments in her first letter to Plaintiff, on June 18, 1998.  Scott Barter referred to them in the form he provided to Plaintiff, which Plaintiff was asked to sign when Plaintiff investing the first $20,000 on June 24, 1998.  When Plaintiff was asked to reinvest $18,637.50 due in interest in March, 1999, Scott Barter again used the proposed merger and opportunity to partake in Unifund America's IPO in a March 8 letter and in the form given to Plaintiff to sign on March 14, as reasons why reinvesting was advisable.

25.    In May, 1999, Scott Barter, as president and CEO, submitted a Registration Statement and Prospectus to the SEC on behalf of Unifund America.  In this document, Barter characterized Unifund America as a "development stage" merchant banking firm that had conducted no transactions to that point. He admitted that investing in Unifund America "involves a high degree of risk and should only be made by those who can afford to lose up to their entire investment."  This document and the information in it were never made available to Plaintiff.

26. In the Registration Statement, Scott Barter cited many reasons that investing in Unifund America was risky, including:

    a. "There is no market for the shares or warrants we are offering."

    b. "[W]e may need additional financing after this offering is completed. We have no commitments for additional cash funding . . .

    c. "Many of our transactions will be high-risk investments."

27. Neither Muriel Barter nor Scott Barter ever informed Plaintiff of any of the risks detailed in the SEC Registration Statement and Prospectus.

28. Plaintiff was provided with statements through December 1, 2000, which claimed that her portfolio with Unifund was worth $272,800, and the account jointly held with her son was worth $22,900. Since then statements have not been provided.

29. All the promissory notes given with the investments in limited partnerships came due during 2001 and 2002, but neither principal nor interest has been paid.

30. Defendants have never revealed to Plaintiff where the money was invested nor where the alleged gain in the account has gone.

## COUNT I
## BREACH OF CONTRACT

31. Plaintiff realleges paragraphs 1-30 as stated above.

32. Defendant Unifund Financial Group, Inc., was the general partner in the limited partnership agreements sold to Plaintiff, including Unifund Partners Fund, L.P., Series X, XI, XII and XIV.

33.     In these limited partnership agreements, general partner Unifund Financial Group, Inc., contractually committed itself to use due care to advance the interests of each limited partnership, and to act in good faith in the interests of the limited partners.

34.     As general partner, Unifund Financial was responsible for investing the funds of each limited partnership.

35.     Unifund Financial, and its principals and agents, were aware of the limited financial means and need for preservation of capital of Plaintiff, owner of a substantial interest of $100,000 each (at least 1/5 of the total) in Limited Partnerships X and XI and lesser stakes in the other limited partnerships.

36.     As of December, 2000, the general partner reported the combined account of Plaintiff in these limited partnerships was valued at $272,800. At that point, the general partner stopped reporting to Plaintiff on the value of her interest in these partnerships. No information has been provided.

37.     The promissory notes that were a part of each partnership agreement came due in 2001 and 2002. The general partner has not paid any sums due under these notes, has not repaid principal, and has not issued any explanation of these actions.

38.     In order to prevent excessive losses, the general partner was required under these agreements to liquidate the partnerships if the value of investment accounts decreased by 50% of their original value, distributing assets to the limited partners. No such action was ever taken by Unifund Financial.

39.     In failing to maintain any value of the funds entrusted to it, failing to notify Plaintiff of what happened to her investment, failing to repay promissory notes, informing Plaintiff that her investment was gaining in value when the value was in reality disappearing, failing to protect assets by liquidating the partnership when losses reached the level that required liquidation under the agreement, Unifund Financial breached contractual requirements. Defendant acted in a grossly negligent fashion and in bad faith, in direct violation of contract.

40.     Plaintiff has lost principal in the amount of over $200,000 and interest promised at rates of 15% and 12 ½% annually due to the failure of Defendant Unifund Financial to conform to its duties under the contract.

## COUNT II
## FRAUD AND CONSPIRACY TO COMMIT FRAUD

41.     Plaintiff realleges paragraphs 1-32 as stated above.

42.     In soliciting Plaintiff, Defendants acted in concert to make fraudulent statements and representations regarding the investments they marketed, including:

- Defendant Barters were qualified and licensed to provide investment advice and sell securities.

- That the investments they were recommending were safe and secure and not putting Plaintiff's principal at risk.

- That the limited partnerships were suitable investments for a large portion of an investors limited retirement funds.

- That the company offering these securities was experienced, solvent and trustworthy.

28      Defendants did not disclose that the investments involved were not registered, as required by law, for sale to unsophisticated investors of limited means.

29      Defendants deliberately misled Plaintiff about the value of the merger of related companies Unifund Financial and Unifund America, the value of any public offering of Unifund America, and the riskiness of any investment in Unifund America. Defendants were well aware of true facts, the limited prospects and the true risks.

43.     Defendants intentionally misrepresented the safety and security of said investments, knowing that the partnerships were risky and unsuitable and did so with reckless indifference for the needs of the Plaintiff.

44.     Defendants intended that Plaintiff rely on these misrepresentations, and Plaintiff did so rely in deciding to purchase the investments.

45.     The intentional fraudulent conduct caused the loss of Plaintiff's investments and great emotional distress.

**WHEREFORE**, Plaintiff demands Judgment by this Court against Defendants as follows:

    a.  Compensatory damages;

    b.  Punitive damages for intentional and fraudulent misrepresentations and concealment of material facts;

    c.  Interest and costs of suit;

    d.  For such other relief as the Court deems just.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of any issues triable by jury pursuant to

Fed.R.Civ. Pro.38.

Dated: 5/25/05                          s/ _____
                                                Eric N. Aglow ( EA 7223)

## CERTIFICATION

I hereby certify that the matter in controversy is not the subject of any other court,

arbitration or administrative proceeding.


                          s/_____
                                  Eric N. Aglow (EA 7223)

# EXHIBIT 5

# TO THE FERRER DECLARATION

# II. AGREEMENT
*- of -*
# LIMITED PARTNERSHIP
*- of -*
# UNIFUND PARTNERS FUND, L.P., Series X

AGREEMENT made as of the _____ day of _____, 1998, by and among Unifund Financial Group, Inc., a New York Corporation, with its principal place of business at 575 Madison Avenue, Suite 1006, New York, New York, 10022, as General Partner, and each of the persons executing this Agreement or counterparts thereof, collectively being referred to as Limited Partners. The Limited and General Partner will be referred to hereinafter collectively as "the Partners".

**W I T N E S S E T H :**

1. *Name and Business:* The Partners do hereby form a limited partnership (hereinafter called "the partnership") pursuant to the provisions of the New York Revised Limited Partnership Act under the name "Unifund Partners Fund, L.P., Series X". The Partnership is hereby formed to carry on the business of investment in securities for its own account.

2. *Office:* The principal place of business of the Partnership shall be located at 575 Madison Avenue, Suite 1006, New York, New York, 10022, or at such other location as the General Partner may determine.

3. *Term:* The term of the Partnership shall commence on the date that a copy of the Certificate of Limited Partnership is filed in the Office of the Secretary of State of the State of New York and shall continue thereafter from year to year until December 31st 2020, or unless sooner terminated as provided for herein. The investment activities shall commence when, in the judgment of the General Partner, sufficient funds have been raised, which sum shall not exceed $500,000.00.

4. *Capital Contribution of Limited Partners:* The name, place of residence, Capital Contribution and percentage of interest of each of the Limited Partners is set

forth on the signature page of this Agreement or counterparts thereof. Each Limited Partner's Capital Contribution shall be paid to the Partnership upon the execution of this Agreement by such Limited Partner.

5. *Substitution of Limited Partners:* Any Limited Partner may substitute an assignee as contributor in his place only upon the following terms and conditions of substitution: The assignee shall be a person of sufficient means to make the contribution required of the Limited Partners under this agreement, shall be acceptable to and approved by the General Partner and shall execute this Agreement or a further agreement by which he shall bind himself to carry out the provisions of this Agreement required to be performed by the Limited Partner so assigning his rights.

6. *Admission of Additional Limited Partners:* The General Partner shall have the right to admit additional Limited Partners, however capital investment shall be limited to a maximum of $500,000.00.

7. *Contribution of General Partner:* The General Partner shall contribute such of its assets and sums as may be necessary to form the Partnership and shall receive therefore a 25% interest in the profits of the Partnership's investment account.

8. *Profits and Losses:* Net Profits shall be distributed to the Partners quarterly, by the 15th day following the close of business on the last day of the month ending the quarter, in proportion to their Partnership interests. In no event shall distributions of profits be made to the Partners if such distribution shall reduce the Partners' Capital Accounts below their original Capital contributions.

9. *Liquidation Upon Dissolution:* In the event that the value of the investment accounts decreases by 50% of its value as of the date on which the General Partner commences investment activities, the business of this partnership shall thereupon come to an end and the General Partner shall proceed with reasonable diligence and promptness to liquidate the business of the Partnership. Upon such liquidation, the proceeds thereof shall be distributed in the manner hereinafter provided.

10. *Limited Partners' Liability for Losses:* The amount of the losses for which the Limited Partners or any of them shall in any event be liable shall not exceed in the aggregate the amount of capital contributed by them or any of them as aforesaid and the Limited Partners shall not be personally liable for any debts, engagements or losses of the Partnership.

11. *Compensation:* The General Partner shall receive as its sole compensation, 25% of quarterly net income of the Partnership's investment account and shall have no effect on the debt portion of the investment. The Limited Partners' compensation shall be their proportionate share of the profits, as set forth above.

12. *Dissolution of Partnership:*

a)  The dissolution or withdrawal from the Partnership of the General Partner or a sale of all of the assets of the partnership shall dissolve the Partnership.

b)  In the event of the dissolution of the Partnership for any reason, the General Partner shall commence to wind up the affairs of the Partnership and to liquidate its investments. The General and Limited Partners shall continue to share profits and losses during the period of liquidation in the same proportion as before the dissolution. The General Partner shall have full right and unlimited discretion to determine the time, manner and terms of any sale or sales of Partnership property pursuant to such liquidation having due regard to the activities and condition of the relevant market and general financial and economic conditions.

c)  Following the payment of all debts and liabilities of the Partnership and all expenses of liquidation, and subject to the right of the General Partner to set up such cash reserves as it may deem reasonably necessary for any contingent or unforeseen liabilities or obligations of the Partnership, the proceeds of the liquidation and any other funds of the Partnership shall be distributed in accordance with the terms hereof.

d)  Within a reasonable time following the completion of the liquidation of the Partnership's properties, the General Partner shall supply to each of the Partners a

statement which shall set forth the assets and the liabilities of the Partnership as of the date of complete liquidation, each interest holder's pro rata portion of distributions and the amount paid to the General Partner.

e) No holder of a limited or general partnership interest shall have any right to demand or receive property other than cash upon dissolution and termination of the Partnership.

f) Upon the completion of the liquidation of the Partnership and the distribution of all Partnership funds, the Partnership shall terminate and the General Partner shall have the authority to execute and record a Certificate of Dissolution of the Partnership as well as any and all other documents required to effectuate the dissolution and termination of the Partnership.

13. *Status Of Limited Partners:*

a) The Limited Partners shall not participate in the management or control of the Partnership's business; nor shall Limited Partners have any rights not set forth herein.

b) The death or legal incapacity of a Limited Partner shall not cause a dissolution of the Partnership, but the rights of such Limited Partner to share in the profits and losses of the Partnership and to receive distributions of Partnership funds shall upon the happening of such an event, devolve upon his personal representative, or in the event of the death of one whose Limited Partnership Interest is held in joint tenancy, shall pass to the surviving joint tenant, subject to the terms and conditions of this agreement, and the Partnership shall continue as a limited partnership. The estate of the deceased Limited Partner or such surviving joint tenant, as the case may be, shall be liable for all the obligations of the deceased Limited Partner. However, in no event shall such personal representative or surviving joint tenant become a substituted Limited Partner.

c) The Limited Partners acknowledge that they have received the Investor Information Memorandum; that they have had ample time to review same; and that

they have reviewed and are aware of the special risks contained therein. The Limited Partners further acknowledge and agree that their capital investment may not be withdrawn for the first fifteen (15) months following the initiation of business, unless the General Partner consents to same.

14. *Powers, Rights, and Duties of General Partner:*

a) The General Partner shall have exclusive authority to manage the operations and affairs of the Partnership and to make all decisions regarding the business of the Partnership. It is understood and agreed to that the General Partner shall have all of the rights and powers of a general partner as provided in the applicable partnership law and otherwise to the fullest extent provided by law, and any action taken by the General Partner shall constitute the act of and serve to bind the Partnership.

b) The General Partner thereof shall devote such time to the Partnership business as it, in its sole discretion, shall deem to be necessary to manage and supervise the Partnership business and affairs in an efficient manner; but nothing in this Agreement shall preclude the employment, at the expense of the Partnership, of any agent or third party to manage, or provide other services in respect of the Partnership property subject to the control of the General Partner.

c) The General Partner shall not be required to manage the Partnership as its sole and exclusive function and it may have other business interests and may engage in other activities in addition to those relating to the Partnership, including management of the General Partner and other securities related enterprises and the rendition of services or advice of any kind to parties other than the Partnership or its Limited Partners, without any obligation to present to the Partnership or its Limited Partners any investment.

d) The validity of any transactions, agreement, or payment involving the Partnership and General Partner otherwise permitted by the terms of this agreement

shall not be affected by reason of the relationship between the Partnership and such General Partner.

e) The General Partner shall have a fiduciary responsibility for the safekeeping and use of all funds and assets of the Partnership.

f) The General Partner shall not be liable, responsible, or accountable in damages or otherwise to the Partnership or any Limited Partner for any action taken or failure to act on behalf of the Partnership within the scope of the authority conferred on the General Partner by this Agreement or by law unless such action or omission was performed or omitted fraudulently or in bad faith or constituted wanton and willful misconduct or gross negligence.

g) The Partnership shall indemnify and hold harmless the General Partner and its agents, herein referred to as the Indemnified Parties, from and against any loss, expense, damage or injury suffered or sustained by it by reason of any acts, omissions, or alleged acts or omissions arising out of the activities of the Partnership, including, but not limited to, any judgment, award, settlement, reasonable attorney's fees, and other costs or expenses incurred in connection with the defense of any actual or threatened action, proceeding, or claim and including any payments made by the General Partner pursuant to an indemnification agreement no broader than this paragraph g) of this Clause 14, provided that the acts, omissions, or alleged acts or omissions upon which such actual or threatened action, proceeding, or claims are based were in good faith and were not performed or omitted fraudulently or in bad faith or as a result of wanton and willful misconduct or gross negligence by such indemnified party.

h) The General Partner may, in its sole discretion, make or revoke the election referred to in Section 754 of the Internal Revenue Code of 1954, or any similar provision enacted in lieu thereof. Each of the Partners will upon request supply the information necessary to properly give effect to such election.

15. *Power of Attorney:*

a) The Limited Partners, by their execution hereof, jointly and severally hereby irrevocably constitute and appoint the General Partner, and any successor(s) to the General Partner, with full power of substitution, their true and lawful attorney-in-fact, in their name, place, and stead to make, execute, sign, acknowledge, record, and file, on behalf of them and on behalf of the Partnership, the following:

1) A Certificate of Limited Partnership, and any other certificates or instruments which may be desirable or required to be filed by the Partnership or the Partners under the law of the State of New York and any other jurisdiction whose laws may be applicable;

2) A Certificate of Dissolution of the Partnership and such other instruments or documents as may be deemed necessary or desirable by the General Partner upon the termination of the Partnership business;

3) Any and all amendments of the instruments described in subsections 1) and 2) of this Clause 15) a), provided such amendments are either required by law to be filed or are consistent with this agreement or have been authorized by the particular Limited Partner or Partners; and

4) Any and all such other instruments as may be deemed necessary or desirable by the General Partner to carry out fully the provisions of this agreement in accordance with its terms.

b) The foregoing grant of authority;

1) Is a special Power of Attorney coupled with an interest is irrevocable and shall survive the death or incapacity of the Limited Partner granting the power;

2) May be exercised by the General Partner on behalf of each Limited Partner by listing all of the Limited Partners executing any instrument with a single signature as attorney-in-fact for all of them; and

3) Shall survive the delivery of an assignment of a Limited Partner of the whole or any portion of this interest.

16. *Notices:* All notices and demands required or permitted under this agreement shall be in writing and may be sent by certified or registered mail, postage prepaid, to the Partners at their addresses as shown on the records of the Partnership. Any Partner may specify a different address by notifying the General Partner in writing (via certified mail/return receipt requested) of such different address.

17. *Arbitration:* Any dispute arising under, in connection with, or in relation to this agreement, or any breach thereof, shall be determined and settled by arbitration in the City, County and State of New York, pursuant to the rules then obtaining of the American Arbitration Association. Any award rendered shall be final and conclusive upon the parties, and a judgment thereon may be entered in the highest court of the forum, state or federal, having jurisdiction.

18. *Construction:* This agreement has been made with reference to, and shall be construed in accordance with, the laws of the State of New York.

19. *Modification; Waiver:* No waiver or modification of any of the provisions hereof shall be binding unless in writing and signed by all Partners. No waiver of a breach of any provision hereof or of any default hereunder, and no failure to insist, in one or more instances, upon the strict performance of any provision thereof, shall be deemed a waiver of such breach or default.

20. *Addresses Of Partners:* Unless otherwise specified in writing, the address of each party shall for all purposes be that set forth next to his signature at the end of this agreement.

21. *Agreement Binding:* This Agreement shall inure to the benefit of, and shall be binding upon, the parties hereto and their respective heirs, executors, administrators, distributees, successors and assigns.

22. *Entire Agreement:* This Agreement constitutes the entire agreement of the parties.

23. *Counterparts:* This document may be executed in counterparts, and each such counterpart shall be deemed a valid executed original.

IN WITNESS WHEREOF the parties hereto have hereunto set their hands and seals as of the day and year first above written.

AS LIMITED PARTNER                    UNIFUND FINANCIAL GROUP, Inc.

_____        _____
Signature                             R Scott Barter
                                      President
_____
Name - please print

_____
Social security number

_____
Street

_____
City, state & zip code


_____
Signature

_____
Name - please print

_____
Social security number

_____
Street

_____
City, state & zip code

**Investment details:**

Income: $_____

Equity: $_____

## III.  NON-NEGOTIABLE PROMISSORY NOTE

$10,000.00                                        New York, New York

Number (1) of _____(\_\_\_)                        _____, 1998

FOR VALUE RECEIVED, the undersigned, UNIFUND PARTNERS FUND, L.P., Series X, ("Borrower"), a limited partnership with its principal place of business at 575 Madison Avenue, Suite 1006, New York, New York, hereby promises to pay _____ ("Lender"), $10,000.00, plus interest payable at the fixed rate of 12½% per annum in semi-annual installments of interest only commencing June 1st 1998, with the principal payable 4 years from date.

The undersigned hereby waives presentment for payment, protest and notice of protest for non-payment of this Note.

The undersigned shall have the right to prepay this Note, in whole or in part, without premium, penalty or fee.

IN WITNESS WHEREOF, this Note has been duly executed on the date first above written.

(Seal)                          UNIFUND PARTNERS FUND, LP Series X

                                UNIFUND FINANCIAL GROUP, INC. as

                                General Partner


                                By:_____
                                    President

STATE OF NEW YORK        )

COUNTY OF NEW YORK     ) ss.:

On            199    before me personally came R. SCOTT BARTER to me known, who, by me duly sworn, did depose and say that deponent is the President of UNIFUND FINANCIAL GROUP, INC., the corporation described herein, and which executed the foregoing instrument that deponent knows the seal of the corporation, that the seal affixed to the foregoing instrument is the corporate seal, that it was affixed by order of the board of directors of the corporation; and that deponent signed deponent's name by like order.

_____

NOTARY PUBLIC

# EXHIBIT 6

# TO THE FERRER DECLARATION

# II. AGREEMENT
## - of -
# LIMITED PARTNERSHIP
## - of -
# UNIFUND PARTNERS FUND, L.P., Series XI

AGREEMENT made as of the _____ day of _____, 1998, by and among Unifund Financial Group, Inc., a New York Corporation, with its principal place of business at 575 Madison Avenue, Suite 1006, New York, New York, 10022, as General Partner, and each of the persons executing this Agreement or counterparts thereof, collectively being referred to as Limited Partners. The Limited and General Partner will be referred to hereinafter collectively as "the Partners".

**W I T N E S S E T H :**

1. *Name and Business:* The Partners do hereby form a limited partnership (hereinafter called "the partnership") pursuant to the provisions of the New York Revised Limited Partnership Act under the name "Unifund Partners Fund, L.P., Series XI". The Partnership is hereby formed to carry on the business of investment in securities for its own account.

2. *Office:* The principal place of business of the Partnership shall be located at 575 Madison Avenue, Suite 1006, New York, New York, 10022, or at such other location as the General Partner may determine.

3. *Term:* The term of the Partnership shall commence on the date that a copy of the Certificate of Limited Partnership is filed in the Office of the Secretary of State of the State of New York and shall continue thereafter from year to year until December 31st 2020, or unless sooner terminated as provided for herein. The investment activities shall commence when, in the judgment of the General Partner, sufficient funds have been raised, which sum shall not exceed $500,000.00.

4. *Capital Contribution of Limited Partners:* The name, place of residence, Capital Contribution and percentage of interest of each of the Limited Partners is set

forth on the signature page of this Agreement or counterparts thereof. Each Limited Partner's Capital Contribution shall be paid to the Partnership upon the execution of this Agreement by such Limited Partner.

5. *Substitution of Limited Partners:* Any Limited Partner may substitute an assignee as contributor in his place only upon the following terms and conditions of substitution: The assignee shall be a person of sufficient means to make the contribution required of the Limited Partners under this agreement, shall be acceptable to and approved by the General Partner and shall execute this Agreement or a further agreement by which he shall bind himself to carry out the provisions of this Agreement required to be performed by the Limited Partner so assigning his rights.

6. *Admission of Additional Limited Partners:* The General Partner shall have the right to admit additional Limited Partners, however capital investment shall be limited to a maximum of $500,000.00.

7. *Contribution of General Partner:* The General Partner shall contribute such of its assets and sums as may be necessary to form the Partnership and shall receive therefore a 25% interest in the profits of the Partnership's investment account.

8. *Profits and Losses:* Net Profits shall be distributed to the Partners quarterly, by the 15th day following the close of business on the last day of the month ending the quarter, in proportion to their Partnership interests. In no event shall distributions of profits be made to the Partners if such distribution shall reduce the Partners' Capital Accounts below their original Capital contributions.

9. *Liquidation Upon Dissolution:* In the event that the value of the investment accounts decreases by 50% of its value as of the date on which the General Partner commences investment activities, the business of this partnership shall thereupon come to an end and the General Partner shall proceed with reasonable diligence and promptness to liquidate the business of the Partnership. Upon such liquidation, the proceeds thereof shall be distributed in the manner hereinafter provided.

10. *Limited Partners' Liability for Losses:* The amount of the losses for which the Limited Partners or any of them shall in any event be liable shall not exceed in the aggregate the amount of capital contributed by them or any of them as aforesaid and the Limited Partners shall not be personally liable for any debts, engagements or losses of the Partnership.

11. *Compensation:* The General Partner shall receive as its sole compensation, 25% of quarterly net income of the Partnership's investment account and shall have no effect on the debt portion of the investment. The Limited Partners' compensation shall be their proportionate share of the profits, as set forth above.

12. *Dissolution of Partnership:*

a) The dissolution or withdrawal from the Partnership of the General Partner or a sale of all of the assets of the partnership shall dissolve the Partnership.

b) In the event of the dissolution of the Partnership for any reason, the General Partner shall commence to wind up the affairs of the Partnership and to liquidate its investments. The General and Limited Partners shall continue to share profits and losses during the period of liquidation in the same proportion as before the dissolution. The General Partner shall have full right and unlimited discretion to determine the time, manner and terms of any sale or sales of Partnership property pursuant to such liquidation having due regard to the activities and condition of the relevant market and general financial and economic conditions.

c) Following the payment of all debts and liabilities of the Partnership and all expenses of liquidation, and subject to the right of the General Partner to set up such cash reserves as it may deem reasonably necessary for any contingent or unforeseen liabilities or obligations of the Partnership, the proceeds of the liquidation and any other funds of the Partnership shall be distributed in accordance with the terms hereof.

d) Within a reasonable time following the completion of the liquidation of the Partnership's properties, the General Partner shall supply to each of the Partners a statement which shall set forth the assets and the liabilities of the Partnership as of the date of complete liquidation, each interest holder's pro rata portion of distributions and the amount paid to the General Partner.

e) No holder of a limited or general partnership interest shall have any right to demand or receive property other than cash upon dissolution and termination of the Partnership.

f) Upon the completion of the liquidation of the Partnership and the distribution of all Partnership funds, the Partnership shall terminate and the General Partner shall have the authority to execute and record a Certificate of Dissolution of the Partnership as well as any and all other documents required to effectuate the dissolution and termination of the Partnership.

13. *Status Of Limited Partners:*

a) The Limited Partners shall not participate in the management or control of the Partnership's business; nor shall Limited Partners have any rights not set forth herein.

b) The death or legal incapacity of a Limited Partner shall not cause a dissolution of the Partnership, but the rights of such Limited Partner to share in the profits and losses of the Partnership and to receive distributions of Partnership funds shall upon the happening of such an event, devolve upon his personal representative, or in the event of the death of one whose Limited Partnership Interest is held in joint tenancy, shall pass to the surviving joint tenant, subject to the terms and conditions of this agreement, and the Partnership shall continue as a limited partnership. The estate of the deceased Limited Partner or such surviving joint tenant, as the case may be, shall be liable for all the obligations of the deceased Limited Partner. However, in no event shall such personal representative or surviving joint tenant become a substituted Limited Partner.

c) The Limited Partners acknowledge that they have received the Investor Information Memorandum; that they have had ample time to review same; and that they have reviewed and are aware of the special risks contained therein. The Limited Partners further acknowledge and agree that their capital investment may not be withdrawn for the first fifteen (15) months following the initiation of business, unless the General Partner consents to same.

14. *Powers, Rights, and Duties of General Partner:*

a) The General Partner shall have exclusive authority to manage the operations and affairs of the Partnership and to make all decisions regarding the business of the Partnership. It is understood and agreed to that the General Partner shall have all of the rights and powers of a general partner as provided in the applicable partnership law and otherwise to the fullest extent provided by law, and any action taken by the General Partner shall constitute the act of and serve to bind the Partnership.

b) The General Partner thereof shall devote such time to the Partnership business as it, in its sole discretion, shall deem to be necessary to manage and supervise the Partnership business and affairs in an efficient manner; but nothing in this Agreement shall preclude the employment, at the expense of the Partnership, of any agent or third party to manage, or provide other services in respect of the Partnership property subject to the control of the General Partner.

c) The General Partner shall not be required to manage the Partnership as its sole and exclusive function and it may have other business interests and may engage in other activities in addition to those relating to the Partnership, including management of the General Partner and other securities related enterprises and the rendition of services or advice of any kind to parties other than the Partnership or its Limited Partners, without any obligation to present to the Partnership or its Limited Partners any investment.

d) The validity of any transactions, agreement, or payment involving the Partnership and General Partner otherwise permitted by the terms of this agreement shall not be affected by reason of the relationship between the Partnership and such General Partner.

e) The General Partner shall have a fiduciary responsibility for the safekeeping and use of all funds and assets of the Partnership.

f) The General Partner shall not be liable, responsible, or accountable in damages or otherwise to the Partnership or any Limited Partner for any action taken or failure to act on behalf of the Partnership within the scope of the authority conferred on the General Partner by this Agreement or by law unless such action or omission was performed or omitted fraudulently or in bad faith or constituted wanton and willful misconduct or gross negligence.

g) The Partnership shall indemnify and hold harmless the General Partner and its agents, herein referred to as the Indemnified Parties, from and against any loss, expense, damage or injury suffered or sustained by it by reason of any acts, omissions, or alleged acts or omissions arising out of the activities of the Partnership, including, but not limited to, any judgment, award, settlement, reasonable attorney's fees, and other costs or expenses incurred in connection with the defense of any actual or threatened action, proceeding, or claim and including any payments made by the General Partner pursuant to an indemnification agreement no broader than this paragraph g) of this Clause 14, provided that the acts, omissions, or alleged acts or omissions upon which such actual or threatened action, proceeding, or claims are based were in good faith and were not performed or omitted fraudulently or in bad faith or as a result of wanton and willful misconduct or gross negligence by such indemnified party.

h) The General Partner may, in its sole discretion, make or revoke the election referred to in Section 754 of the Internal Revenue Code of 1954, or any similar provision enacted in lieu thereof. Each of the Partners will upon request supply the information necessary to properly give effect to such election.

15. *Power of Attorney:*

a)  The Limited Partners, by their execution hereof, jointly and severally hereby irrevocably constitute and appoint the General Partner, and any successor(s) to the General Partner, with full power of substitution, their true and lawful attorney-in-fact, in their name, place, and stead to make, execute, sign, acknowledge, record, and file, on behalf of them and on behalf of the Partnership, the following:

1)  A Certificate of Limited Partnership, and any other certificates or instruments which may be desirable or required to be filed by the Partnership or the Partners under the law of  the State of New York and any other jurisdiction whose laws may be applicable;

2)  A Certificate of Dissolution of the Partnership and such other instruments or documents as may be deemed necessary or desirable by the General Partner upon the termination of the Partnership business;

3)  Any and all amendments of the instruments described in subsections 1) and 2) of this Clause 15) a), provided such amendments are either required by law to be filed or are consistent with this agreement or have been authorized by the particular Limited Partner or Partners; and

4)  Any and all such other instruments as may be deemed necessary or desirable by the General Partner to carry out fully the provisions of this agreement in accordance with its terms.

b)  The foregoing grant of authority;

1)  Is a special Power of Attorney coupled with an interest is irrevocable and shall survive the death or incapacity of the Limited Partner granting the power;

2)  May be exercised by the General Partner on behalf of each Limited Partner by listing all of the Limited Partners executing any instrument with a single signature as attorney-in-fact for all of them; and

3) Shall survive the delivery of an assignment of a Limited Partner of the whole or any portion of this interest.

16. *Notices:* All notices and demands required or permitted under this agreement shall be in writing and may be sent by certified or registered mail, postage prepaid, to the Partners at their addresses as shown on the records of the Partnership. Any Partner may specify a different address by notifying the General Partner in writing (via certified mail/return receipt requested) of such different address.

17. *Arbitration:* Any dispute arising under, in connection with, or in relation to this agreement, or any breach thereof, shall be determined and settled by arbitration in the City, County and State of New York, pursuant to the rules then obtaining of the American Arbitration Association. Any award rendered shall be final and conclusive upon the parties, and a judgment thereon may be entered in the highest court of the forum, state or federal, having jurisdiction.

18. *Construction:* This agreement has been made with reference to, and shall be construed in accordance with, the laws of the State of New York.

19. *Modification; Waiver:* No waiver or modification of any of the provisions hereof shall be binding unless in writing and signed by all Partners. No waiver of a breach of any provision hereof or of any default hereunder, and no failure to insist, in one or more instances, upon the strict performance of any provision thereof, shall be deemed a waiver of such breach or default.

20. *Addresses Of Partners:* Unless otherwise specified in writing, the address of each party shall for all purposes be that set forth next to his signature at the end of this agreement.

21. *Agreement Binding:* This Agreement shall inure to the benefit of, and shall be binding upon, the parties hereto and their respective heirs, executors, administrators, distributees, successors and assigns.

22. *Entire Agreement:* This Agreement constitutes the entire agreement of the parties.

23. *Counterparts:* This document may be executed in counterparts, and each such counterpart shall be deemed a valid executed original.

IN WITNESS WHEREOF the parties hereto have hereunto set their hands and seals as of the day and year first above written.

AS LIMITED PARTNER                  UNIFUND FINANCIAL GROUP, Inc.


_____          _____
Signature                           R Scott Barter
                                    President
_____
Name - please print

_____
Social security number

_____
Street

_____
City, state & zip code


_____
Signature

_____
Name - please print

_____
Social security number

_____
Street

_____
City, state & zip code

**Investment details:**

Income: $_____

Equity: $_____

## III.  NON-NEGOTIABLE PROMISSORY NOTE

$10,000.00                                               New York, New York

Number (1) of _____(__)                    _____, 1998

FOR VALUE RECEIVED, the undersigned, UNIFUND PARTNERS FUND, L.P., Series XI, ("Borrower"), a limited partnership with its principal place of business at 575 Madison Avenue, Suite 1006, New York, New York, hereby promises to pay _____ ("Lender"), $10,000.00, plus interest payable at the fixed rate of 12½% per annum in semi-annual installments of interest only commencing December 1st 1998, with the principal payable 4 years from date.

The undersigned hereby waives presentment for payment, protest and notice of protest for non-payment of this Note.

The undersigned shall have the right to prepay this Note, in whole or in part, without premium, penalty or fee.

IN WITNESS WHEREOF, this Note has been duly executed on the date first above written.

(Seal)                              UNIFUND PARTNERS FUND, LP Series XI
                                    UNIFUND FINANCIAL GROUP, INC. as
                                    General Partner


                                    By:_____
                                        President

- 15 -

STATE OF NEW YORK )

COUNTY OF NEW YORK ) ss.:

On _____ 199__ before me personally came R. SCOTT BARTER to me known, who, by me duly sworn, did depose and say that deponent is the President of UNIFUND FINANCIAL GROUP, INC., the corporation described herein, and which executed the foregoing instrument that deponent knows the seal of the corporation, that the seal affixed to the foregoing instrument is the corporate seal, that it was affixed by order of the board of directors of the corporation; and that deponent signed deponent's name by like order.

_____

NOTARY PUBLIC

# EXHIBIT 7

# TO THE FERRER DECLARATION

# II. AGREEMENT
*- of -*
## LIMITED PARTNERSHIP
*- of -*
## UNIFUND PARTNERS FUND, L.P., Series XII

AGREEMENT made as of the _____ day of _____, 1998, by and among Unifund Financial Group, Inc., a New York Corporation, with its principal place of business at 575 Madison Avenue, Suite 1006, New York, New York, 10022, as General Partner, and each of the persons executing this Agreement or counterparts thereof, collectively being referred to as Limited Partners. The Limited and General Partner will be referred to hereinafter collectively as "the Partners".

## W I T N E S S E T H :

1. *Name and Business:* The Partners do hereby form a limited partnership (hereinafter called "the partnership") pursuant to the provisions of the New York Revised Limited Partnership Act under the name "Unifund Partners Fund, L.P., Series XII". The Partnership is hereby formed to carry on the business of investment in securities for its own account.

2. *Office:* The principal place of business of the Partnership shall be located at 575 Madison Avenue, Suite 1006, New York, New York, 10022, or at such other location as the General Partner may determine.

3. *Term:* The term of the Partnership shall commence on the date that a copy of the Certificate of Limited Partnership is filed in the Office of the Secretary of State of the State of New York and shall continue thereafter from year to year until December 31st 2020, or unless sooner terminated as provided for herein. The investment activities shall commence when, in the judgment of the General Partner, sufficient funds have been raised, which sum shall not exceed $500,000.00.

4. *Capital Contribution of Limited Partners:* The name, place of residence, Capital Contribution and percentage of interest of each of the Limited Partners is set

forth on the signature page of this Agreement or counterparts thereof. Each Limited Partner's Capital Contribution shall be paid to the Partnership upon the execution of this Agreement by such Limited Partner.

5. *Substitution of Limited Partners:* Any Limited Partner may substitute an assignee as contributor in his place only upon the following terms and conditions of substitution: The assignee shall be a person of sufficient means to make the contribution required of the Limited Partners under this agreement, shall be acceptable to and approved by the General Partner and shall execute this Agreement or a further agreement by which he shall bind himself to carry out the provisions of this Agreement required to be performed by the Limited Partner so assigning his rights.

6. *Admission of Additional Limited Partners:* The General Partner shall have the right to admit additional Limited Partners, however capital investment shall be limited to a maximum of $500,000.00.

7. *Contribution of General Partner:* The General Partner shall contribute such of its assets and sums as may be necessary to form the Partnership and shall receive therefore a 25% interest in the profits of the Partnership's investment account.

8. *Profits and Losses:* Net Profits shall be distributed to the Partners quarterly, by the 15th day following the close of business on the last day of the month ending the quarter, in proportion to their Partnership interests. In no event shall distributions of profits be made to the Partners if such distribution shall reduce the Partners' Capital Accounts below their original Capital contributions.

9. *Liquidation Upon Dissolution:* In the event that the value of the investment accounts decreases by 50% of its value as of the date on which the General Partner commences investment activities, the business of this partnership shall thereupon come to an end and the General Partner shall proceed with reasonable diligence and promptness to liquidate the business of the Partnership. Upon such liquidation, the proceeds thereof shall be distributed in the manner hereinafter provided.

10. *Limited Partners' Liability for Losses:* The amount of the losses for which the Limited Partners or any of them shall in any event be liable shall not exceed in the aggregate the amount of capital contributed by them or any of them as aforesaid and the Limited Partners shall not be personally liable for any debts, engagements or losses of the Partnership.

11. *Compensation:* The General Partner shall receive as its sole compensation, 25% of quarterly net income of the Partnership's investment account and shall have no effect on the debt portion of the investment. The Limited Partners' compensation shall be their proportionate share of the profits, as set forth above.

12. *Dissolution of Partnership:*

a) The dissolution or withdrawal from the Partnership of the General Partner or a sale of all of the assets of the partnership shall dissolve the Partnership.

b) In the event of the dissolution of the Partnership for any reason, the General Partner shall commence to wind up the affairs of the Partnership and to liquidate its investments. The General and Limited Partners shall continue to share profits and losses during the period of liquidation in the same proportion as before the dissolution. The General Partner shall have full right and unlimited discretion to determine the time, manner and terms of any sale or sales of Partnership property pursuant to such liquidation having due regard to the activities and condition of the relevant market and general financial and economic conditions.

c) Following the payment of all debts and liabilities of the Partnership and all expenses of liquidation, and subject to the right of the General Partner to set up such cash reserves as it may deem reasonably necessary for any contingent or unforeseen liabilities or obligations of the Partnership, the proceeds of the liquidation and any other funds of the Partnership shall be distributed in accordance with the terms hereof.

d) Within a reasonable time following the completion of the liquidation of the Partnership's properties, the General Partner shall supply to each of the Partners a statement which shall set forth the assets and the liabilities of the Partnership as of the date of complete liquidation, each interest holder's pro rata portion of distributions and the amount paid to the General Partner.

e) No holder of a limited or general partnership interest shall have any right to demand or receive property other than cash upon dissolution and termination of the Partnership.

f) Upon the completion of the liquidation of the Partnership and the distribution of all Partnership funds, the Partnership shall terminate and the General Partner shall have the authority to execute and record a Certificate of Dissolution of the Partnership as well as any and all other documents required to effectuate the dissolution and termination of the Partnership.

13. *Status Of Limited Partners:*

a) The Limited Partners shall not participate in the management or control of the Partnership's business; nor shall Limited Partners have any rights not set forth herein.

b) The death or legal incapacity of a Limited Partner shall not cause a dissolution of the Partnership, but the rights of such Limited Partner to share in the profits and losses of the Partnership and to receive distributions of Partnership funds shall upon the happening of such an event, devolve upon his personal representative, or in the event of the death of one whose Limited Partnership Interest is held in joint tenancy, shall pass to the surviving joint tenant, subject to the terms and conditions of this agreement, and the Partnership shall continue as a limited partnership. The estate of the deceased Limited Partner or such surviving joint tenant, as the case may be, shall be liable for all the obligations of the deceased Limited Partner. However, in no event shall such personal representative or surviving joint tenant become a substituted Limited Partner.

- 9 -

c)  The Limited Partners acknowledge that they have received the Investor Information Memorandum; that they have had ample time to review same; and that they have reviewed and are aware of the special risks contained therein. The Limited Partners further acknowledge and agree that their capital investment may not be withdrawn for the first fifteen (15) months following the initiation of business, unless the General Partner consents to same.

14. *Powers, Rights, and Duties of General Partner:*

a)  The General Partner shall have exclusive authority to manage the operations and affairs of the Partnership and to make all decisions regarding the business of the Partnership. It is understood and agreed to that the General Partner shall have all of the rights and powers of a general partner as provided in the applicable partnership law and otherwise to the fullest extent provided by law, and any action taken by the General Partner shall constitute the act of and serve to bind the Partnership.

b)  The General Partner thereof shall devote such time to the Partnership business as it, in its sole discretion, shall deem to be necessary to manage and supervise the Partnership business and affairs in an efficient manner; but nothing in this Agreement shall preclude the employment, at the expense of the Partnership, of any agent or third party to manage, or provide other services in respect of the Partnership property subject to the control of the General Partner.

c)  The General Partner shall not be required to manage the Partnership as its sole and exclusive function and it may have other business interests and may engage in other activities in addition to those relating to the Partnership, including management of the General Partner and other securities related enterprises and the rendition of services or advice of any kind to parties other than the Partnership or its Limited Partners, without any obligation to present to the Partnership or its Limited Partners any investment.

d) The validity of any transactions, agreement, or payment involving the Partnership and General Partner otherwise permitted by the terms of this agreement shall not be affected by reason of the relationship between the Partnership and such General Partner.

e) The General Partner shall have a fiduciary responsibility for the safekeeping and use of all funds and assets of the Partnership.

f) The General Partner shall not be liable, responsible, or accountable in damages or otherwise to the Partnership or any Limited Partner for any action taken or failure to act on behalf of the Partnership within the scope of the authority conferred on the General Partner by this Agreement or by law unless such action or omission was performed or omitted fraudulently or in bad faith or constituted wanton and willful misconduct or gross negligence.

g) The Partnership shall indemnify and hold harmless the General Partner and its agents, herein referred to as the Indemnified Parties, from and against any loss, expense, damage or injury suffered or sustained by it by reason of any acts, omissions, or alleged acts or omissions arising out of the activities of the Partnership, including, but not limited to, any judgment, award, settlement, reasonable attorney's fees, and other costs or expenses incurred in connection with the defense of any actual or threatened action, proceeding, or claim and including any payments made by the General Partner pursuant to an indemnification agreement no broader than this paragraph g) of this Clause 14, provided that the acts, omissions, or alleged acts or omissions upon which such actual or threatened action, proceeding, or claims are based were in good faith and were not performed or omitted fraudulently or in bad faith or as a result of wanton and willful misconduct or gross negligence by such indemnified party.

h) The General Partner may, in its sole discretion, make or revoke the election referred to in Section 754 of the Internal Revenue Code of 1954, or any similar provision enacted in lieu thereof. Each of the Partners will upon request supply the information necessary to properly give effect to such election.

15. *Power of Attorney:*

a) The Limited Partners, by their execution hereof, jointly and severally hereby irrevocably constitute and appoint the General Partner, and any successor(s) to the General Partner, with full power of substitution, their true and lawful attorney-in-fact, in their name, place, and stead to make, execute, sign, acknowledge, record, and file, on behalf of them and on behalf of the Partnership, the following:

1) A Certificate of Limited Partnership, and any other certificates or instruments which may be desirable or required to be filed by the Partnership or the Partners under the law of the State of New York and any other jurisdiction whose laws may be applicable;

2) A Certificate of Dissolution of the Partnership and such other instruments or documents as may be deemed necessary or desirable by the General Partner upon the termination of the Partnership business;

3) Any and all amendments of the instruments described in subsections 1) and 2) of this Clause 15) a), provided such amendments are either required by law to be filed or are consistent with this agreement or have been authorized by the particular Limited Partner or Partners; and

4) Any and all such other instruments as may be deemed necessary or desirable by the General Partner to carry out fully the provisions of this agreement in accordance with its terms.

b) The foregoing grant of authority;

1) Is a special Power of Attorney coupled with an interest is irrevocable and shall survive the death or incapacity of the Limited Partner granting the power;

2) May be exercised by the General Partner on behalf of each Limited Partner by listing all of the Limited Partners executing any instrument with a single signature as attorney-in-fact for all of them; and

- 12 -

3) Shall survive the delivery of an assignment of a Limited Partner of the whole or any portion of this interest.

16. *Notices:* All notices and demands required or permitted under this agreement shall be in writing and may be sent by certified or registered mail, postage prepaid, to the Partners at their addresses as shown on the records of the Partnership. Any Partner may specify a different address by notifying the General Partner in writing (via certified mail/return receipt requested) of such different address.

17. *Arbitration:* Any dispute arising under, in connection with, or in relation to this agreement, or any breach thereof, shall be determined and settled by arbitration in the City, County and State of New York, pursuant to the rules then obtaining of the American Arbitration Association. Any award rendered shall be final and conclusive upon the parties, and a judgment thereon may be entered in the highest court of the forum, state or federal, having jurisdiction.

18. *Construction:* This agreement has been made with reference to, and shall be construed in accordance with, the laws of the State of New York.

19. *Modification; Waiver:* No waiver or modification of any of the provisions hereof shall be binding unless in writing and signed by all Partners. No waiver of a breach of any provision hereof or of any default hereunder, and no failure to insist, in one or more instances, upon the strict performance of any provision thereof, shall be deemed a waiver of such breach or default.

20. *Addresses Of Partners:* Unless otherwise specified in writing, the address of each party shall for all purposes be that set forth next to his signature at the end of this agreement.

21. *Agreement Binding:* This Agreement shall inure to the benefit of, and shall be binding upon, the parties hereto and their respective heirs, executors, administrators, distributees, successors and assigns.

22. *Entire Agreement:* This Agreement constitutes the entire agreement of the parties.

23. *Counterparts:* This document may be executed in counterparts, and each such counterpart shall be deemed a valid executed original.

IN WITNESS WHEREOF the parties hereto have hereunto set their hands and seals as of the day and year first above written.

AS LIMITED PARTNER   UNIFUND FINANCIAL GROUP, Inc.


_____  _____
Signature         R Scott Barter
              President
_____
Name - please print

_____
Social security number

_____
Street

_____
City, state & zip code


_____
Signature

_____
Name - please print

_____
Social security number

_____
Street

_____
City, state & zip code

**Investment details:**

Income: $_____

Equity: $_____

## III.   NON-NEGOTIABLE PROMISSORY NOTE

$10,000.00                                                      New York, New York

Number (1) of _____(___)                    _____, 1998

FOR VALUE RECEIVED, the undersigned, UNIFUND PARTNERS FUND, L.P., Series XII, ("Borrower"), a limited partnership with its principal place of business at 575 Madison Avenue, Suite 1006, New York, New York, hereby promises to pay _____ ("Lender"), $10,000.00, plus interest payable at the fixed rate of 12½% per annum in semi-annual installments of interest only commencing June 1st 1999, with the principal payable 4 years from date.

The undersigned hereby waives presentment for payment, protest and notice of protest for non-payment of this Note.

The undersigned shall have the right to prepay this Note, in whole or in part, without premium, penalty or fee.

IN WITNESS WHEREOF, this Note has been duly executed on the date first above written.

**(Seal)**                              UNIFUND PARTNERS FUND, LP Series XII

UNIFUND FINANCIAL GROUP, INC. as

General Partner


By:_____

President

STATE OF NEW YORK          )
COUNTY OF NEW YORK    ) ss.:

On                199    before me personally came R. SCOTT BARTER to me known, who, by me duly sworn, did depose and say that deponent is the President of UNIFUND FINANCIAL GROUP, INC., the corporation described herein, and which executed the foregoing instrument that deponent knows the seal of the corporation, that the seal affixed to the foregoing instrument is the corporate seal, that it was affixed by order of the board of directors of the corporation; and that deponent signed deponent's name by like order.

_____

NOTARY PUBLIC

# EXHIBIT 8

# TO THE FERRER DECLARATION

# II. AGREEMENT
- of -
# LIMITED PARTNERSHIP
- of -
# UNIFUND PARTNERS FUND, L.P., Series XIV

AGREEMENT made as of the _____ day of _____, 1999, by and among Unifund Financial Group, Inc., a New York Corporation, with its principal place of business at 575 Madison Avenue, Suite 1006, New York, New York, 10022, as General Partner, and each of the persons executing this Agreement or counterparts thereof, collectively being referred to as Limited Partners. The Limited and General Partner will be referred to hereinafter collectively as "the Partners".

**W I T N E S S E T H :**

1. *Name and Business:* The Partners do hereby form a limited partnership (hereinafter called "the partnership") pursuant to the provisions of the New York Revised Limited Partnership Act under the name "Unifund Partners Fund, L.P., Series XIV". The Partnership is hereby formed to carry on the business of investment in securities for its own account.

2. *Office:* The principal place of business of the Partnership shall be located at 575 Madison Avenue, Suite 1006, New York, New York, 10022, or at such other location as the General Partner may determine.

3. *Term:* The term of the Partnership shall commence on the date that a copy of the Certificate of Limited Partnership is filed in the Office of the Secretary of State of the State of New York and shall continue thereafter from year to year until December 31st 2020, or unless sooner terminated as provided for herein. The investment activities shall commence when, in the judgment of the General Partner, sufficient funds have been raised, which sum shall not exceed $500,000.00.

4. *Capital Contribution of Limited Partners:* The name, place of residence, Capital Contribution and percentage of interest of each of the Limited Partners is set

forth on the signature page of this Agreement or counterparts thereof. Each Limited Partner's Capital Contribution shall be paid to the Partnership upon the execution of this Agreement by such Limited Partner.

5. *Substitution of Limited Partners:* Any Limited Partner may substitute an assignee as contributor in his place only upon the following terms and conditions of substitution: The assignee shall be a person of sufficient means to make the contribution required of the Limited Partners under this agreement, shall be acceptable to and approved by the General Partner and shall execute this Agreement or a further agreement by which he shall bind himself to carry out the provisions of this Agreement required to be performed by the Limited Partner so assigning his rights.

6. *Admission of Additional Limited Partners:* The General Partner shall have the right to admit additional Limited Partners, however capital investment shall be limited to a maximum of $500,000.00.

7. *Contribution of General Partner:* The General Partner shall contribute such of its assets and sums as may be necessary to form the Partnership and shall receive therefore a 25% interest in the profits of the Partnership's investment account.

8. *Profits and Losses:* Net Profits shall be distributed to the Partners quarterly, by the 15th day following the close of business on the last day of the month ending the quarter, in proportion to their Partnership interests. In no event shall distributions of profits be made to the Partners if such distribution shall reduce the Partners' Capital Accounts below their original Capital contributions.

9. *Liquidation Upon Dissolution:* In the event that the value of the investment accounts decreases by 50% of its value as of the date on which the General Partner commences investment activities, the business of this partnership shall thereupon come to an end and the General Partner shall proceed with reasonable diligence and promptness to liquidate the business of the Partnership. Upon such liquidation, the proceeds thereof shall be distributed in the manner hereinafter provided.

10. *Limited Partners' Liability for Losses:* The amount of the losses for which the Limited Partners or any of them shall in any event be liable shall not exceed in the aggregate the amount of capital contributed by them or any of them as aforesaid and the Limited Partners shall not be personally liable for any debts, engagements or losses of the Partnership.

11. *Compensation:* The General Partner shall receive as its sole compensation, 25% of quarterly net income of the Partnership's investment account and shall have no effect on the debt portion of the investment. The Limited Partners' compensation shall be their proportionate share of the profits, as set forth above.

12. *Dissolution of Partnership:*

a) The dissolution or withdrawal from the Partnership of the General Partner or a sale of all of the assets of the partnership shall dissolve the Partnership.

b) In the event of the dissolution of the Partnership for any reason, the General Partner shall commence to wind up the affairs of the Partnership and to liquidate its investments. The General and Limited Partners shall continue to share profits and losses during the period of liquidation in the same proportion as before the dissolution. The General Partner shall have full right and unlimited discretion to determine the time, manner and terms of any sale or sales of Partnership property pursuant to such liquidation having due regard to the activities and condition of the relevant market and general financial and economic conditions.

c) Following the payment of all debts and liabilities of the Partnership and all expenses of liquidation, and subject to the right of the General Partner to set up such cash reserves as it may deem reasonably necessary for any contingent or unforeseen liabilities or obligations of the Partnership, the proceeds of the liquidation and any other funds of the Partnership shall be distributed in accordance with the terms hereof.

d) Within a reasonable time following the completion of the liquidation of the Partnership's properties, the General Partner shall supply to each of the Partners a

statement which shall set forth the assets and the liabilities of the Partnership as of the date of complete liquidation, each interest holder's pro rata portion of distributions and the amount paid to the General Partner.

e) No holder of a limited or general partnership interest shall have any right to demand or receive property other than cash upon dissolution and termination of the Partnership.

f) Upon the completion of the liquidation of the Partnership and the distribution of all Partnership funds, the Partnership shall terminate and the General Partner shall have the authority to execute and record a Certificate of Dissolution of the Partnership as well as any and all other documents required to effectuate the dissolution and termination of the Partnership.

13. *Status Of Limited Partners:*

a) The Limited Partners shall not participate in the management or control of the Partnership's business; nor shall Limited Partners have any rights not set forth herein.

b) The death or legal incapacity of a Limited Partner shall not cause a dissolution of the Partnership, but the rights of such Limited Partner to share in the profits and losses of the Partnership and to receive distributions of Partnership funds shall upon the happening of such an event, devolve upon his personal representative, or in the event of the death of one whose Limited Partnership Interest is held in joint tenancy, shall pass to the surviving joint tenant, subject to the terms and conditions of this agreement, and the Partnership shall continue as a limited partnership. The estate of the deceased Limited Partner or such surviving joint tenant, as the case may be, shall be liable for all the obligations of the deceased Limited Partner. However, in no event shall such personal representative or surviving joint tenant become a substituted Limited Partner.

c) The Limited Partners acknowledge that they have received the Investor Information Memorandum; that they have had ample time to review same; and that

they have reviewed and are aware of the special risks contained therein. The Limited Partners further acknowledge and agree that their capital investment may not be withdrawn for the first fifteen (15) months following the initiation of business, unless the General Partner consents to same.

14. *Powers, Rights, and Duties of General Partner:*

a) The General Partner shall have exclusive authority to manage the operations and affairs of the Partnership and to make all decisions regarding the business of the Partnership. It is understood and agreed to that the General Partner shall have all of the rights and powers of a general partner as provided in the applicable partnership law and otherwise to the fullest extent provided by law, and any action taken by the General Partner shall constitute the act of and serve to bind the Partnership.

b) The General Partner thereof shall devote such time to the Partnership business as it, in its sole discretion, shall deem to be necessary to manage and supervise the Partnership business and affairs in an efficient manner; but nothing in this Agreement shall preclude the employment, at the expense of the Partnership, of any agent or third party to manage, or provide other services in respect of the Partnership property subject to the control of the General Partner.

c) The General Partner shall not be required to manage the Partnership as its sole and exclusive function and it may have other business interests and may engage in other activities in addition to those relating to the Partnership, including management of the General Partner and other securities related enterprises and the rendition of services or advice of any kind to parties other than the Partnership or its Limited Partners, without any obligation to present to the Partnership or its Limited Partners any investment.

d) The validity of any transactions, agreement, or payment involving the Partnership and General Partner otherwise permitted by the terms of this agreement

shall not be affected by reason of the relationship between the Partnership and such General Partner.

e) The General Partner shall have a fiduciary responsibility for the safekeeping and use of all funds and assets of the Partnership.

f) The General Partner shall not be liable, responsible, or accountable in damages or otherwise to the Partnership or any Limited Partner for any action taken or failure to act on behalf of the Partnership within the scope of the authority conferred on the General Partner by this Agreement or by law unless such action or omission was performed or omitted fraudulently or in bad faith or constituted wanton and willful misconduct or gross negligence.

g) The Partnership shall indemnify and hold harmless the General Partner and its agents, herein referred to as the Indemnified Parties, from and against any loss, expense, damage or injury suffered or sustained by it by reason of any acts, omissions, or alleged acts or omissions arising out of the activities of the Partnership, including, but not limited to, any judgment, award, settlement, reasonable attorney's fees, and other costs or expenses incurred in connection with the defense of any actual or threatened action, proceeding, or claim and including any payments made by the General Partner pursuant to an indemnification agreement no broader than this paragraph g) of this Clause 14, provided that the acts, omissions, or alleged acts or omissions upon which such actual or threatened action, proceeding, or claims are based were in good faith and were not performed or omitted fraudulently or in bad faith or as a result of wanton and willful misconduct or gross negligence by such indemnified party.

h) The General Partner may, in its sole discretion, make or revoke the election referred to in Section 754 of the Internal Revenue Code of 1954, or any similar provision enacted in lieu thereof. Each of the Partners will upon request supply the information necessary to properly give effect to such election.

15. *Power of Attorney:*

a)  The Limited Partners, by their execution hereof, jointly and severally hereby irrevocably constitute and appoint the General Partner, and any successor(s) to the General Partner, with full power of substitution, their true and lawful attorney-in-fact, in their name, place, and stead to make, execute, sign, acknowledge, record, and file, on behalf of them and on behalf of the Partnership, the following:

1)  A Certificate of Limited Partnership, and any other certificates or instruments which may be desirable or required to be filed by the Partnership or the Partners under the law of the State of New York and any other jurisdiction whose laws may be applicable;

2)  A Certificate of Dissolution of the Partnership and such other instruments or documents as may be deemed necessary or desirable by the General Partner upon the termination of the Partnership business;

3)  Any and all amendments of the instruments described in subsections 1) and 2) of this Clause 15) a), provided such amendments are either required by law to be filed or are consistent with this agreement or have been authorized by the particular Limited Partner or Partners; and

4)  Any and all such other instruments as may be deemed necessary or desirable by the General Partner to carry out fully the provisions of this agreement in accordance with its terms.

b)  The foregoing grant of authority;

1)  Is a special Power of Attorney coupled with an interest is irrevocable and shall survive the death or incapacity of the Limited Partner granting the power;

2)  May be exercised by the General Partner on behalf of each Limited Partner by listing all of the Limited Partners executing any instrument with a single signature as attorney-in-fact for all of them; and

3)  Shall survive the delivery of an assignment of a Limited Partner of the whole or any portion of this interest.

16. *Notices:* All notices and demands required or permitted under this agreement shall be in writing and may be sent by certified or registered mail, postage prepaid, to the Partners at their addresses as shown on the records of the Partnership. Any Partner may specify a different address by notifying the General Partner in writing (via certified mail/return receipt requested) of such different address.

17. *Arbitration:* Any dispute arising under, in connection with, or in relation to this agreement, or any breach thereof, shall be determined and settled by arbitration in the City, County and State of New York, pursuant to the rules then obtaining of the American Arbitration Association. Any award rendered shall be final and conclusive upon the parties, and a judgment thereon may be entered in the highest court of the forum, state or federal, having jurisdiction.

18. *Construction:* This agreement has been made with reference to, and shall be construed in accordance with, the laws of the State of New York.

19. *Modification; Waiver:* No waiver or modification of any of the provisions hereof shall be binding unless in writing and signed by all Partners. No waiver of a breach of any provision hereof or of any default hereunder, and no failure to insist, in one or more instances, upon the strict performance of any provision thereof, shall be deemed a waiver of such breach or default.

20. *Addresses Of Partners:* Unless otherwise specified in writing, the address of each party shall for all purposes be that set forth next to his signature at the end of this agreement.

21. *Agreement Binding:* This Agreement shall inure to the benefit of, and shall be binding upon, the parties hereto and their respective heirs, executors, administrators, distributees, successors and assigns.

22. *Entire Agreement:* This Agreement constitutes the entire agreement of the parties.

23. *Counterparts:* This document may be executed in counterparts, and each such counterpart shall be deemed a valid executed original.

IN WITNESS WHEREOF the parties hereto have hereunto set their hands and seals as of the day and year first above written.

AS LIMITED PARTNER                    UNIFUND FINANCIAL GROUP, Inc.

_____    _____

Signature                              R Scott Barter
                                       President

_____

Name - please print

_____

Social security number

_____

Street

_____

City, state & zip code


_____

Signature

_____

Name - please print

_____

Social security number

_____

Street

_____

City, state & zip code

Investment details:

Income: $_____

Equity: $_____

III.   NON-NEGOTIABLE PROMISSORY NOTE

$10,000.00

New York, New York

Number (1) of _____(\_\_) _____, 1999

FOR VALUE RECEIVED, the undersigned, UNIFUND PARTNERS FUND, L.P., Series XIV, ("Borrower"), a limited partnership with its principal place of business at 575 Madison Avenue, Suite 1006, New York, New York, hereby promises to pay _____ ("Lender"), $10,000.00, plus interest payable at the fixed rate of 12½% per annum in semi-annual installments of interest only commencing June 1st 1999, with the principal payable 4 years from date.

The undersigned hereby waives presentment for payment, protest and notice of protest for non-payment of this Note.

The undersigned shall have the right to prepay this Note, in whole or in part, without premium, penalty or fee.

IN WITNESS WHEREOF, this Note has been duly executed on the date first above written.

(Seal)

UNIFUND PARTNERS FUND, LP Series XIV
UNIFUND FINANCIAL GROUP, INC. as
General Partner

By:_____
        President

STATE OF NEW YORK          )
COUNTY OF NEW YORK      ) ss.:

On                199        before me personally came R. SCOTT BARTER to me known, who, by me duly sworn, did depose and say that deponent is the President of UNIFUND FINANCIAL GROUP, INC., the corporation described herein, and which executed the foregoing instrument that deponent knows the seal of the corporation, that the seal affixed to the foregoing instrument is the corporate seal, that it was affixed by order of the board of directors of the corporation; and that deponent signed deponent's name by like order.


_____
NOTARY PUBLIC

# EXHIBIT 9

# TO THE FERRER DECLARATION



# EATON & VAN WINKLE LLP

WEST PALM BEACH, FLORIDA OFFICE
TELEPHONE: (561) 748-7740
FAX: (561) 744-8754

3 PARK AVENUE
NEW YORK, NEW YORK 10016

TELEPHONE: (212) 779-9910
FAX: (212) 779-9928.

Vincent J. McGill
Partner

Direct Dial: (212) 561-3604
Email: VMcGill@EVW.com

May 26, 2005

***Via Federal Express:***
Elizabeth Acton
531 Main Street
Apartment 1510
New York, New York 10044

Dear Ms. Acton:

As you are aware, our firm represents certain Unifund entities. This confirms our telephone conversation of yesterday when you returned my call of earlier this week. As we discussed, in your capacity as a former clerical assistant to Unifund entities you are in possession of such companies' files, including some on computer disks. These files are needed to address current matters.

We further discussed that requests for the Unifund files had been previously made by representatives of Unifund and that you had refused to return such files.

When we spoke, you offered to return the files if you were paid $75,000 in cash, 50,000 shares of Dune Energy and 50,000 shares of Coastal Energy. When I asked for the justification for your request, your only explanation was that you felt that it was appropriate.

I urge you to comply with your fiduciary duties to return all copies of Unifunds' files as soon as possible, and not to use any of the confidential and proprietary information in those files for your own or any other improper purpose. If you need further guidance, I would welcome your conferring with an attorney of your choosing, and I would be happy to communicate with such attorney in order to resolve this matter in a timely and appropriate way.

If you would simply like to return the files, please call and I will arrange to have them picked up. We will safeguard all files delivered to us in the event you or anyone else, including any regulator, needs access to such files in the future. It is imperative that while the files are in your possession you take all measures necessary to ensure that all files are preserved in their entirety.

I look forward to your prompt and appropriate cooperation.

Regards,

Vincent J. McGill

VJM:rs

# EXHIBIT 10

# TO THE FERRER DECLARATION



## EATON & VAN WINKLE LLP
3 PARK AVENUE
NEW YORK, NEW YORK 10016

WEST PALM BEACH, FLORIDA OFFICE
TELEPHONE: (561) 748-7740
FAX: (561) 744-8754

Vincent J. McGill
Partner

TELEPHONE: (212) 779-9910
FAX: (212) 779-9928

Direct Dial: (212) 561-3604
Email: VMcGill@EVW.com

June 6, 2005

***Via Federal Express & Reg. Mail:***
Elizabeth Acton
531 Main Street
Apartment 1510
New York, New York 10044

Dear Ms. Acton:

On Friday, May 27, your doorman received via Federal Express an envelope containing a letter from me, a copy of which is enclosed.

This firm represents certain Unifund companies. To properly represent these clients we need to review all of their files, including those held by you. Your failure to allow us to have access to the records of Unifund in your possession is impeding our ability to properly represent our clients and could cause them substantial damages. At the least, continued refusal to provide us with the Unifund records in your possession will cause Unifund to incur unnecessary legal expenses.

Once again, I urge you to comply with your obligations to return all copies of Unifunds' files as soon as possible and remind you that you are not to use Unifunds' materials for your personal benefit. As I confirmed in my May 26th letter to you, we will preserve all files you turn over in the event any party, including you or any regulator, needs access to such files in the future. If you would like me to arrange to have the files picked up, please call at your earliest convenience and I will arrange to do so.

I look forward to hearing from you.

Regards,

Vincent J. McGill

VJM:rs

# EXHIBIT 11

# TO THE FERRER DECLARATION



# EATON & VAN WINKLE LLP

WEST PALM BEACH, FLORIDA OFFICE
TELEPHONE: (561) 748-7740
FAX: (561) 744-8754

Vincent J. McGill
Partner

3 PARK AVENUE
NEW YORK, NEW YORK 10016

TELEPHONE: (212) 779-9910
FAX: (212) 779-9928

Direct Dial: (212) 561-3604
Email: VMcGill@EVW.com

June 23, 2005

***Via Federal Express & Priority Mail:***
Elizabeth Acton
531 Main Street
Apartment 1510
New York, New York 10044

Dear Ms. Acton:

On Friday, May 27, and Tuesday, June 7, your doorman received via Federal Express envelopes containing letters from me, copies of which are enclosed. In addition, I have left at least one message on your answering machine asking that you call me    Apparently, since our initial conversation when you demanded approximately $200,000 as a condition to returning Unifund's documents, you have chosen to ignore my attempts to reach you.

As I have advised, this firm represents Unifund America and certain of its affiliates. On behalf of Unifund I hereby demand that you return all of the files of Unifund and its affiliates currently in your possession. Your continued refusal to turn over the records of Unifund in your possession is causing Unifund to incur unnecessary expenses and other damages.

Once again, I urge you to comply with your obligations to return all copies of Unifunds' files as soon as possible and remind you that you are not to use Unifunds' materials for your personal benefit. Should you fail to respond in a timely manner, Unifund will have no choice other than to take such actions as are available to obtain possession of its records. Should Unifund be forced to commence a legal action, in addition to seeking compensation for damages it has suffered, Unifund will seek to collect from you the expenses of such action, including its legal fees. If you would simply like to return the files, please call and I will arrange to have them picked up. Once again, I reiterate that we will safeguard all files delivered to us in the event you or anyone else, including any regulator, needs access to such files in the future

Sincerely,

Vincent J. McGill

VJM:rs

04 CV 5151 (LTS)
ECF Case

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CAROLYN FORREST,

Plaintiff,

-against-

UNIFUND FINANCIAL GROUP, INC., ET AL.,

Defendants.

**DECLARATION OF ALFRED FERRER III**

**EATON & VAN WINKLE LLP**
Alfred Ferrer III (AF 3661)
3 Park Avenue, 16th Floor
New York, New York 10016-2078
(212) 779-9910; Fax: (212) 779-9928
E-mail: aferrer@evw.com
Attorneys for Defendants