UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------x

CAROLYN FORREST


    -against-                          Case No. *04-CV-5151 (LTS)*
                                               ECF CASE


UNIFUND FINANCIAL GROUP, INC.;
UNIFUND AMERICA, INC.;
RALPH SCOTT BARTER and
MURIEL BARTER
                         Defendants.

--------------------------------------------------x




# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

Eric N. Aglow, Esq.
UAW-GM Legal Services Plan
10 Woodbridge Center Drive
Suite 730
Woodbridge, New Jersey 07095
*Voice: 732 602 1166*
*Fax:   732 602 9730*
*E-mail: Ericag@Uawlsp.com*
Attorneys for Plaintiff

# TABLE OF CONTENTS

I.      INTRODUCTION

        HISTORY OF PRIOR MOTIONS AND ORDERS. . . . . . . . 3-4

        ORDER DATED MAY 12, 2005 . . . . . . . . . . . . . . . . . . . . 4-5

        JURISDICTION      . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II.     DEFENDANT'S DEMAND FOR SANCTIONS. . . . . . . . 5-11

III.    BREACH OF CONTRACT CLAIMS

        A.    COURT'S PREVIOUS ORDER DID NOT BAR
              ADDITIONAL SPECIFIC CONTRACT BREACH
              ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        B.    PLAINTIFF'S CONTRACT CLAIMS AGAINST
              UNIFUND FINANCIAL, INC. ARE NOT BARRED
              BY NEW YORK LAW NOR ANY CONTRACT
              PROVISION

              1. NEW YORK PARTNERSHIP LAW DOES NOT
                 BAR THE CONTRACT CLAIMS PRESENTED
                 IN THE COMPLAINT NOR DOES IT REQUIRE,
                 AS A MATTER OF LAW, THE PRESENCE OF
                 THE LIMITED PARTNERSHIP AS AN
                 DISPENSABLE PARTY . . . . . . . . . . . . . . . . . 12-14

1

2. THE CONTRACT CAUSE OF ACTION IS NOT
   BARRED BY THE LIMITATIONS OF LIABILITY
   CONTRACTUAL CLAUSE OR BY THE
   STATUTE OF LIMITATIONS FOR TORT
   CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14-17

**IV.  DEFENDANTS HAVE WAIVED ENFORCEMENT OF
THE ARBITRATION CLAUSE BY ENGAGING IN
LITIGATION AND DELAY**

A.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . .17-18

B.  DEFENDANTS HAVE ENGAGED AND CONTINUE
    TO ENGAGE IN PROTRACTED LITIGATION . . . . 19-21

C.  DELAYS AND MISUSE OF THE COURT
    SYSTEM, BY THE DEFENDANTS HAS
    PREJUDICED PLAINTIFF'S CASE . . . . . . . . . . . 21-23

D.  AN ORDER FOR ARBITRATION SHOULD
    INCLUDE THE AVAILABILITY OF BASIC
    DISCOVERY . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23-24

**V.  THE ALLEGATIONS OF FRAUDS IN THE
AMENDED COMPLAINT ARE STATED WITH
SUFFICIENT SPECIFICITY** . . . . . . . . . . . . . . . . . . . 24-29

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

2

# I.    INTRODUCTION

Plaintiff respectfully submits this memorandum of law in opposition to Defendants' second motion to dismiss directed to the Amended Complaint.

## HISTORY OF PRIOR MOTIONS AND ORDERS

Defendants have brought a second motion to dismiss on the pleadings, governed by Fed. R. Civ. Pro.12 (b)(6) and 9(b). This second motion is directed to the Amended Complaint and represents the fourth filling by the Defendant of motions relating to the Dismissal of the Complaint.

The first motion to dismiss, directed to the Original Complaint, resulted in the issuance of an Opinion and Order dated May 12, 2005 by the Hon. Laura Taylor Swain (attached to Defendant's moving papers as Exhibit 3). That Order was followed by a Motion to Reargue by Defendant's attorney, which was denied by the Court. The second filing of a Motion to Dismiss was terminated by the Court based upon the Court's Order dated August 24, 2005 that Defendant's attorney failed to comply with Paragraph 2B of the Individual Practices Rules of the Court. Following another Motion by Defendant's attorney to reinstate his second motion to dismiss, the Court granted said reinstatement by an Order

dated December 13, 2005. Since there were no further filings by the Defendant's attorney, it is the second motion to dismiss directed to the Amended Complaint that is again before this Court.

A motion to dismiss should be granted only if it is "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Lerman v. Bd. of Elections of New York, 232 F.3d 135, 140 (2d Cir. 2000). When assessing a motion to dismiss, courts must accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor. Chambers v. Time Warner, Inc., 282 F3d 147, 152 (2d Cir. 2002).

## ORDER DATED MAY 12, 2005

Said Order initially granted the dismissal of the Complaint based upon a lack of complete diversity of citizenship due to the inclusion of limited partnerships as named Defendants which had the same citizenship as the Plaintiff. Said Order, however, also granted leave for the filing of an Amended Complaint against the diverse Defendants.

Said Order, in anticipation of said permitted Amended Complaint, also made certain rulings on the viability of Plaintiff's claims.

Said Order granted leave to replead, with greater particularity, both the claim for fraudulent statements and misrepresentations and the claim for conspiracy to commit fraud. Said Order also granted leave to

replead the claims for breach of contract except for claims directed against the named individual Defendants.

Said Order did not grant leave to replead for punitive damages, special damages nor attorney's fees. Said Order also did not grant leave to replead Plaintiff's claims for breach of fiduciary duty based upon the Court's determination that said claims were time barred.

### JURISDICTION OF THIS COURT

The Amended Complaint removed the limited partnerships as named Defendants. With said removal, this Court now has subject matter jurisdiction since there is a complete diversity of citizenship and the amount in controversy exceeds $75,000.

## II.  DEFENDANTS' DEMAND FOR SANCTIONS

The motion to dismiss now pending before this Court represents the third submission by Defendants' counsel of a Motion to Dismiss. The first submission resulted in previously discussed Order from this Court dated May 12, 2005 which granted leave for the filing of an Amended Complaint.

Defendants' second Motion to Dismiss, directed to the Amended Complaint, was initially terminated by the Court based upon the Court's

ruling and directive that efforts must be made by Defendants' counsel, which efforts would be memorialized in the second filing, of attempts to resolve the issues underlying the second Motion to Dismiss pursuant to the Court's Individual Rules of Practice.

The so-called efforts by Defendants' attorney to resolve this action or any of the matters underlying their second Motion to Dismiss were not fruitful. But more important and more illustrative of the superficial and disingenuous nature of Defendants' efforts and, for that matter, the entire integrity of all issues raised in this third filing of a Motion to Dismiss, are the intentionally false, unsubstantiated and unconscionable personal allegations leveled against the Plaintiff in this motion by Defendants.

The sworn affirmation submitted by Defendants' attorney in support of his third filing of a Motion to Dismiss the Complaint, which affirmation is subject to both the Rules of Professional Conduct and the sanction requirements of Rule 11(b)(1), consists of three and one half pages with most of said affirmation devoted to allegations against an individual who is not even a party to this action, an individual apparently named Ms. Elizabeth Acton.

This affirmation dated and sworn to by Defendants' attorney on August 12, 2005, is executed by Defendants' attorney under penalty of perjury that the facts stated therein are true and correct.

In said sworn affidavit, Defendants assert that sanctions and attorney's fees should be awarded to Defendants due to the alleged assertion of claims in the original Complaint which were determined by the Court to be time barred.

Defendants support said request for fees and sanctions with various horrific personal accusations against the Plaintiff. When reviewing these allegations, it should be noted that the Plaintiff is a single retiree living on a pension and social security in Florida who lost almost all of her pension savings as a result of the actions of Defendants and their various investments schemes which are the subject of this action.

Plaintiff's response to these allegations are elucidated in the Plaintiff's affidavit which is attached as Exhibit A to the affirmation in opposition by Plaintiff's attorney and incorporated by reference herein.

The allegations by Defendant's attorney are so gravely serious that they must be fully cited as follows:

1. "(P)laintiff's suit is part of an overall improper and illegal course of conduct calculated to extort monies from certain defendants for the benefit of certain person engaged in unlawful conduct."

2. "The commencement and continued prosecution of this suit by plaintiff as part of an overall course of improper conduct with others of attempting to obtain large sums of cash and stock from defendants by the unlawful withholding of such

**7**

defendants' original files, and by other threats associated with that course of conduct, is illegal and an 'improper purpose' within the meaning of Rule 11".

3. "(Defendants' attorney has) learned that Ms. (Elizabeth) Acton has been working in concert with others, including (Plaintiff) Carolyn Forrest, (and)Ms. Forrest has…herself made demands for stock in an investment in which she has never invested and would never have been aware of absent concerted actions with Ms. Acton".

In essence, Defendants have accused Plaintiff, an elderly retiree who sole source of income is a pension and social security, of being part of a vast criminal conspiracy with "others" and "confederates" to steal and withhold original Unifund documents, along with extortionist threats, with some former disgruntled employee of Unifund who is not a party to this action.

Defendants' attorney is swearing to the factual accuracy of a charge in his motion that the Plaintiff participated in a criminal enterprise to steal original Unifund documents and then filed this "baseless" suit against his clients which his innocent clients can not defend since she participated in the theft of their exculpatory documents. The precise opposite is sadly the reality.

**8**

Defendants slander the reputation of the Plaintiff in order to distract this Court from the alleged schemes perpetuated by them and to use dilatory tactic to avoid the revelations that would be exposed through the implementation of basic discovery avenues allowed under the Rules of this Court.

Without a doubt, these are serious charges made against the Plaintiff and Defendants and their attorney have grave and profound ethical responsibilities when making such charges in Court papers, and they must consider the equally serious consequences if said allegations are made flippantly and without any factual or evidentiary basis whatsoever.

Demand was made to Defendants' attorney to withdraw these accusations from his moving papers. While Defendant was waiting for the Court to rule upon the Motion to Reinstate his second Motion to Dismiss, Defendants had ample opportunity to reflect upon the improper nature of these allegations and to remove them from the motion. Instead, Defendants ignored this request and allowed the original moving papers to stand after this Court granted permission for reinstatement of the second motion to dismiss.

Equally important, however, it was also demanded that Defendants' attorney present Plaintiff's attorney with any evidence to substantiate these extremely serious charges. Nothing was provided by Defendants' attorney- not even an address for Ms. Acton or the name of

**9**

any attorney apparently representing her despite a promise by Defendant's attorney that he had such information and evidence.

The accusations are absolutely false, scandalous, defamatory and highly irresponsible. In addition, the irresponsibility evidenced by these accusations is wholly contrary to the ethical obligations of an attorney as an officer of the Court to be candid and truthful to the Court which obligation is certainly not outweighed by any obligation to zealously represent a client.

Plaintiff's affidavit states that she has never met nor spoken with Ms. Elizabeth Acton, the alleged former employee of Unifund who, according to attorney Ferrer's unsubstantiated allegations, was a former employee of Defendant Unifund who absconded with almost all of Unifund's original records. Plaintiff knew nothing about Ms. Acton. Plaintiff states in her sworn affidavit that she knows nothing about stolen records and has not acted in concert with any employee of Unifund nor any other individual.

This issue is being addressed at the opening of this memorandum since it points out the absence of integrity in arguments and statements made by Defendant's attorneys in these endless and repetitive motions to dismiss.

We will not join in Defendants' game by making a formal counter demand for sanctions. The egregious nature and intent of the allegations are obvious and self-explanatory and this Court can, sua sponte, make

its own decisions as to the proper response and remedy for such tactics by parties and their attorney.

## III.   BREACH OF CONTRACT CLAIMS

### A. THE COURT'S PREVIOUS ORDER DID NOT BAR ADDITIONAL SPECIFIC CONTRACT BREACH ALLEGATIONS.

In said May 2005 Order, the Court specifically recognized that for any claim, other than a fraud claim,  including a claim for breach of contract, the relaxed rules of pleading requires only that the Complaint contains a short and plain statement of the claim sufficient to put the defendant on notice of the grounds for the claim. For this reason, Defendants' assertion in their second motion to dismiss that the breach of contract claim is invalid, as a matter of law, due to the inclusion of new allegations, is wholly without any merit. There is nothing in the Court's May 2005 Order that prohibited a more extensive pleading of allegations for the breach of contract claim. The Court specifically ruled in said May 2005 Order that the breach of contract claim was pled sufficiently in the original Complaint. There is, therefore, no basis for the Defendant's attorney to now ask that said claim be summarily dismissed since it makes new and more explicit damaging allegations.

## B. PLAINTIFF'S CONTRACT CLAIMS AGAINST UNIFUND FINANCIAL ARE NOT BARRED BY NEW YORK LAW NOR BY ANY CONTRACT PROVISION

### 1. NEW YORK PARTNERSHIP LAW DOES NOT BAR THE CONTRACT CLAIMS PRESENTED IN THE COMPLAINT NOR DOES IT REQUIRE, AS A MATTER OF LAW, THE PRESENCE OF THE LIMITED PARTNERSHIP AS AN INDISPENSABLE PARTY.

Defendant Unifund Financial raises two provisions of New York partnership case law to defend itself against claims of breach of its contractual obligations. The first argument by Unifund is the claim that it can not be sued unless the limited partnership is found to be bankrupt or insolvent. The second argument is that the limited partnerships sold by its principals and agents to Plaintiff are themselves indispensable parties to this action and that this action, therefore, must be dismissed, as a matter of law, if they are not named parties.

All of the case law cited by Defendants' attorney, however, addresses a situation quite different from that posed by this action. The cases cited by Defendants' counsel involve actions by third-party creditors of the limited partnership against the general partner on limited partnership debts. This action, however, concerns the breach of contract and other duties owed by the general partner directly to limited partners.

A general partner can most certainly be sued directly by limited partners for contractual duties owed directly to the limited partners. Broome v. ML Media Opportunity Partners, L.P., 273 AD2d 63, 709 N.Y.S. 2d 59 (1st Dept. 2000). One claim made by the Plaintiffs in Broome, *supra,* was very similar to one of the claims made by Plaintiff here; namely that the general partner under the partnership agreement was to liquidate partnership assets and return them to the limited partners under specified circumstances but failed to do so. As stated by the Court in Broome:

> However, plaintiffs in the first action, the Broome plaintiffs, a group of limited partners in another Delaware limited partnership, do have standing, since they allege the general partner breached the contractual term in the partnership agreement to return capital contributions to the limited partners if not invested by April 1990.

*Id* at 709 N.Y.S.2d at 61.

Furthermore, the limited partnerships need not be a party to such an action. Just how "dispensable" the limited partnerships are is well illustrated by the Second Circuit's decision in Curley v. Brignoli, Curley & Roberts Assoc., 915 F.2d 81 (2nd Cir 1990). This decision followed the Supreme Court decision in Carden v. Arkoma Assoc., 494 US 185, 110 S Ct 1015, 108 L.Ed.2d 157 (1990). The trial court proceedings in Curley, *supra*, ran afoul of the ruling in Carden that the citizenship of all limited partners affected the citizenship of the partnership for diversity purposes. Applying this rule, there was no diversity in the case as

**13**

litigated in the trial court.  To save the judgment, the appellate court recharacterized the case as a class action, dismissed the limited partnership as a party, and affirmed the judgment on behalf of the class of limited partners against the general partner.  This ruling, which saved the judgment, rested on a finding that the limited partnership itself was an entirely dispensable party in a case brought by limited partners for misappropriation of partnership assets by the general partner.

These cases make clear that neither the presence of the limited partnership nor any special showing about the limited partnership is required for a limited partner to sue the general partner for breach of contractual duties under the partnership.

### 2.  THE CONTRACT CAUSE OF ACTION IS NOT BARRED BY THE LIMITATIONS OF LIABILITY CONTRACTUAL CLAUSE OR BY THE STATUTE OF LIMITATIONS FOR TORT CLAIMS

Defendant Unifund Financial argues that there exists an exculpatory provision in the partnership agreements that limits the liability of the general partner unless there is a showing by a limited partner of fraud, bad faith or wanton and willful misconduct or gross negligence on the part of the general partner.

The allegations in the Amended Complaint, however, do not present facts that would underlie the ordinary or garden-variety breach of contract.  Although Defendants' attorney in his opening statement to the memorandum, flippantly implies that Plaintiff's losses were due to a

market downturn or the events of September 11, such excuses hardly explain what happened to all of Plaintiff's retirement money. In fact, considering the horrific and rather disgusting personal allegations by Defendants against Plaintiff of criminal theft of Unifund's records and extortion, it is surprising that Defendants' attorney does not simply accuse the Plaintiff of single handedly manipulating the market so as to cause the complete loss of all of her retirement funds.

On December 1, 2000, Plaintiff was specifically told by Defendants that she had investments through the limited partnerships worth $272,800.  Subsequent to that representation, Plaintiff received no statements, no payment of principal or interest on promissory notes and no information whatsoever about what happened to her money.

Defendant Unifund was contractually required to liquidate a partnership investment if accounts dropped to 50% of original value.  If Unifund had tarried and let a partnership drop to 40% before liquidating, perhaps that arguably would not support a claim for wanton or willful gross negligence.  But the lack of any explanation whatsoever for the complete disappearance of Plaintiff's investment is most certainly not explained away by sophomoric references to market conditions.

In the insurance defense context, failure to keep the insured informed about settlement negotiations may be evidence of bad faith. Smith v. General Accident Insurance, 991 N.Y.2d 648, 674 N.Y.S.2d 267, 697 N.E.2d 168 (1998).  Here, the allegations go well beyond any simple

failure to inform since the money has completely vanished while the Plaintiff was strung along by the misrepresentations of Unifund. The Amended Complaint, at paragraph 39, alleges:

> In failing to maintain any value of the funds entrusted to it, failing to notify Plaintiff of what happened to her investment, failing to repay promissory notes, informing Plaintiff that her investment was gaining in value when the value was in reality disappearing, failing to protect assets by liquidating the partnership when losses reached the level that required liquidation under the agreement, Unifund Financial breached contractual requirement. Defendant acted in a grossly negligent fashion and in bad faith, in direct violation of contract.

The Contract clause requirements cited by Defendant Unifund are more than met by the allegations of bad conduct in the Amended Complaint.

Similarly, the language in this clause does not turn a contract action into a tort action requiring application of the tort statute of limitations in NY CPLR 214. The Amended Complaint describes specific duties undertaken by Defendant Unifund in the limited partnership agreements prepared and signed by Unifund's president.

The clause in these agreements that Unifund cites may raise the bar somewhat in terms of proof of breach of these duties but it does not change the nature of the contractual obligations undertaken. The fact that a party needs to prove negligence - or gross negligence or bad faith - to establish that a Contract was breached does not change the cause of action nor the limitation period.

**16**

> We conclude that plaintiff has a claim for breach of contract based upon his allegations that defendant acted carelessly in carrying out his contractual obligations, and thus the court properly refused to dismiss the second cause of action pursuant to CPLR 3211(a)(7) to that extent. Because those allegations arise out of the contractual relationship between the parties, the six-year statute of limitations is applicable thereto.

Parker v. Leonard, ___ N.Y.S.2d ____, 2005 WL 3510510 (4th Dept. December 22, 2005), N.Y. Slip Op. 09896

Where a party can establish a cause of action in contract and seeks contract damages, the six-year statute applies, even though such party might conceivably recover in tort. Rodriguez v Central Parking System of New York, 10 Misc.3d 435 (N.Y.Civ. Ct. 2005).

The contract cause of action is a well-pleaded with a sufficient statement of breach of the contract's provisions and, therefore, is not time-barred.


# IV. DEFENDANTS HAVE WAIVED ENFORCEMENT OF THE ARBITRATION CLAUSE BY ENGAGING IN LITIGATION AND DELAY

## A. INTRODUCTION

Defendants seek to enforce now an arbitration clause in limited partnership agreements. Defendants did not act to enforce these clauses when litigation was filed in this case. Instead, Defendants sought court

decisions on a variety of issues, challenging the factual and legal basis for claims against them here instead of in front of an arbitrator. By doing so, they have delayed any arbitration by 18 months and counting. They continue to ask for court decisions affecting potential liability in the very motion that purportedly seeks to send the matter to arbitration.

Defendants' delay is more suspect because Plaintiff has offered to stipulate for a referral of the case to arbitration, conditioned on an agreement for reasonable discovery, including subpoenas for documents in the hands of third parties. Defendants' own statements, including those in court submissions, make evident the need for document discovery by subpoena for any fair inquiry in this case. Yet Defendants have refused to even discuss entry of an order referring to arbitration that specifies discovery either before or in the arbitration process.

Finally, and most ironically, even though Defendants ignored the arbitration clause long into their attempts to get this Court to dismiss claims, and continue to seek this Court's review of issues even in their motion for arbitration, Defendants ask for sanctions against the Plaintiff for not bringing up the arbitration clause earlier.

Defendants' motion for referral to arbitration should be denied as waived.

**18**

**B. DEFENDANTS HAVE ENGAGED AND CONTINUE TO ENGAGE IN PROTRACTED LITIGATION.**

A party to an arbitration agreement waives the right to assert this clause when he engages in protracted litigation that results in prejudice to the opposing party, such as by causing the opposing party to incur delay and expense. Kramer v. Hammond, 943 F.2d 176, 179 (2nd Cir. 1991). "The essential question is whether, based on the circumstances, the alleged defaulting party has acted inconsistently with the right to arbitrate." St. Mary's Medical Center of Evansville v. Disco Aluminum Products, 969 F.2d 585, 588 (7th Cir. 1992). Factors to consider include: (1) the time elapsed from the commencement of litigation to the request for arbitration; (2) the amount of litigation; and (3) proof of prejudice. S&R Company of Kingston v Latona Trucking, 159 F.3d 80, 83 (2nd Cir. 1998)

This case was filed in June 2004. Defendants waited until August, 2005 to mention the arbitration clauses they now invoke in any court paper or otherwise. This delay is similar to the 15 months of litigation that passed in S&R Company of Kingston, *supra*, where waiver was found.

In the fourteen months of litigation in this case and in the pleading filed that raised the arbitration clause itself, Defendants have sought court decisions on numerous questions that could and would

**19**

appropriately be addressed by an arbitrator.  The motions to dismiss in this case raise many issues that may affect the outcome or decide this case.  These motions are much more extensive and involved, raising issues central to the litigation, than those that the Court in <u>S&R Company of Kingston,</u> *supra,* held pertain to "substantial issues going to the merits" of the litigation.  *Id.* at 84.

In their first motion to dismiss, Defendants raised a myriad of substantive issues, including statute of limitations, whether the elements of fraud were plead with specificity, which parties could be held liable on the contract, and the issue of punitive and special damages and attorneys fees.  In its second motion, the Defendants again seek various rulings from this Court before the Court refers the matter to an arbitrator, including the limits of general partner liability under state law and contract, two additional statute of limitations issues and a new challenge to the existence of all elements of fraud.  These are issues appropriate for an arbitrator, which have instead occupied the precious time of this Court for more than 18 months.

> An arbitrator would be capable of determining if the facts St. Mary's pleaded or had mustered to defend against summary judgment were sufficient to state a claim that Disco breached its contract by not performing as the contract required. Similarly, an arbitrator would have been capable of interpreting the contract between Disco and St. Mary's to determine if the contract contained any limitations period that barred St. Mary's claim that "the business of arbitrators, commercial or labor, is to interpret contracts."

<u>St. Mary's Medical Center of Evansville v Disco Aluminum Products,</u>

<u>supra,</u> 969 F.2d at 589 (citations omitted).

      Defendants have made the Plaintiff and this Court address

substantial issues similar to those cited in <u>St. Mary's Medical Center</u>,

*supra*, for over 14 months before raising the arbitration clause, and then

have asked the Plaintiff and this Court to address many further

substantial issues before the Court rules on Defendants' request for

arbitration.  Defendants have abundantly shown their intention to gain

anything they can from rulings of this Court before getting another bite

at the apple in arbitration.  This pattern supports and requires a court

finding of waiver.


**C.  DELAY AND MISUSE OF THE COURT SYSTEM BY THE
     DEFENDANTS HAS PREJUDICED PLAINTIFF'S CASE.**

      Using the rules and decision-making powers of the court system

extensively before invoking an arbitration clause may be considered

prejudice justifying a finding of waiver of an arbitration clause.  <u>Kramer</u>

<u>v. Hammond</u>, *supra*, 943 F.2d at 180.

> As we have recently held in Com-Tech [Assoc v
> Computer Assoc, 938 F2d 1574 (2nd Cir 1991)], "[t]o permit
> litigants to exercise their contractual rights to arbitrate at . . .
> a later date, after they have deliberately chosen to participate
> in costly and extensive litigation would defeat the purpose of
> arbitration: that disputes be resolved with dispatch and with a
> minimum of expense."

**21**

*Id.* at 180.

Unfair prejudice can come from the defendant using court processes that are favorable to its interests but would not be available to the same extent if the entire procedure was in the arbitral forum. Often this prejudice takes the form of use of court discovery tools. See, e.g., <u>Manos v Geissler</u>, 321 F. Supp. 2d 588 (SDNY 2004).

In this case, Defendants apparently seek to draw out litigation, use the more demanding pleading requirements of a court proceeding and avoid any discovery. Plaintiffs have offered to stipulate to arbitration, contingent only on a stipulation to document discovery, particularly subpoenas for documents from third parties. While pressing arbitration, Defendants have refused any such stipulation.

At the same time, Defendants' submission to the court makes it quite plain why discovery of this sort is completely necessary for any fair proceeding. Partnership records, which may show what happened to Plaintiff's money, in excess of $200,000, are said to be in the hands of a former employee of Defendant general partner. In a deliberate and completely untrue smokescreen, Defendants accused Plaintiff of having some connection to this person, without any evidence or reason. It is Defendants that appear to be using whatever means possible to keep such documents from seeing the light of day.

Pleading issues rarely stand in the way of decisions on the merits in an arbitration forum, but discovery is limited and subpoena powers

lacking.  Defendants seek to use court procedures when this may be advantageous but force arbitration to keep disadvantageous court procedures from exposing information that may be damaging. Defendants use this process to effectively draw out all proceedings so that truth may never be known.  This is prejudicial not only to the Plaintiff, an individual retiree standing to lose her retirement savings, but to justice itself.

### D.  ANY ORDER FOR ARBITRATION SHOULD INCLUDE THE AVAILABILITY OF BASIC DISCOVERY.

Defendants in their submission to this Court have demonstrated the need for any proceeding in this case to include subpoena power for documents in the hands of third parties.  As part of an unseemly and completely unfounded effort to tar Plaintiff by nonexistent association with a former employee of Unifund Financial named Elizabeth Acton, Defendants have admitted that Ms. Acton has significant files, records and computer disks for "Unifund entities."

At the same time, Defendants refuse to agree to any stipulated discovery as part of an order for submission of this case to arbitration. While some exchange of documents may be ordered under American Arbitration Association rules, subpoenas for documents in the hands of third parties are not specifically mentioned and would require court

involvement to implement.  See AAA Commercial Arbitration Rules, R-21,

http://www.adr.org/sp.asp?id=22440.

While federal courts have long found a policy in favor of arbitration

in federal law, this policy was always based, in part, on the availability of

reasonable if limited discovery, and other fair procedures, in arbitration.

See Patterson v Tenet Healthcare, 113 F3d 832, 838 (8th Cir 1997)

(Effective vindication of employee's rights in arbitral forum requires

"adequate discovery", citing Gilmer v Interstate/Johnson Lane Corp, 500

US 20, 111 S Ct 1647, 114 L Ed2d 26 (1991)).  In this case, the facts do

not allow for fairness in the absence of at least limited third-party

discovery in arbitration.  The continued refusal to agree to this by the

Defendants betrays their motives in this case and undermines their

efforts to turn the matter at this stage over to arbitration.  By delay,

extensive use of court procedures and decision-making and refusal to

agree to steps to make an arbitration proceeding fair, Defendants have

waived enforcement of the arbitration clause.


## V. THE ALLEGATIONS OF FRAUD
## IN THE AMENDED COMPLAINT ARE STATED WITH
## SUFFICIENT SPECIFICITY


The Court's May 2005 Order granted leave to replead the fraud

claim with greater specificity than the Court found in the original

Complaint based upon the standards required by Federal Rules of Civil Procedure and as enunciated in <u>Novak v. Kasak</u>, 216 F.3d 300 (2d Cir. 2000). The Court directed that said claims specify the statements that were made with identification as to the alleged speakers and the temporal circumstances surrounding said representations.

In response to said direction, the Amended Complaint clearly delineates the essence of the fraudulent misrepresentations, including that both individually named Defendants made the false declarations that they were stockbrokers, that Unifund was a "solid" enterprise with "wide ranging" investments and that investments by the Plaintiff would be appropriate for retirements funds.

The Amended Complaint clearly indicates that these representations were made in June and July 1998 and that said false representations continued in July, August and November 1998, prompting and inducing each new significant investment by Plaintiff.

The Amended Complaint additionally alleges that in March 1999 and January 2000, additional significant investments were made by Plaintiff based upon the continuation of said false representations by the same named Defendants.

The Amended Complaint alleges that said investments sold to Plaintiff by the individually named Defendants were not registered with the state or federal governments and therefore could only be sold to persons with large assets exceeding one million dollars. Since Plaintiff

**25**

did not qualify and the named Defendants knew she did not qualify, each and every representation by the named individual defendants was intentionally false and were part of the entire false investment scheme fraudulently devised and perpetuated by the individually named Defendants.

The Amended Complaint clearly alleges that the individually named Defendants made misrepresentations about a planned public offering of stock that would benefit Unifund investors, that these plans were delineated in letters to Plaintiff, that Scott Barter specifically referred to these plans in papers he gave to Plaintiff in both June 1998 and March 1999.

The Amended Complaint also alleges that Scott Barter submitted certain documents to governmental agencies, namely the Securities and Exchange Commission, which stated that Unifund was in the development stage and that any investment involved a "high degree of risk" and even delineated for said agency the reasons said investments were risky.

All statements made to Plaintiff were wholly contrary in nature and therefore each statement by the named Defendants to Plaintiff were knowingly and intentionally false.

These allegations certainly respond to the Court's directions for a who, what, when scenario and the requirements of Rule 9(b) for specificity.

In the same vein and attitude that underlies and motivates attorney Ferrer's outrageous personal allegations against the Plaintiff, he states that the Amended Complaint portrayal of Ms. Barter as predatory was a "lie" since the Amended Complaint elucidates the initial manner in which Plaintiff contacted Ms. Barter.

The trier of fact will eventually decide if Ms. Barter is predatory. The initial manner in which the Plaintiff contacted Ms. Barter, however, is totally irrelevant to the facts of this action, the decision that will eventually be made by the trier of fact or to the specificity of the fraud claim.

It is inaccurate for attorney Ferrer to state that the only connection to Scott Barter is the June 1998 form provided to Plaintiff. In fact, the amended Complaint alleges that there was a March 1999 form given to Plaintiff by Scott Barter. Although this misstatement by attorney Ferrer is certainly not as serious as his allegations of crimes committed by Plaintiff, it is highly improper for an attorney that describe pleadings as "improprieties" filed with "lies", especially when said attorney should have made a closer ready of the pleading.

Similarly, it is of no consequence to the survival of a pleading that the allegations as to the pertinent time period are specified as both June and July of a year. Attorney Ferrer distracts this Court as to inconsequential nature of said time periods by accusing Plaintiff's attorney of intentionally "fudging" the dates so as to make certain events

appear as if they are not time barred. This is not a motion for summary judgment but rather a motion on the pleadings and the specificity aspect of the fraud claim is satisfied with the time periods specified in the amended Complaint.

F.R.C.P. 9(b) requires fraud to be pleaded with particularity, "the rule does not require absolute particularity or the recital of the evidence." Wright and Miller, 5A Fed Practice and Procedure, Sec. 1298.  Rather, a balance must be struck between the requirement for specificity and the requirement for simplicity found in Fed. R. Civ. Pro. 8.

The allegations in this case are similar to those found sufficient in Wells Fargo Bank Northwest v TACA International Airlines, 247 F Supp 2d 352 (2002).  In that case, the plaintiff cited a specific misrepresentation and omission made "beginning in January 1998" and the people involved.  Knowledge that the representation was false or misleading was alleged and reasonable reliance based on the relative experience of the parties.  In that case, the pleading was judged as sufficient.

The allegations of the Amended Complaint certainly constitute "strong circumstantial evidence of conscious misbehavior or recklessness" and thus sufficient allegations of scienter.  Wells Fargo Bank v. TACA International Airlines, supra, at 364-5.  The Barters must have known that they lacked broker's licenses and that their securities were unregistered.  If they acted like and represented themselves as

brokers when they were not, advising elderly clients that their own unregistered investment vehicles were suitable for retirement funds was, at best, reckless.  The plaintiff's lack of experience in investing is pleaded and her reliance may be considered reasonable if these facts are proven.

Defendants allege that the complaint is defective because some of the misrepresentations cited were not given a specific date, but a period of time (June and July, 1998), which Defendants alleged was done to fudge on the statute of limitations.  This "issue" of the date of each misrepresentation made to Plaintiff in the course of sale of a number of limited partnerships over several months is just another red herring.  "[A] cause of action for fraud cannot accrue until every element of the claim, including injury, can truthfully be alleged."  New York City Transit Authority v Morris J. Eisen PC, 276 A.D.2d 78, 85, 715 N.Y.S.2d 232 (1st Dept. 2000) (citation omitted).  In the NYC Transit Authority case, the plaintiff alleged a scheme to use fraudulent testimony in personal injury cases. The Court held that the statute of limitations did not begin to run on each payment until the payment was made in settlement of a claim or judgment.  Similarly, a cause of action on procurement of investments by fraudulent misrepresentations accrues when the investments were sold, not when the representations were made.

Defendants have good notice of the specific nature of the claims against them and, therefore, the specificity requirements of federal rules are met.

**29**

# CONCLUSION

For the above reasons, Plaintiff respectfully requests that this second motion to dismiss the Complaint be denied in its entirety as it complies with all pleading requirements, contains legally recognized claims for which relief may be granted and complies with the directions and concerns expressed in the Order of this Court dated May 12, 2005.

Dated: February 1, 2006

___/S/_____
Eric N. Aglow, Esq.
UAW-GM Legal Services Plan
10 Woodbridge Center Drive
Suite 730
Woodbridge, N.J. 07095
Voice: 732 602 1166
Fax:   732 602 9730
E-mail: Ericag@uawlsp.com
Attorneys for Plaintiff