Eric N. Aglow, Esq.
UAW-GM Legal Services Plan
10 Woodbridge Center Drive
Suite 730
Woodbridge, New Jersey 07095
Voice: 732 602 1166
Fax:   732 602 9730
E-mail: Ericag@uawlsp.com
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------x
**CAROLYN FORREST**
          Plaintiff

  -against-                             Case No. *04-CV-5151 (LTS)*

**UNIFUND FINANCIAL GROUP,**    **AFFIRMATION OF ATTORNEY**
**UNIFUND AMERICA, INC.,**       **IN FURTHER OPPOSITION TO**
**RALPH SCOTT BARTER and**      **MOTION TO DISMISS**
**MURIEL BARTER**                      **AMENDED COMPLAINT**
             Defendant                   **(SUR-REPLY)**
-------------------------------------------x

Eric N. Aglow, Esq., an attorney duly admitted to practice law in this state, does affirms follows, subject to the penalties of perjury:

**PURPOSE AND PERMISSION BY COURT**
**FOR SUR-REPLY PAPERS**

1. I am attorney of record for the above captioned Plaintiff and make this sur-reply affirmation in response to Defendant's Motion to Dismiss the Amended Complaint.

2. This sur-Reply is permitted pursuant to the Order entered by this Court on March 21, 2006 which granted the Stipulation

entered into by the parties to allow, for the fourth time, an extension of the time for Defendants to file their Reply papers to Plaintiff's opposition to Defendant's Motion to Dismiss the Complaint.

3. We had requested permission to file a sur-Reply since Defendant's attorney, each time he requested another extension, had unequivocally claimed that he had a third party affidavit to substantiate the horrendous claims asserted against our client of acting in criminal concert with another individual in an extortion scheme to steal and withhold documents from Defendant.

### Issue of Personal Allegations and Attacks Against Plaintiff By Defendants' Attorneys and Warnings to Defendants' Attorney to Retract

4. This issue concerning the accusations leveled against the Plaintiff is extremely important to highlight since, as will be discussed herein, it clearly defines and elucidates for the Court the rather abhorrent and reckless manner in which Defendant's attorney has filed this second motion to Dismiss the Complaint.

5. Defendants, lacking any meritorious substantive arguments to present to this Court with this second Motion to Dismiss the Complaint, have instead revealed that they will say almost anything in these Court papers to perpetuate both their

dilatory desire to delay discovery of the Defendants' highly questionable and improper financial dealings with the investments of innocent persons, to impugn the integrity of the Plaintiff and to mislead this Court.

### Sworn Affidavit By Plaintiff

6. Our initial opposition papers to this Motion included an affidavit sworn to by the Plaintiff, an elderly retiree who lost most of her retirement funds through the improper financial schemes devised and perpetuated by the corporate and individual Defendants.

7. Said sworn affidavit stated that Plaintiff never met nor knew the alleged extortionist, Ms. Elizabeth Acton, and that the allegations of Defendant's attorneys are horrific and false.

### False Affidavit by Defendant Barter in Reply Papers

8. In the Reply Papers, Defendants attorney assert and emphasize that the affidavit of Muriel Barter is the proof and substantiation of criminal activities by the Plaintiff.

9. The "proof" allegedly presented in Defendant Barter's sworn affidavit is that the Plaintiff never knew about a particular type of security; namely "Pipeline Securities", and that the **only** way Plaintiff could have known about Pipeline Securities

3

is by being in contact with her criminal confederate who has allegedly stolen all of Defendants' records and has made extortionist demands upon Defendants.

10. In other words, the entire proof presented by Defendant's attorneys that Plaintiff acted, and continues to act, in concert with an alleged criminal extortionist, is that such was the only manner in which Plaintiff could have learned about the existence of a certain types of securities.

11. After submitting to this Court false and scandalous allegations against our client in their moving papers, the Reply papers was the opportunity to substantiate and prove those false allegations, as they promised they would do.

12. Instead, Defendant's attorney had their client submit a false affidavit to this Court.

### Exhibits Prove that Affidavit by Defendant and Allegations Against Plaintiff are False

13. Plaintiff did not learn about the existence of Pipeline Securities from Elizabeth Acton from one very simple reason.

14. Plaintiff learned about said securities as a direct result of letters sent by Defendant Barters to Plaintiff informing her about said securities.

15. Attached hereto as Exhibit A is a letter dated March 8, 1999 from co-Defendant Scott Barter, son of affiant Defendant

Muriel Barter, on the letterhead of Defendant Unifund, offering and recommending Pipeline Data , Inc. securities to Plaintiff.

16. Attached hereto as Exhibit B is a letter dated June 1, 2000, wherein co-Defendant Scott Barter, "as Chairman of Unifund", was "pleased to announce to Plaintiff' the direct public offering of Pipeline Data, Inc.

17. Attached hereto as Exhibit C is a letter signed by Plaintiff, on the letterhead of Defendant Unifund, which confirms Plaintiff's authorization to reinvest interest in Pipeline Data. Inc.

18. Lastly, attached hereto as Exhibit D is a document dated February 7, 2001, addressed to Plaintiff, which indicates tat she owned stock in Pipeline Data.

19. It is obvious, therefore, that Plaintiff rightfully demanded information from Defendant Barter concerning Pipeline since this was one of the investments advocated, recommended and pushed by the Defendant Barters, which investment, along with all of the other investments,  is now gone without any records whatsoever to explain such disappearance.

20. These exhibits clearly indicate that Defendant Barter's sworn affidavit is knowingly and intentionally false.

21. The statements in Defendant Barter's sworn affidavit that "Ms. Forrest never participated in any investment in a matter called

Pipeline" or that "Ms. Forrest had no legitimate basis to ever assert any demand for shares of Pipeline stock", are absolutely false.

22. The fact that Defendant Barter states in sworn affidavit, created and/or reviewed by her attorneys, that "the only way…Ms. Forrest could ever have even become aware of an investment called Pipeline is from information in the record which Elizabeth Acton has wrongfully retained" and that "the ultimate source of any information Ms. Forrest learned about Pipeline…could only be from the confidential files Ms. Acton has wrongfully retained", clearly demonstrates that Defendants and their attorneys are simply willing to perpetuate any falsehood that they think they might get away with.

23. Of course, such an attitude is not surprising for Defendants who have not, can not and will not explain the total disappearance of almost a quarter million dollars of Plaintiff's money and instead consider themselves victims of the extortionist schemes of everyone and anyone who complains about their losses due to Defendants' fraudulent schemes.

## Consequence of Failure of Defendants' Attorneys
## to Retract False Allegations

24. It is crystal clear that Defendant's attorneys, Al Ferrer and Vincent McGill, are willing to sacrifice any semblance of integrity and professional ethics in an attempt to mislead and distract this Court and that if any records of the financial dealings of Defendants are "missing" it is not the result of the mysterious Elizabeth Acton, nor certainly the result of any collusion by our client, but rather due to an apparent need to erase the paper trail of millions of dollars invested by innocent persons and given to the Defendants which money is inexplicably and completely gone.

25. This case has nothing whatsoever to do with the ups and down of the stock market nor the loss of funds experienced by many after September 11 or other economic downturns as alleged over and over again by Defendants.

26. This case deals with specific Defendants and their companies who created and perpetuated a scheme of improper and unlawful financial dealings that resulted in the inexplicable and complete loss of money **and** all records.

27. It is very convenient, yet obviously very suspect, to argue that they have not presented financial records to Plaintiff since said records have been stolen and are being held for ransom.

28. It is highly irrelevant, to include in Reply papers to this motion, a letter dated June 2005 to an attorney allegedly representing the extortionist, politely requesting the return of their financial records.

29. It is also highly irrelevant for Defendant's attorney to devote paragraph after paragraph in the attorney's Reply affirmation to his alleged attempts to retrieve stolen records from Ms. Elizabeth Acton, a person not party to this action and irreverent to the claims stated by Plaintiff.

30. It is irrelevant and inflammatory to include in Court papers, the alleged criminal activities and demands of Ms. Acton.

31. Most important, however, is that it is scandalous and unethical to recklessly make allegations of criminal conspiracy by the Plaintiff and then to attempt to substantiate those allegations with a perjurious affidavit from their own client.

32. The actions of Defendants' attorney and Defendant Barter should be a basis, in and of itself, to discredit and deny this motion and their dilatory tactics and for further actions deemed appropriate by the Court.

Dated:   April 13, 2006     _/s/_____
                              Eric N. Aglow, Esq.

Case 1:04-cv-05151-LTS-THK   Document 55   Filed 04/13/2006   Page 9 of 9



# UNIFUND
## FINANCIAL GROUP, INC.

Mrs Carolyn Forrest  
6605 Heron Point  
West Bloomfield MI 48323

March 8th 1999

Dear Mrs Forrest

The second half of 1998 was something of a landmark for your company, as we set in motion a series of corporate finance projects (described briefly below) that will take the Unifund Group of Companies into a new and what we anticipate to be a lucrative area of operations for your company, its shareholders and investors.

As you are aware, an important facet of your company's business plan is to have its stock traded publicly. In furtherance of that goal, we are currently in the process of registering an affiliated company — Unifund America Inc, a full service investment banking firm serving emerging growth and small capitalization corporate clients and investors — with the Securities and Exchange Commission. It is our intent to then merge Unifund Financial Group with Unifund America.

This opportunity represents the first of our corporate finance projects; and we plan to do additional offerings of a similar nature in the very near future, one of which includes a company headed by Jack Rubinstein — *a founding public board member of CD Radio Inc.* (see attached *Company Information Sheets*).

The other two companies we're currently registering with the SEC are:

1. NET4CAST INC. (proposed trading symbol: NFOR): an Internet-based investor information service designed to offer computer access to the full text of remotely stored research reports and investor newsletters through its website at www.net4cast.com").

2. PIPELINE DATA INC. (proposed trading symbol: PIPD): an internet-based direct marketing agent, specializing in the pharmaceutical and healthcare industries. *Note: This is Jack Rubinstein's first public offering since CD Radio.*

All of these private, investment banking style opportunities will have a portion of shares segmented aside, available as a form of dividend and by subscription, to be offered to Unifund shareholders of record at the time.

575 MADISON AVENUE, SUITE 1006, NEW YORK, NEW YORK 10022

TEL: (212) 421-4400    FAX: (212) 308-9834

1 (800) 296-UNIFUND

(800) 296-8643  
*Nationwide*

Page 2

In addition to this "early-stage" investment opportunity, and in appreciation of your affiliation with our company, and in accordance with your recent instructions, we are pleased to advise that you are entitled to receive an *additional* designated dividend.

Further details can be found in the enclosed authorization form. Please complete and sign it, and mail it back to our office in the stamped, self-addressed envelope provided.

This is all a part of our corporate objective of enhancing shareholder value for our investors. The attached *Company Information Sheets* explain these companies, their management and their business objectives in more detail.

Finally, even though our primary focus is the corporate finance/public investment sector, we plan to continue to provide information and research on the stock market and selected publicly-traded equities that is clear, balanced, useful and organized — so that our shareholders and clients can take advantage of it in terms of their own investment strategy and view of the financial markets.

In addition, our existing research service will be augmented by reports supplied by Net4Cast Inc., which will include not only the existing, complimentary FlashFax$^{SM}$ service, but also a growing menu of services to be posted over the Internet, via the newly-established web site at "www.net4cast.com". If you have any questions arising from this letter, or the attached information sheets, please call our toll-free number: 1-800-296-UNIFUND (1-800-296-8643).

Please note: the offer to subscribe to founder's shares in Unifund America (or any of the other opportunities mentioned here) can only be made via the individual Offering Document or Prospectus, and the accompanying Subscription Agreements, which will be forwarded to you. Please read these documents carefully.

Yours sincerely

R Scott Barter
President

Enc.


# UNIFUND
## FINANCIAL GROUP, INC.

June 1ˢᵗ 2000

Mrs Carolyn Forrest
6605 Heron Point
West Bloomfield MI 48323

Dear Mrs Forrest

As chairman of the Unifund Group of Companies, I am pleased to announce that the direct public offering for Pipeline Data Inc. has surpassed the minimum amount required and the offering has now been closed.

As you are aware, Pipeline Data's CEO is Jack Rubinstein, a founding board member of CD Radio Inc. (now doing business as Sirius Satellite Radio Inc.; Nasdaq symbol: SIRI). Unifund is providing Pipeline Data with management, business and marketing advice. The company's public offering was declared effective by the Securities and Exchange Commission on April 26th.

Pipeline Data, together with a market-maker, have prepared and are currently filing the necessary documentation with the NASD (National Association of Securities Dealers), in order to qualify the shares for trading on the Nasdaq OTC Bulletin Board market.

Yours sincerely

*[signature]*

R Scott Barter
President

This communication is provided for information purposes only, and should not be construed as a solicitation to buy or sell any securities or related financial instruments.

575 MADISON AVENUE, SUITE 1006, NEW YORK, NEW YORK 10022
TEL: (212) 421-4400    FAX: (212) 308-9834
1 (800) 296-UNIFUND
(800) 296-8643
*Nationwide*



**UNIFUND**
FINANCIAL GROUP, INC.
575 MADISON AVENUE, SUITE 1006
NEW YORK, NY 10022

**Interest Reinvestment Authorization**

Gentlemen:

Please accept this letter as confirmation of my/our verbal instructions to reinvest the interest amount stated herein, which is due on June 1ˢᵗ 1999, from my Unifund Partners Fund, LP promissory note/s.

I/we understand that the new promissory note, created from the reinvested interest, will be dated March 1ˢᵗ 1999, and that interest on this new note (at the annual rate of 15%) will accrue from that date, and be payable on December 1ˢᵗ 1999.

    Interest to be reinvested:    $ 18,637.50

I/we further understand that, in return for my/our instructions, I/we will be given the right to subscribe (by prospectus) to shares in each of the companies listed below.

| | |
|---|---|
| Unifund America Inc. | Expected Offering Date: April 1999 |
| Net4Cast Inc. | Expected Offering Date: May 1999 |
| Pipeline Data Inc. | Expected Offering Date: June 1999 |

SIGNED:—

*Carolyn Forrest* (signature)

Carolyn Forrest
6605 Heron Point
West Bloomfield MI 48323

3/14/99
Date

**FIFTHMAR CAPITAL CORPORATION**
**333 EAST 49TH STREET, SUITE 8H**
**NEW YORK, NY 10017**

February 7, 2001

Mrs. Carolyn Forrest
6005 Heron Point
West Bloomfield, MI 48323

**STATUS OF FIFTHMAR CAPITAL CORPPORATION TRADING ACCOUNT**

<u>Long Position</u>

    GOJO

    Pipeline Data – PPDA (common stock)

    Pipeline Data – PPDAW (A warrants)

    Pipeline Data – PPDAZ (B warrants)