USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/13/07

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CAROLYN FORREST,

        Plaintiff,

-v-

UNIFUND FINANCIAL GROUP, INC.,
UNIFUND AMERICA, INC.,
RALPH SCOTT BARTER, and
MURIEL BARTER,

        Defendants.

No. 04 Civ. 5151 (LTS)

## OPINION AND ORDER

APPEARANCES:

| | |
|---|---|
| UAW-GM LEGAL SERVICES PLAN<br> By: Eric N. Aglow, Esq.<br>10 Woodbridge Center Drive, Suite 730<br>Woodbridge, NJ 07095 | EATON & VAN WINKLE LLP<br> By: Vincent McGill, Esq.<br>Three Park Avenue, 16th Floor<br>New York, NY 10016<br><br>BRUNELLE & HADJIKOW, P.C.<br> By: Alfred Ferrer III, Esq.<br>40 Broad Street<br>New York, NY 10004 |
| *Attorneys for Plaintiff* | *Attorneys for Defendants* |

LAURA TAYLOR SWAIN, United States District Judge

Plaintiff Carolyn Forrest ("Forrest" or "Plaintiff") brings this action, asserting causes of action for breach of contract, fraud, and conspiracy to commit fraud, against Unifund Financial Group, Inc. ("Unifund Financial"), Unifund America, Inc. ("Unifund America"), Ralph Scott Barter and Muriel Barter (collectively "Defendants"). Defendants request reconsideration of certain aspects of the Amended Memorandum Opinion and Order entered in this case on May 12, 2005, and move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Amended Complaint. In the alternative, Defendants seek an order staying this action and compelling arbitration pursuant to 9 U.S.C. §§ 3 and 4. Defendants also move for sanctions and attorneys' fees and costs pursuant to Rule 11.

The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332. The Court has considered thoroughly all the parties' submissions and arguments and, for the following reasons, denies Defendants' reconsideration and Rule 12(b)(6) motions and their sanctions request, and denies Defendants' request to stay the action and compel arbitration.

BACKGROUND

The following facts, which are alleged in the Amended Complaint ("Complaint"), are taken as true for the purposes of the instant motion to dismiss the Complaint. Carolyn Forrest is a citizen of Michigan. (Compl. ¶ 4.) Defendants Unifund Financial and Unifund America are New York corporations, organized under the laws of New York with their principal place of business in New York. (Id. ¶ 5.) Defendant Ralph Scott Barter, a citizen of New York, was

President and principal owner of Unifund Financial and Unifund America. (Id. ¶ 6.) Defendant Muriel Barter, a citizen of New York, was an employee and/or officer of Unifund Financial and Unifund America. (Id. ¶ 7.) In June 1998 Plaintiff's son, Lewis Forrest, was introduced to Muriel Barter through an acquaintance. (Id. ¶ 8.) Muriel Barter discussed investing in Unifund with Lewis Forrest and told Lewis Forrest that an investment of at least $20,000 would yield 15% a year. (Id. ¶ 8.) Muriel Barter portrayed Unifund as a solid company and herself as a stockbroker. (Id. ¶ 8.) Subsequently, Lewis Forrest introduced his mother, Carolyn Forrest, to Muriel Barter. (Id. ¶ 9.) Carolyn Forrest's assets consisted of $300,000 in anticipated job severance benefits and $100,000 in equity in her home. (Id. ¶ 9.) In June and July 1998, Carolyn Forrest and Muriel Barter spoke via telephone on several occasions. (Id. ¶ 10.) Muriel Barter referred to herself and defendant Scott Barter as "stockbrokers." (Id. ¶ 10.) Muriel Barter was not, however, licensed or registered by the National Association of Securities Dealers or by any state or federal agency to sell stock or other investments. (Id. ¶ 10.) During the June and July 1998 conversations, Muriel Barter told Carolyn Forrest that Unifund was a safe investment and that, by investing, Carolyn Forrest would not risk losing her retirement money. (Id. ¶ 11.) In the same conversations, Muriel Barter advised Carolyn Forrest to invest in limited partnerships, with Unifund corporations as the general partner. (Id. ¶ 12.) Muriel Barter told Plaintiff that she had spoken with Scott Barter and he concurred that the investments were safe and had a "guaranteed" return. (Id. ¶ 13.)

On June 25, 1998, in reliance on the Barters' statements about the investments,

Plaintiff bought a limited partnership investment with her son. (Id. ¶ 14.) Plaintiff contributed $15,000 of the $20,000 investment. (Id. ¶ 14.) Relying on continuing representations by the Barters, Plaintiff made further investments including: $100,000 on July 14, 1998; $10,000 on July 17, 1998; $30,000 on August 18, 1998; and $100,000 on November 6, 1998. (Id. ¶ 15.) Unifund Financial was the general partner of each of the limited partnerships in which Plaintiff invested. (Id. ¶ 18.) In November 1998 and March 1999, Plaintiff agreed to reinvest interest income promised by Unifund and due to be paid. (Id. ¶ 16.) In January, 2000, Plaintiff reinvested $21,151.92 of interest from the limited partnerships into Fifthmar Capital Corporation. (Id. ¶ 17.) Muriel Barter told Plaintiff that she was a stockbroker and that she would invest the money in a safe and profitable stock that would provide a return of at least 12 ½ %. (Id. ¶ 17.)

      The limited partnership investments sold to Plaintiff were not registered with any state or the federal government. (Id. ¶ 19.) Defendants did not notify Plaintiff that the investments were not registered. (Id. ¶ 20.) Since the investments were not registered, the investments could only be sold to someone with assets over $1,000,000 or someone with a large income. (Id. ¶ 19.) Muriel and Scott Barter knew that Plaintiff had limited assets and income, and thus that the investments could not be sold to Plaintiff. (Id. ¶ 20.)

      Each partnership investment involved a promissory note, payable at fifteen percent interest annually, with the principal payable in either three or four years. (Id. ¶ 21.) The partnership was to be invested by the general partner, Unifund Financial, in "emerging small capitalization companies." (Id. ¶ 22.) Defendants Muriel and Scott Barter, beginning in June

1998, used the planned public offering of stock in Unifund America and the proposed merger of Unifund Financial and Unifund America as incentive for Plaintiff to invest. (Id. ¶ 23.) This incentive was mentioned in Muriel Barter's letter to Plaintiff on June 18, 1998, and on a form provided by Scott Barter to Plaintiff when asking Plaintiff to sign the paperwork for the $20,000 investment on June 24, 1998. (Id. ¶ 24.) Further, Scott Barter emphasized the incentive in a March 8, 1999, letter and a March 14, 1999, form relating to Plaintiff reinvesting $18,637.50 of interest. (Id. ¶ 24.)

In May 1999 Scott Barter, as president and CEO, submitted a Registration Statement and Prospectus to the SEC on behalf of Unifund America. (Id. ¶ 25.) In the document, Barter described the company "as a 'development stage' merchant banking firm" that had not yet conducted any transactions and admitted that investing in the company involved a high degree of risk. (Id. ¶ 25.) The document and the information in it were never given to the Plaintiff. (Id. ¶ 25.)

The most recent statement given to Plaintiff, dated December 1, 2000, valued Plaintiff's portfolio with Unifund at $272,800 and the joint account with Plaintiff's son at $22,900. (Id. ¶ 28.) All of the promissory notes given with the investments in limited partnerships came due in 2001 and 2002, but Plaintiff has received neither the principal nor the interest. (Id. ¶ 29.) Defendants have not informed Plaintiff where the money was invested or where the alleged gain from the investments has gone. (Id. ¶ 30.)

On May 12, 2005, the Court issued an Amended Memorandum Opinion and Order ("Order"), wherein the Court granted Defendant's motion to dismiss the original complaint

but gave Plaintiff fourteen days to file an amended complaint. (Order 12.) The Court allowed Forrest to reassert the fraud and conspiracy claims against Unifund America, Unifund Financial, and Muriel and Scott Barter. (Id. at 8.) The Court also permitted Plaintiff to replead the breach of contract claim against Unifund America and Unifund Financial (id. at 9), and permitted Plaintiff to replead the claim for punitive damages for the tort claims. (Id. at 10.) Plaintiff filed an Amended Complaint on May 25, 2005. On May 27, 2005, Defendants filed a motion for reconsideration of the May 12, 2005 Amended Memorandum Opinion and Order. On August 12, 2005, Defendants filed their motion to dismiss the Amended Complaint.

## DISCUSSION

Motion for Reconsideration

Defendants' motion for reconsideration, filed on May 27, 2005, seeks reconsideration of the Court's determination that Forrest's initial complaint pled sufficient facts to support her claim for punitive damages in connection with her tort claims. (Defs.' Mem. of Law in Supp. of Mot. for Recons. and Re-Argument at 1). "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., 70 F.3d 255, 257 (2d Cir. 1995) (citation omitted). Nor is reconsideration appropriate "where the moving party seeks solely to relitigate an issue already decided." Id. Here, Defendants seek to relitigate an issue already decided by the Court, and do not present any decisions or data overlooked by the Court. Therefore, the motion for reconsideration of the Court's Amended Order is denied.

Motion to Dismiss

In evaluating a motion to dismiss a complaint pursuant to Rule 12(b)(6), the Court must take as true the facts alleged in the plaintiff's complaint and draw all reasonable inferences in her favor. Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993); Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). The Court must not dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of h[er] claim which would entitle h[er] to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

*Breach of Contract Cause of Action*

Defendants move to dismiss Forrest's cause of action for breach of contract against Unifund Financial. They advance three principal arguments in this connection. First, citing the New York choice of law provisions of the limited partnership agreements,[1] Defendants argue that the breach of contract cause of action must be dismissed because, under New York law, a general partner is not liable for limited partnership debts unless the partnership is adjudicated bankrupt, insolvent or unable to satisfy the liability. Defendants cite authorities applying this principle in connection with third-party efforts to enforce limited partnership obligations against the general partner. See Baker v. Latham Sparrowbush Assocs., 808 F. Supp. 992 (S.D.N.Y. 1992); Helmsley v. Cohen, 56 A.D.2d 519 (1st Dep't 1977). The breach of contract cause of action in Plaintiff's Amended Complaint, by contrast, asserts that Unifund Financial, as General Partner, breached its own obligations as general partner under the relevant

---

[1] See Ferrer Decl., Exs. 5, 6, 7 and 8, at p. 13.

limited partnership agreements, and that Plaintiff suffered damages as a result of those breaches of Unifund Financial's obligations. It is by no means clear that the financial condition of the limited partnership is determinative of Plaintiff's ability to pursue such claims against the general partner. Cf. Broome v. ML Media Opportunity Partners L.P., 273 A.D.2d 63, 64 (N.Y. Sup. Ct. App. Div. 1st Dept. 2000).

The second contention by the defense is that the claim should be dismissed because the limited partnership is, as a matter of substantive New York law, an indispensable party that must be a named defendant to be able to hold the general partner, Unifund Financial, liable. The cases relied upon by Defendants in support of this proposition are, however, inapposite. Both Eastern Metals v. Martin, 191 F. Supp. 245 (S.D.N.Y. 1960), and Bell South Studios v. Enneagram Prods. Co., 36 Misc. 2d 879 (N.Y.C. Civ. Ct., N.Y. Co., 1962) address the indispensability of *general partners* as parties defendant in actions to enforce partnership obligations.

Defendants' third argument for dismissal of the contract claim focuses on paragraph 14(f) of the limited partnership agreements, which provides:

> The General Partner shall not be liable, responsible, or accountable in damages or otherwise to the Partnership or any Limited Partner for any action taken or failure to act on behalf of the Partnership within the scope of the authority conferred on the General Partner by this Agreement or by law unless such action or omission was performed or omitted fraudulently or in bad faith or constituted wanton and willful misconduct or gross negligence.

(Ferrer Decl., Exs. 5, 6, 7 and 8, at p 11.) Defendants argue, in essence, that the contractual limitation of the general partner's liability to actions or omissions that were "performed or omitted fraudulently or in bad faith or constituted wanton or willful misconduct or gross

negligence" transforms any surviving cause of action against Unifund Financial into one sounding in tort, and that any such cause of action is time-barred under New York's three-year tort statute of limitations. Defendant's position in this regard is, however, inconsistent with New York law as construed by the Second Circuit. See Cooper v. Parsky, 140 F.3d 433, 441 (2d Cir. 1998) ("[S]ince the rights and obligations of . . . [the parties to that case] were defined by the . . . Agreement, and that agreement expressly provided that the [defendants] could be held liable for acts of gross negligence or wilful misconduct, allegations of such malfeasance may properly be viewed as stating a claim for breach of contract, which is governed by the six-year statute of limitations."). Accordingly, Defendants' motion is denied insofar as it addresses the breach of contract claim.

*Fraud and Conspiracy Claims*

Defendants argue that Forrest has again failed to plead her cause of action for fraud with particularity as required by Federal Rule of Civil Procedure 9(b). As the Court noted in its Amended Order, "[i]n order to comply with the heightened pleading requirements, the complaint 'must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" (Order 8) (citing Novak v. Kasaks, 216 F.3d 300, 306 (2d Cir. 2000) (internal citations omitted)).

The Amended Complaint pleads the fraud allegations with the specificity required by Rule 9(b). Plaintiff identifies the speaker(s) of each of her cited statements, when and how each statement was made, and why the statements were fraudulent. For example, Plaintiff cites

telephone conversations between herself and Muriel Barter in June and July, 1998, in which Muriel Barter allegedly referred to herself and Scott Barter as "stockbrokers." (Compl. ¶ 10.) Plaintiff alleges that these statements were fraudulent because Muriel Barter was not licensed or registered by the National Association of Securities Dealers or any state or federal agency to sell stock or any other investments. (Id. ¶ 10.) Plaintiff further alleges that Scott Barter made fraudulent statements to her through Muriel Barter, and that Muriel Barter was an agent of the defendant Unifund entities. (Id. ¶¶ 8, 14.) The Amended Complaint includes factual allegations sufficient to support an inference of scienter as well. Plaintiff alleges, for example, that the defendants intentionally misrepresented the risks of the investments, knowing that they were inconsistent with Plaintiff's resources and investment needs. (E.g., id. ¶¶ 11, 20, 43.)

Although Plaintiff alleges that some of the fraudulent statements were made in June and July 1998 and her fraud cause of action may therefore be barred in part by the six-year statute of limitations (N.Y. C.P.L.R. 213(8)), it cannot be said at this stage of the litigation that Plaintiff cannot prove any set of facts in support of her fraud claim that would entitle her to relief. Accordingly, the motion is denied insofar as it seeks dismissal of the fraud and conspiracy causes of action and the related punitive damages claim.

*Defendants' Motion to Compel Arbitration*

Defendants move to compel arbitration pursuant to paragraph 17 of each of the limited partnership agreements. The federal statutes governing arbitration, 9 U.S.C. §§ 1-14, reflect a desire to facilitate arbitration as "'an alternative to the complications of litigation.'"

Genesco, Inc. v. T. Kakiuchi & Co., LTD, 815 F.2d 840, 844 (2d Cir. 1987) (quoting Wilko v. Swan, 346 U.S. 427, 431 (1953)). Moreover, the "Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).

Plaintiff contends that the Court should not compel arbitration because Defendants waived the right to arbitration by delaying their assertion of the right until eighteen months after the initial complaint was filed and by engaging in pretrial litigation. (Mem. in Opp'n to Defs.' Mot. to Dismiss Am. Compl. at 17-18). A party waives its right to arbitration "when [it] engages in 'protracted litigation' . . . that results in prejudice to the opposing party." Kramer v. Hammond, 943 F.2d 176, 179 (2d Cir. 1991) (citation omitted). Factors to consider include "(1) the time elapsed from the commencement of litigation to the request for arbitration; (2) the amount of litigation (including exchanges of pleadings, any substantive motions, and discovery); and (3) proof of prejudice, including taking advantage of pre-trial discovery not available in arbitration, delay, and expense." S & R Company of Kingston v. Latona Trucking, Inc., 159 F.3d 80, 83 (2d Cir. 1998). Here, more than a year transpired between the commencement of litigation and the request for arbitration. In addition, Defendants are engaged in their second round of merits-based motion practice. Defendants did not raise the arbitration clause until responding to the Amended Complaint, even though the causes of action were always plead in the context of the limited partnership-related investments and activities.

Defendants had the opportunity to raise the arbitration issue in response to the initial complaint but elected to proceed with litigation, in an attempt to have the case dismissed on the merits in court. In considering whether prejudice exists, the Court notes that Defendants have put Plaintiff through the expense and delay associated with two rounds of dispositive motion practice and an amendment. The delay, expense and the affirmative requests for relief from this Court, and the prejudice to Plaintiff stemming from the litigation activity, are sufficient to support findings of substantive and procedural prejudice to Plaintiff and, thus, of waiver. For the abovementioned reasons, applying the factors elucidated by the Second Circuit in S & R Co. v. Latona Trucking, The Court finds that Defendants have waived their right to arbitration. Accordingly, Defendants' motion to stay the proceedings and compel arbitration is denied.

Sanctions and Attorney's Fees

Defendants request that the Court grant sanctions and attorney's fees, pursuant to Federal Rules of Civil Procedure Rule 11, arguing that the claims in the Amended Complaint lack evidentiary and legal support. Defendants have failed entirely, however, to comply with the procedural requirements of Rule 11. See Fed. R. Civ. P. 11(c)(1)(A). The application for sanctions is denied.

CONCLUSION

For the foregoing reasons, Defendants' motions for reconsideration and to dismiss the Amended Complaint or stay this matter pending arbitration are denied in their entirety. An

initial pre-trial conference will be held on April 9, 2007, at 4:30 p.m. The parties shall comply with the conference and submission requirements of the Initial Conference Order issued contemporaneously herewith.

    SO ORDERED

Dated: New York, New York
      March 12, 2007

                                          LAURA TAYLOR SWAIN
                                          United States District Judge

Copies mailed 3/13/07